**ORIGINAL**

U.S. DIS ᴀᴛ
NORTHERN I T OF TEXAS
F ᴌ D
NOV - 3 2006
CLERK, U.S. DISTRICT COURT
Deputy

Perry J. Cockerell
State Bar No. 04462500
**CANTEY & HANGER, L.L.P.**
1999 Bryan Street, Suite 3330
Dallas, Texas 75201-3100
Telephone: (214) 978-4100
Facsimile: (214) 978-4150

**ATTORNEYS FOR CARL E. BERG**

Beth Ann R. Young
California Bar No. 143945
**LEVENEE, NEALE, BENDER,**
**RANKIN & BRILL, L.P.**
10250 Constellation Blvd., Suite 1700
Los Angeles, California 90067
Telephone: (310) 229-1234
Facsimile: (310) 229-1244

**3-06 CV 2030 - M**

### United States Bankruptcy Court
### Northern District of Texas
### Dallas Division

| | | |
|---|---|---|
| IN RE: | § | |
| | § | Case No. 04-35574-BJH-11 |
| THE HERITAGE ORGANIZATION, L.L.C., | § | Chapter 11 |
| | § | |
| DEBTOR. | § | |
| DENNIS S. FAULKNER, TRUSTEE, | § | |
| | § | |
| PLAINTIFF | § | |
| | § | |
| V. | § | Adversary No. 06-03401-BJH |
| | § | |
| CARL E. BERG, | § | |
| | § | |
| DEFENDANT | § | |
| | § | |
| CARL E. BERG, | § | |
| | § | |
| THIRD-PARTY PLAINTIFF | § | |
| | § | |
| V. | § | |
| | § | |
| GARY M. KORNMAN, | § | |
| | § | |
| THIRD-PARTY DEFENDANT | § | |

### DFENDANT CARL E. BERG'S MOTION TO WITHDRAW
### THE BANKRUPTCY REFERENCE AND SUPPORTING BRIEF

**TO THE HONORABLE U.S. DISTRICT JUDGE AND BANKRUPTCY JUDGE:**

Pursuant to 28 U.S.C. § 157(d), Federal Rule of Bankruptcy Procedure 5011, and Rule 5011.1 of the Local Rules of Bankruptcy Procedure, Carl E. Berg ("Berg") in the above adversary proceeding, respectfully moves for an Order of the District Court withdrawing the reference to the above adversary proceeding. Berg submits that withdraw of the reference is appropriate because the motion is timely and resolution of Berg's Third Party action against Gary M. Kornman ("Kornman") should be adjudicated in the district court because of potential concerns regarding subject matter jurisdiction over Kornman. Further, resolution of Berg's and Kornman's claims (to the extent it covers Berg's claims against Kornman) against the Heritage estate can be resolved efficiently in one proceeding.

## I.     <u>JURISDICTION</u>

This Court has jurisdiction over this motion pursuant to 28 U.S.C. § 157(d), Federal Rule of Bankruptcy Procedure 5011, and Rule 5011.1 of the Local Rules of Bankruptcy Procedure.

## II.     <u>PRELIMINARY STATEMENT</u>

The Trustee sued Carl E. Berg based on a promissory note in the sum of $3,009,362. That promissory note provided that Berg consented to "personal jurisdiction of the *state* and *federal* courts in Dallas County, Texas for any and all claims relating to this Note." The Trustee did not sue Berg in *state* court and he contends that suit in the bankruptcy court complies with the term "federal court" in the promissory note. However, in doing so, the Trustee could be jeopardizing Berg's rights to bring suit and seek jurisdiction over Gary M. Kornman, the third party defendant in this adversary proceeding because of the unique and sometimes limited nature of the bankruptcy court's "related to" jurisdiction under 28 U.S.C. §1334(b).

The case of *In re Walker*, 51 F.3d 562 (5th Cir. 1995) illustrates how bankruptcy courts may not always have subject matter administration over all third party complaints because some

---

actions might not conceivably affect the debtor's estate. If the parties are correct as they have so stipulated, then there is no harm; however, if they are wrong, then it would be a waste of judicial effort to resolve Berg's complaints against Kornman in the same proceeding as the Trustee's suit against Berg. Berg can show how this court can resolve two and potentially matters in one forum. The Court and the parties receive the benefit of three proceedings resolved for the price of one. It would be huge savings in costs for all parties.

For this reason, Berg requests that the Court withdraw the reference with regard to the following core and non-core matters so that they could all be determined in one forum and in one hearing or trial: (1) this entire adversary proceeding; (2) the Trustee's objection to Berg's proof of claim; and (3) any objection the Trustee may have to Kornman's proof of claim to the extent that its seeks a claim against the Heritage estate for any damages sustained by Berg.

### III. FACTUAL BACKGROUND

1.      The Debtor filed for bankruptcy in May 2004 under Chapter 11 initiating Case No. 04-35574 in the United States Bankruptcy Court, Northern District of Texas.

2.      In August 2004, the Court appointed Dennis Faulkner as Trustee.

3.      In September 2004, Kornman filed a proof of claim in the Heritage estate where he seeks damages for contribution, indemnity and reimbursement for third party claims. (Exhibit A – Proof of Claim of Kornman)

4.      In June 2006, the Trustee filed the above adversary proceeding against Carl E. Berg based on a promissory note in the sum of $3,009,362.00 made payable to Heritage, the debtor in Chapter 11. The suit acknowledged that Berg signed an Agreement in 2000 whereby he disclosed certain "strategies" which he used for purposes of state and federal taxes. Berg paid $4,531,862.00 as a "utilization fee" for the strategies. (Exhibit B – Trustee's Complaint)

---

**DEFENDANT CARL E. BERG'S MOTION TO WITHDRAW**
**THE BANKRUPTCY REFERENCE AND SUPPORTING BRIEF – Page 3**

5. Berg responded to the suit and filed a third party petition against Kornman. (Exhibit C – Berg's Answer, Counterclaim and Third Party Petition)

6. Berg filed a proof of claim in the amount of $9, 270,318 where he seeks damages for the utilization fee affirmative defenses to the promissory note and for damages under the Agreement of December 2000. (Exhibit D – Proof of Claim of Carl E. Berg)

7. Berg moved for arbitration regarding the Agreement and the promissory note. The Court orally ruled in October 24, 2004, that Berg was not entitled to arbitration over claims relating to the promissory note because the note did not contain an arbitration clause. The Bankruptcy Court raised questions regarding subject matter jurisdiction over Kornman with regard to the Third Party Complaint at the hearing on Berg's motion to compel arbitration heard on October 24, 2006. Berg responded to the Bankruptcy Court's inquiries. Kornman filed a statement that the Bankruptcy Court has jurisdiction over the third party complaint. No ruling has been issued as of the filing of this motion.

8. This adversary proceeding has been set for docket call on April 3, 2007. (Exhibit E – Docket Call).

9. In October 2006, the Trustee objected to Berg's proof of claim and obtained a hearing on that matter on December 18, 2006. (Exhibit F – Order Establishing Pre-Trial Procedures In Relation to Trustee's Objection to Claim of Carl E. Berg)

## ARGUMENT

### A. Cause Justifies Withdrawal of Reference

Under 28 U.S.C. 157(d), the district court may withdraw, in whole or in part, any case or proceeding referred under this section on its own motion or on a timely motion by any party for "cause" shown. The term "cause" is specific to each case. *United States v. Boren (In re*

*Lincoln),* 2005 Bankr. LEXIS 1152 (Bankr. N.D. Tex. 2005). The Fifth Circuit in early case law set out numerous factors in its opinion in *Holland America Ins. Co. v. Succession of Roy,* 777 F.2d 992 (5th Cir. 1985) which require the Court to consider (1) whether the matter involves core, non-core, or mixed issues; (2) whether or not there has been a jury demand; (3) the effect of withdrawal on judicial economy; (4) reduction in forum shopping; (5) uniformity in bankruptcy administration; (6) fostering the economical use of the debtor's and creditor's resources; and (7) expediting the bankruptcy process. *Holland,* 777 F.2d at 998-99.

Berg does not have some of the more predictable reasons that would justify withdrawal of the reference such as those found in *Lloyd v. Lewis (In re Lloyd),* 2005 Bankr. LEXIS 539 (Bankr. N.D. Tex. 2005) where Judge Lynn found "cause" to justify the withdrawal of the reference because the defendants (1) had not filed a proof of claim; (2) timely demanded a jury trial; (3) did not expressly consent to the bankruptcy court conduct of a jury trial; and (4) the state law cause of action sought monetary damages for which defendants were otherwise entitled to a jury trial absent the bankruptcy proceedings. *Id.*

Berg's reasons are entirely different. His concern is motivated by a desire to reduce costs and to have at least three matters that relate to each other adjudicated in one forum and at the same time. These are: (1) this adversary proceeding; (2) the Trustee's objection to Berg's proof of claim; and (3) any objection the Trustee may file to Kornman's proof of claim only to the extent it seeks damages against the Heritage estate for Berg's claims.[1] These matters involve the same issues and could be efficiently tried at one hearing or trial rather than separately.

---

[1] Kornman's counsel contends that Kornman's proof of claim against Heritage extends to claims made by Berg.

1.     **Whether the Matter Involves Core or Non-core or Mixed Issues.**

The adversary proceeding involves both core and non-core claims. The Trustee's claims against Berg are core as the Trustee has sought a turnover and is attempting to liquidate assets of the estate. 28 U.S.C. §157(b)(2)(E), (O). Similarly, the Trustee's objections to both Berg and Kornman's proof of claim are core as they also fall within 28 U.S.C. §157(b)(2)(B). Berg's third party petition and claims against Kornman are non-core and can be heard by the district court under its "related to" jurisdiction of 28 U.S.C. § 1334(b). *Wood v. Wood (In re Wood)*, 825 F.2d 90 (5th Cir. 1987); *Randall & Blake, Inc. v. Evans (In re Canion)*, 196 F.3d 579 (5th Cir. 1999). The district court can refer the "related to" jurisdiction to the bankruptcy court under 28 U.S.C. §157(c).

The test to establish "related to" bankruptcy jurisdiction is "whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Id.* Berg's claims against Kornman are "related to" and thus are non-core because if Berg prevails, Kornman will seek indemnification from the debtor. *Id.* Similar claims were held to be non-core in *Liquidating Corp. v. LaSalle Capital Group, Inc. (In re 131 Liquidating Corp.)*, 222 B.R. 209, 212-13 (S.D.N.Y. 1998) where the court, in granting a motion to withdraw reference, held that third party claims by a debtor's shareholders against creditors and other parties were non-core claims. *See also In re Michigan Real Estate Ins. Trust*, 87 B.R. 447 (E.D. Mich. 1988); *In re G-I Holdings, Inc.*, 295 B.R. 211 (D.N.J. 2003); *Massey v. Genco*, 1996 U.S. Dist. LEXIS 13794 (E.D. La. 1996).

2.     **Whether a Jury Has Been Demanded.**

No jury demand has been filed. The relevant documents contain a waiver of jury trial.

---

### 3.    The Effect of Withdrawal on Judicial Economy.

While it is typical for a bankruptcy court to handle objections to claims hearings, if the Trustee's objections to both Berg claim and if he objects to Kornman's claim (to the extent it applies to Berg's claims) all of these matters could be heard within the adversary proceeding. The Court could resolve three disputes for the price of one – a much needed and efficient manner since these matters will involve the same facts and circumstances, fact witnesses, expert witnesses and attorneys who would be familiar with the proceedings. Legal fees would be reduced by reason of the parties responding to one pre-trial scheduling order, discovery and one trial. The current schedule requires a trial in April 2007 and an objection to claim proceeding on December 18, 2006. The current schedule of having two matters with two separate trials is not an efficient method to try this matter.  This requires Berg to continue to seek redress from the bankruptcy court from perceived efforts to make things difficult for him.

Berg moved to compel arbitration and in that connection the Bankruptcy Court inquired about subject matter jurisdiction over Kornman. The bankruptcy court questioned whether it would be error to order Kornman to arbitration if there was no subject matter jurisdiction over him. Kornman has consented to jurisdiction and filed a statement in response to the Bankruptcy Court's inquiries.   While all parties in this adversary proceeding concede subject matter jurisdiction over the third party complaint, Kornman, could change his mind and argue lack of subject matter jurisdiction on appeal, even though he stipulates to jurisdiction in the bankruptcy court. This occurred in *Randall & Blake, Inc. v. Evans (In re Canion)*, 196 F.3d 579 (5th Cir. 1999) and this leaves the parties in a predicament in that if they all concede "related to" jurisdiction, they could still guess wrong.

In the case of *In re G-I Holdings*, 295 B.R. 211 (D.N.J. 2003) the court held that withdraw of the reference with regard to the third party claims against the subsidiary of the debtor was appropriate because it would speed the bankruptcy to resolution and conserve scarce resources of the parties and of both courts. *Id.* at 217. Further, the court found it in its best interest to adjudicate the non-bankruptcy dispute once, while the Bankruptcy court continues to administer the chapter 11 reorganization. *Id.* at 217-18.

### 4.    Forum Shopping.

The current proceeding has the effect as forum shopping because of the limited jurisdictional nature of the bankruptcy court over third party claims. This has created procedural difficulties for Berg in asserting his rights. There is no indication that the promissory references to *state* and *federal* court meant that a third party claims would be prohibited. Berg can establish diversity jurisdiction over Kornman and he could establish jurisdiction with regard to third party practice over Kornman in a state court in Dallas County, Texas. The current proceeding has the possibility of limiting Berg's rights and requiring Berg to have two separate trials and to seek his remedies against Kornman in another forum.

Another difficulty is that after Berg filed his proof of claim, the Trustee stated in the **Trustee's Response in Opposition to Defendant Carl E. Berg's Motion to Compel Arbitration** that *"[T]he Trustee intends to file a formal objection to the Berg POC shortly, and will seek consolidation of the objection with this case."* The Trustee agreed to reset this adversary proceeding until April 3, 2007 and it has now been reset to that date.

However, the Trustee has obtained an ex parte setting on Berg's proof of claim for hearing on December 18, 2006 and will not consolidate the proof of claim proceeding into the adversary proceeding, thus requiring Berg to be prepared for the proof of claim hearing in shortly

over a month time period. This is exactly why all matters should be moved into one proceeding so that all parties can have adequate time to prepare for trial of the entire matter and can accomplish much in a single effort.

**5.** **Uniformity in Bankruptcy Administration.**

This issue can assist the Court by requiring the Trustee's objections to Berg's and the adversary proceeding to be tried in the same forum. Further, if the Trustee objects to Kornman's proof of claim to the extent it covers Berg's claims, then the estate can have this issue heard as well. This would create uniformity by settling all of these issues in one proceeding rather than having separate trials on all of these matters.

**6.** **Fostering Economical Use of Debtor's and Creditors' Resources.**

Withdrawing the reference would be economical for the debtor's resources because all three referenced matters requested could be resolved in the same proceeding. As stated above, the Court has issued a scheduling order with regard to the adversary proceeding and it has been set for docket call on April 3, 2007. However, Berg is under a new scheduling order with regard to his proof of claim that is set for hearing on December 18, 2006. There is no reason these two matters cannot be heard together. If the Trustee objects to Kornman's proof of claim based on Berg's damages, this could be heard in the same forum.

**7.** **Expediting the Bankruptcy Process.**

The case is set for trial in April 2007 in the bankruptcy court. Berg does not know if the federal court could hear the matter during that month. Berg believes there would be sufficient time for the parties to proceed uniformly and that the bankruptcy court could determine all pre-trial matters and that a hearing could be conducted as soon as the federal court allows it on its calendar.

**WHEREFORE,** Berg requests that the Court withdraw the reference as to: (1) this entire adversary proceeding; (2) the Trustee's objection to Berg's proof of claim; and (3) any objection the Trustee might have to Kornman's proof of claim insofar as it relates *only* to damages that Kornman may seeks against Heritage based on damages to Berg in the Third Party Petition.

Respectfully submitted

By:  /s/ Perry J. Cockerell
       PERRY J. COCKERELL
       State Bar No. 04462500

       **CANTEY & HANGER, L.L.P.**
       1999 Bryan Street, Suite 3330
       Dallas, TX  75201
       (214) 978-4139
       Fax:  (214) 978-4150

       **ATTORNEYS FOR CARL E. BERG**

## CERTIFICATE OF CONFERENCE

I have conferred with the attorneys for the Trustee and Mr. Kornman. This motion is opposed.

/s/ Perry J. Cockerell
PERRY J. COCKERELL

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of this document was mailed to all counsel

listed below by electronic court filing, on this, the 2nd day of November, 2006.

E. Lee Morris
Munsch Hardt Kopf & Harr, P.C.
3800 Lincoln Plaza
500 N. Akard Street
Dallas, Texas  75201-6659

Jeffrey Tillotson,
John Volney
Lynn, Tillotson & Pinker, LLP
750 N. St. Paul, Suite 1400
Dallas, Texas  75201

/s/ Perry J. Cockerell
PERRY J. COCKERELL

FORM B10 (Official Form 10) (04/04)

| UNITED STATES BANKRUPTCY COURT   NORTHERN DISTRICT OF TEXAS/~~FORT WORTH~~ DIVISION | PROOF OF CLAIM |
|---|---|

_DALLAS_

| Name of Debtor<br>**The Heritage Organization, L.L.C.** | Case Number<br>**04-35574-SAF-11** | Chapter<br>**11** |
|---|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

| Name of Creditor (The person or other entity to whom the debtor owes money or property):<br>**Gary M. Kornman**<br>Name and address where notices should be sent:<br>**3640 Haynie Avenue**<br>**Dallas, TX 75205**<br><br>Telephone number: | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br>☐ Check box if you have never received any notices from the bankruptcy court in this case.<br>☐ Check box if the address differs from the address on the envelope sent to you by the court. | This Space is for Court Use Only |
|---|---|---|

| Account or other number by which creditor identifies debtor: | Check here if this claim: ☐ replaces ☑ amends a previously filed claim, dated: **09·14·04** |
|---|---|

**1. Basis for Claim:**
- ☐ Goods sold
- ☐ Services performed
- ☐ Money loaned
- ☐ Personal injury/wrongful death
- ☐ Taxes
- ☑ Other **See Attached**

- ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
- ☐ Wages, salaries, and compensation (fill out below)

Last four digits of SS #:
Unpaid compensations for services performed
from _____ to _____
         (date)                        (date)

| **2. Date debt was incurred:**   **SEE ATTACHED** | **3. If court judgment, date obtained:** |
|---|---|

**4. Total Amount of Claim at Time Case Filed:**   **SEE ATTACHED** _____ _____ _____ _____
(unsecured)        (secured)        (priority)        (Total)

If all or part of your claim is secured or entitled to priority, also complete Item 5 or 7 below.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**5. Secured Claim.**
☐ Check this box if your claim is secured by collateral (including a right of setoff).

Brief Description of Collateral:
- ☐ Real Estate   ☐ Motor Vehicle
- ☐ Other

Value of Collateral: $_____

Amount of arrearage and other charges _at time case filed_ included in secured claim, if any: $_____

**6. Unsecured Nonpriority Claim**   **SEE ATTACHED**
☑ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

**7. Unsecured Priority Claim.**
☐ Check this box if you have an unsecured priority claim
Amount entitled to priority: $_____
Specify the priority of the claim:
- ☐ Wages, salaries, or commissions (up to $4,925)*, earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3).
- ☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(4).
- ☐ Up to $2,225* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C § 507(a)(6).
- ☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(7)
- ☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
- ☐ Other - Specify applicable paragraph - 11 U.S.C. § 507(a)(____).

*Amounts are subject to adjustment on 4/1/07, and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**8. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**9. Supporting Documents:** _Attach copies of supporting documents,_ such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**10. Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

This Space is for Court Use Only

| Date<br><br>**9.15·04** | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any)<br><br>_Gary M. Kornman_<br>**Gary M. Kornman** |
|---|---|

_Penalty for presenting fraudulent claim:_ Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

This Proof of Claim amends the Proof of Claim filed on September 14, 2004, and docketed by the Clerk of the Court as Proof of Claim No. 25.

This document is the attachment to the amended Proof of Claim-Form B10 (Official Form 10) (04/04) filed by Gary M. Kornman on September 15, 2004 against The Heritage Organization, L.L.C. as the Debtor in Chapter 11 - Case Number 04-35574-SAF-11 United States Bankruptcy Court Northern District of Texas/Dallas Division. This attachment states the claims by Gary M. Kornman against The Heritage Organization, L.L.C. as the Debtor in Chapter 11.

1. The definitions and explanations of terms, conditions and/or provisions stated in this document in (a) through (d) below or elsewhere in this document shall govern the meaning, interpretation and application of such terms, conditions and/or provisions as used in this document. Defined terms, conditions and/or provisions are signified by being capitalized. Words not defined in this document shall have their ordinary meanings. For easier reference, a term, condition and/or provision may be bolded, underlined or designated "as defined Herein" whenever a definition or explanation of a term, condition and/or provision is given in this document. It is not intended that this formatting or designation, or the absence thereof, have any effect on this document for any purpose including, as examples but not limited to, its validity, requirements, construction, enforcement, or interpretation. As used in this document, the following terms, conditions and/or provisions shall have the respective meanings stated in this document in (a) through (d) below:

(a) The term, condition and/or provision **"Any and All Claims"** shall be broadly construed and means and includes any and all past, present and/or future claims of any kind or nature, any and all past, present and/or future potential claims of any kind or nature, any and all past, present and/or future potential disputes of any kind or nature, any and all past, present and/or future damages of any kind or nature, any and all past, present and/or future obligations of any kind or nature, any and all past, present and/or future debts of any kind or nature, any and all past, present and/or future disgorgements of any kind or nature, any and all past, present and/or future torts of any kind or nature, any and all past, present and/or future causes of action of any kind or nature, any and all past, present and/or future liabilities of any kind or nature, any and all past, present and/or future theories of recovery of any kind or nature, any and all past, present and/or future choses in action of any kind or nature, any and all past, present and/or future covenants of any kind or nature, any and all past, present and/or future losses of any kind or nature, any and all past, present and/or future agreements of any kind or nature, any and all past, present and/or future contracts of any kind or nature, any and all past, present and/or future costs of any kind or nature, any and all past, present and/or future fees of any kind or nature, any and all past, present and/or future expenses of any kind or nature, any and all past, present and/or future interest (both pre-judgment and post-judgment) of any kind or nature, any and all past, present and/or future attorneys' fees of any kind or nature, any and all past, present and/or future liens of any kind or nature, any and all past, present and/or future charges of any kind or nature, any and all past, present and/or future controversies of any kind or nature, any and all past, present and/or future responsibilities of any kind or nature, any and all past, present and/or future gross negligence of any kind or nature, any and all past, present and/or future wrongful acts of any kind or nature, any and all past, present and/or future promises of any kind or nature, any and all past, present and/or future judgments of any kind or nature, any and all past, present and/or future executions of any kind or nature, any and/or all past, present and/or future legal actions or lawsuits of any kind or nature, any and/or all past, present and/or future arbitrations of any kind or nature, any and all past, present and/or future taxes and/or tax assessments of any kind or nature, any and all past, present and/or future interest on any and all past, present and/or future taxes

and/or tax assessments of any kind or nature, any and all past, present and/or future penalties on any and all past, present and/or future taxes and/or tax assessments of any kind or nature, any and all past, present and/or future administrative proceedings of any kind or nature by The United States of America, any and all past, present and/or future administrative proceedings of any kind or nature by any and all Governmental Authority, any and all past, present and/or future fines, forfeitures and/or penalties of any kind or nature by any and all Governmental Authority, any and all past, present and/or future disgorgements of any kind or nature by any and all Governmental Authority, any and all past, present and/or future administrative proceedings of any kind or nature by any and all Governmental Authority, any and all past, present and/or future other relief and/or any benefit of any kind or nature in equity, at law and/or in any and all past, present and/or future arbitrations of any kind (regardless of whether any and/or all of the items stated in this paragraph are brought as any action in equity, any action at law, any action for declaratory relief, any action for injunctive relief, any counterclaim, any cross-action or cross-claim, any claim and/or demand for and/or in any arbitration, any interpleader, any impleader, any third-party action and/or otherwise), any and all of the matters, actions, claims and/or items of any kind or nature stated or named in this definition collectively **from the beginning of time to the end of the world** and/or each of the matters, actions, claims and/or items of any kind or nature stated or named in this definition separately **from the beginning of time to the end of the world** including as examples, but in no way limited to, any and all of the matters, actions, claims and/or items of any kind or nature stated or named in this definition which now exist or any and/or all of the matters, actions, claims and/or items of any kind or nature stated or named in this definition which may arise thereafter at any time, whether or not joint, several and/or otherwise, whether or not now known and unknown and/or both, whether or not contractual or statutory and/or both, whether or not at law or in equity and/or both, whether or not matured or contingent, whether or not inchoate and/or both, whether liquidated or unliquidated and/or both, whether or not direct or derivative and/or both, whether or not sounding in contract or in tort and/or both, whether or not under common law and/or both, whether or not Relating To any present or future statute or regulation and/or both, of The United States of America or any state of The United States of America, whether or not Relating To any present or future statute or regulation of any other country and/or jurisdiction and/or whether or not Relating To any present or future state statute or regulation and/or both, whether or not Relating To any omission or any commission of any act and/or both, whether or not Relating To any performance, validity, enforceability, effect, construction or application of any term, condition and/or provision of any agreement in the present or the future and/or both, whether or not Relating To the amount or payment of any fees, indemnities, damages, costs, expenses, reimbursements and/or other payment of any kind or nature in the present or the future Relating To any agreement, whether or not Relating To any and/or all of the matters, actions, claims and/or items stated or named in this definition of any kind or nature Relating To any agreement, any omission or commission, and/or both, of any act of any kind or nature Relating To any agreement, its terms, its conditions and/or its provisions, whether or not in the present or the future and whether or not Relating To any and/or all of the matters, actions, claims and/or items of any kind or nature stated or named in this definition and shall apply to any and/or all of the matters, actions, claims and/or items of any kind or nature stated or named in this definition whether at law and/or in equity, whether sounding in contract and/or in tort regardless of whether any of the matters, actions, claims and/or items stated or named in this definition are brought as any action in equity, any action at law, any action for declaratory relief and/or declaratory judgments, any action for injunctive relief (temporary or permanent), any action for

Page 2 of 9

restraining orders, any counterclaim, any cross-action or cross-claim, any defense, any of the matters, actions, claims stated or named in this definition as demands for and/or in any arbitration, any interpleader, any impleader, any third-party action and/or in any other way and specifically including, as examples but not limited to, any and all claims or disputes Relating To any of the facts, issues or matters stated in these claims and definitions.

(b) The term, condition and/or provision **"Cost and Expenses"** shall be broadly construed and means and includes any and all past, present and/or future costs, expenditures, charges, fees, outlays, outflows, disbursements, payments, overhead, deposits, retainers, amounts owed, spending, bills and/or invoices of any and all kinds or nature for, on behalf of and/or to benefit the Claimant and/or for, on behalf of and/or to benefit any person and/or entity Related To the Claimant including, as examples but not limited to, any and all of the following:

i) Any and all costs, expenditures, charges, fees, outlays, outflows, disbursements, payments, overhead, deposits, retainers, amounts owed, spending, bills and/or invoices of any kind or nature, whether or not litigation and/or arbitration is commenced Relating To attorneys' fees of any kind or nature; and/or

ii) Any and all costs, expenditures, charges, fees, outlays, outflows, disbursements, payments, overhead, deposits, retainers, amounts owed, spending, bills and/or invoices of any kind or nature Relating To jury or trial consultants of any kind or nature; and/or

iii) Any and all costs, expenditures, charges, fees, outlays, outflows, disbursements, payments, overhead, deposits, retainers, amounts owed, spending, bills and/or invoices of any kind or nature for travel costs or expenses of any kind or nature; and/or

iv) Any and all costs, expenditures, charges, fees, outlays, outflows, disbursements, payments, overhead, deposits, retainers, amounts owed, spending, bills and/or invoices of any kind or nature for travel costs or expenses of any kind or nature for, on behalf of or to benefit the Claimant and/or any person and/or entity Related To the Claimant Relating To any witnesses and/or any Experts of any kind or nature; and/or

v) Any and all costs, expenditures, charges, fees, outlays, outflows, disbursements, payments, overhead, deposits, retainers, amounts owed, spending, bills and/or invoices of any kind or nature for travel costs or expenses of any kind or nature; and/or

vi) Any and all costs, expenditures, charges, fees, outlays, outflows, disbursements, payments, overhead, deposits, retainers, amounts owed, spending, bills and/or invoices of any kind or nature for travel of any kind or nature for, on behalf of or to benefit the Claimant and/or any person and/or entity Related To the Claimant Relating To any consultant of any kind or nature; and/or

vii) Any and all costs, expenditures, charges, fees, outlays, outflows, disbursements, payments, overhead, deposits, retainers, amounts owed, spending, bills and/or invoices of any kind or nature Relating To practice, research, consultants and/or implementation Relating To any jury or trial studies, sessions and/or models of any kind or nature for, on behalf of or to benefit the Claimant and/or any person and/or entity Related To the Claimant Relating To practice, research, consultants

and/or implementation Relating To any jury or trial studies, sessions and/or models of any kind or nature; and/or

viii) Any and all costs, expenditures, charges, fees, outlays, outflows, disbursements, payments, overhead, deposits, retainers, amounts owed, spending, bills and/or invoices of any kind or nature Relating To Experts of any kind or nature for, on behalf of or to benefit the Claimant and/or any person and/or entity Related To the Claimant Relating To Experts of any kind or nature; and/or

ix) Any and all costs, expenditures, charges, fees, outlays, outflows, disbursements, payments, overhead, deposits, retainers, amounts owed, spending, bills and/or invoices of any kind or nature Relating To any witnesses of any kind or nature for, on behalf of or to benefit the Claimant and/or any person and/or entity Related To the Claimant Relating To any witnesses of any kind or nature; and/or

x) Any and all costs, expenditures, charges, fees, outlays, outflows, disbursements, payments, overhead, deposits, retainers, amounts owed, spending, bills and/or invoices of any kind or nature of any kind or nature Relating To avoiding, preventing, settling and/or defending Any and All Claims against, hostile to, in opposition to for, on behalf of or to benefit for, on behalf of or to benefit the Claimant and/or any person and/or entity Related To the Claimant, regardless of whether the outcome of the Any and All Claims is favorable or unfavorable to the Claimant and/or any person and/or entity Related To the Claimant; and/or

xi) Any and all costs, expenditures, charges, fees, outlays, outflows, disbursements, payments, overhead, deposits, retainers, amounts owed, spending, bills and/or invoices of any kind or nature Relating To members of an arbitration panel for, on behalf of or to benefit the Claimant and/or any person and/or entity Related To the Claimant Relating To members of an arbitration panel of any kind or nature; and/or

xii) Any and all costs, expenditures, charges, fees, outlays, outflows, disbursements, payments, overhead, deposits, retainers, amounts owed, spending, bills and/or invoices of any kind or nature Relating To consulting, expert, professional and/or information service, advice and/or consulting Relating To assistance engaged by an arbitration panel for, on behalf of or to benefit the Claimant and/or any person and/or entity Related To the Claimant; and/or

xiii) Any and all costs, expenditures, charges, fees, outlays, outflows, disbursements, payments, overhead, deposits, retainers, amounts owed, spending, bills and/or invoices of any kind or nature Relating To witnesses to such extent as an arbitration panel may deem appropriate for, on behalf of or to benefit the Claimant and/or any person and/or entity Related To the Claimant; and/or

xiv) Any and all costs, expenditures, charges, fees, outlays, outflows, disbursements, payments, overhead, deposits, retainers, amounts owed, spending, bills and/or invoices of any kind or nature for legal representation, assistance and experts incurred by a Party to such extent as an arbitration panel may deem appropriate; for, on behalf of or to benefit the Claimant and/or any person and/or entity Related To the Claimant; and/or

xv) Any and all costs, expenditures, charges, fees, outlays, outflows, disbursements, payments, overhead, deposits, retainers, amounts owed, spending, bills and/or invoices of any kind or nature of arbitration administration with respect to any arbitration; and/or

xvi) Any and all costs, expenditures, charges, fees, outlays, outflows, disbursements, payments, overhead, deposits, retainers, amounts owed, spending, bills and/or invoices of any kind or nature of transcripts, depositions, discovery documents; and/or

xvii) Any and all costs, expenditures, charges, fees, outlays, outflows, disbursements, payments, overhead, deposits, retainers, amounts owed, spending, bills and/or invoices of any kind or nature of meeting and hearing facilities; and/or

xviii) Any and all using up or loss of value of a resource that has been used and/or expended and/or the amount of value or money outlaid, lost, spent, disbursed, charged, deposited, incurred, owed and/or paid out in order to buy, to have and/or to receive goods and/or services for, on behalf of or to benefit for, on behalf of or to benefit the Claimant and/or any person and/or entity Related To the Claimant

(c) The term, condition and/or provision **"Governmental Authority"** means and includes the government of The United States of America, any and all political subdivisions thereof and/or any and all persons and/or entities of any kind exercising executive, legislative, judicial, regulatory, military and/or administrative functions of, authority of, powers of, pertaining to and/or Relating To the government of The United States of America and/or any and all political subdivisions thereof. The term, condition and/or provision **"Governmental Authority"** further means and includes the government of any and all states of The United States of America, any and all political subdivisions thereof and/or any and all persons and/or entities of any kind exercising executive, legislative, judicial, regulatory, military and/or administrative functions of, authority of, powers of, pertaining to and/or Relating To the government of any and all states of The United States of America and/or any and all political subdivisions thereof. The term, condition and/or provision **"Governmental Authority"** shall also mean and include any government of any and all countries other than The United States of America, any government of any state of any and all countries other than The United States of America and/or any government of any and all political subdivisions of any kind of any and all countries other than The United States of America other than The United States of America and/or any and persons and/or entities of any kind exercising executive, legislative, judicial, regulatory, military and/or administrative functions of, authority of, powers of, pertaining to and/or Relating To any government of any and all countries other than The United States of America, Relating To any government of any and all states of any and all countries other than The United States of America and/or Relating To any government of any and all political subdivisions of any and all countries other than The United States of America.

(d) The terms, conditions and/or provisions **"Relates", "Relate To," "Related To," "Relating To"** and **"Relating Thereto"** or any variant thereof, mean and include any and all relationships or connections of any nature or kind including, as examples but not limited to, any of the following meanings: relating to, under, referring to, supporting, based on, located in, considered in connection with, bearing, arising under, evidencing, indicating, reporting on, recording, alluding to, responding to, concerning, opposing, favoring, connected with, commenting on, in respect of, about, regarding, bearing on, discussing, showing, describing, reflecting, analyzing, constituting, being under or brought under.

Page 5 of 9

2. The Claimant asserts and claims rights to and/or for indemnity, contribution and reimbursement against the Debtor for Any and All Claims asserted against the Claimant Related To any and all of the following activities, matters, actions, omissions, issues, situations, claims, persons and/or entities and/or asserts and claims rights to and/or for indemnity, contribution and reimbursement against the Debtor for any and all Costs and Expenses Related To Any and All Claims asserted against the Claimant Related To any and/or all of the following activities, involvement, transactions, matters, actions, omissions, issues, relationships, affiliations, associations, situations, claims, persons and/or entities:

a) Claimant's past and/or present activities, involvement, transactions, matters, actions, omissions, relationships, affiliations and/or associations Relating To the Debtor and/or any of its affiliates, in any position and/or capacity including, as examples but not limited to, any employment of Claimant by Debtor, Claimant's service as an employee, officer, executive, manager, managing member, agent, director and/or representative of Debtor and/or Claimant's acting as an employee, officer, executive, manager, managing member, agent, director and/or representative of Debtor; and/or

b) Claimant's activities, involvement, matters, actions, omissions, relationships, affiliations associations, and/or performance Relating To any duties or services for, or on behalf of, or related to, the Debtor, including, as examples but not limited to, Claimant's actions and/or capacity as an officer, director, employee, agent, representative or affiliate of the Debtor; and/or

c) Claimant's activities, involvement, matters, actions, omissions, relationships, affiliations, associations and/or performance Relating To the Debtor's business, clients, employees, assets, management and/or activities which Relate To Any and All Claims by any Governmental Authority, any person and/or entity against the Claimant; and/or

d) Any claim asserted against the Debtor by any Governmental Authority, person and/or entity and/or any debt or obligation of the Debtor; and/or

e) Any tax, taxable income, interest on taxes and/or penalties assessed and/or levied against the Claimant Relating To the Debtor and/or any income, expense and/or deduction from income Relating To Federal and/or State taxes and/or Relating To the Debtor and/or any tax, taxable income, interest on taxes and/or penalties assessed and/or levied against the Claimant Relating To taxable income from the Debtor to the Claimant; and/or

f) GMK Family Holdings, L.L.C., as tax matters partner for The Heritage Organization, L.L.C, a TEFRA partnership, v. Commissioner of Internal Revenue (filed at the United States Tax Court on July 13, 2004). In this case, the Debtor is seeking a determination that the IRS improperly denied the Debtor a research expense deduction of $6,069,189. for tax year 2000 and that the IRS improperly treated this amount as being distributed by the Debtor to Claimant. If the IRS were successful in arguing that the Debtor distributed $6,069,189. to Claimant, such an amount would be taxable to Claimant and Claimant would be taxed on income that was never received by Claimant causing the Claimant to be liable for additional taxes, interest, and/or penalties; and/or

g) Any claims, activities, involvement, matters, actions, omissions, transactions relationships, affiliations, associations and/or performance Relating To the Debtor Related To the Debtor and/or any affiliate, member, officer, executive, director, employee or associate thereof; and/or

h) Any claims, activities, involvement, matters, actions, omissions, transactions relationships, affiliations, associations and/or performance Relating To the Debtor and/or any examination by the Internal Revenue Service; and/or

i) Any claim, matter and/or transaction Related To a promoter penalty examination by the Internal Revenue Service when they issued a summons to The Heritage Organization, L.L.C. on April 14, 2003 under sections 6700, 6701, and 6708 of the Internal Revenue Code, which sought to determine liability under these Sections. Penalties could be imposed Related To Claimant's activities, involvement, matters, actions, omissions, relationships, affiliations associations and/or performance Relating To the Debtor and/or imposed Related To Claimant's activities and/or capacity as an officer, executive, manager, director, employee, agent, representative or affiliate of the Debtor.

3. The preceding Sections 1 through 2 herein shall include, as examples but shall not be limited to, all such rights to indemnity, contribution and/or reimbursement by the Claimant for any Costs and Expenses pursuant to any applicable policy of the Debtor, law and/or any contract or agreement, including without limitation pursuant to Article VIII of the Restated Limited Liability Company Agreement of The Heritage Organization, L.L.C. dated September 9, 1998, to which reference is made herein for all purposes.

4. Without modifying and/or limiting any of the preceding Sections 1 through 3 herein, Claimant's assertions and claimed rights to and/or for indemnity, contribution and reimbursement against the Debtor for Any and All Claims asserted against the Claimant Related To any and all of the following legal proceedings (**"Proceedings"**), whether as claims, cross-claims, counterclaims or third party actions and/or asserted and claimed rights to and/or for indemnity, contribution and reimbursement against the Debtor for any and all Costs and Expenses shall include Any and All Claims now or hereafter asserted, or which could be asserted, in or Related To any and/or all of the following Proceedings whether as claims, cross-claims, counterclaims or third party actions:

a) *Heritage Organization, L.L.C. v. Ralph Canada, Jr., v. Gary M. Kornman*, Adversary No. 04-03338 in The United States Bankruptcy Court for the Northern District of Texas, Dallas Division; and/or

b) *W. Ralph Canada, Jr. and Anthony J. Bird v. Gary M. Kornman and The Heritage Organization*, Case No. 71-116-00502-03, now pending before the American Arbitration Association in Dallas, Texas; and/or

c) *The Heritage Organization, L.L.C. v. Anthony J. Bird*, and pending before the American Arbitration Association in Dallas, Texas; and/or

d) *Anthony J. Bird vs. The Heritage Organization, L.L.C., Gary M. Kornman and Joseph Van Voorhis*, Case No. 02-07679 in the 298th Judicial District Court of Dallas County, Texas; and/or

e) *John Rockne Wilferth vs. The Heritage Organization, L.L.C.*, Case No. 71-116-00331-2; and/or

f) *AE Marketing, L.L.C., et al, vs. Jenkins-Baldwin Corp., Meralex, L.P., Revanche, L.L.C. and Howard M. Jenkins*, Case No. 01-8347 in the 191st District Court of Dallas County, Texas; and/or

g) *Revanche, L.L.C. and Howard Jenkins vs. The Heritage Organization, L.L.C., GMK Family Holdings, L.L.C. and Gary M. Kornman*, Cause No. 2003-09710 in the 270th District Court of Harris County, Texas; and/or

h) *Meralex, L.P. and Howard M. Jenkins vs. The Heritage Organization, L.L.C., GMK Family Holdings, L.L.C., Gary M. Kornman, W. Ralph Canada, Jr., Ahrens & De Angeli, P.L.L.C., and Edward D. Ahrens*, Case No. 3-03-CV-0991-D In The United States District Court for the Northern District of Texas, Dallas Division; and/or

i) *Bettie Joan Rainwater and Homer Ben Rainwater vs. The Heritage Organization, L.L.C., et al*, Cause No. 04-03927 in the 68th District Court of Dallas County, Texas; and/or

j) *Estate of W. Ronald Sandwith and Mikron Industries, Inc. v. Heritage Organization, L.L.C.,* now pending before the American Arbitration Association in Dallas, Texas; and/or

k) *Securities Exchange Commission v. Gary M. Kornman*, now pending in The United States District Court for the Northern District of Texas, Dallas Division.

5. Without modifying and/or limiting any of the preceding Sections 1 through 4 herein, the claims and/or rights to and/or for indemnity, contribution and reimbursement by the Claimant against the Debtor for Any and All Claims and/or for any and all Costs and Expenses shall include Any and All Claims against Claimant by any of the following persons or entities, whether such claims are asserted jointly, severally or jointly and severally, or by any successor, parent, affiliate or associate of any of the following persons or entities:

a) Howard M. Jenkins; and/or

b) BBM, Inc., formerly known as Jenkins-Baldwin Corp.; and/or

c) Meralex, L.P.; and/or

d) Revanche, L.L.C.; and/or

e) W. Ralph Canada, Jr.; and/or

f) Anthony J. Bird; and/or

g) John Rockne Wilferth; and/or

h) Bettie Joan Rainwater and/or Homer Ben Rainwater; and/or

i) Estate of W. Ronald Sandwith; and/or

j) Mikron Industries, Inc.; and/or

k) The Securities Exchange Commission of The United States of America; and/or

l) The Internal Revenue Service of The United States of America; and/or

m) The United States of America; and/or

n) Lewis, Rice & Fingersh, L.C.; and/or

o) Michael D. Mulligan; and/or

p) Ahrens & De Angeli, P.L.L.C.; and/or

q) Edward D. Ahrens; and/or

r) The United States of America, or any agency, instrumentality, subdivision and/or affiliate thereof; and/or

s) Any person and/or entity which is a party to any of the Proceedings in any capacity or manner; and/or

t) Any person and/or entity which has served and/or acted in any capacity and/or manner for the Debtor and/or its affiliates including, as examples but not limited to, as an employee, officer, manager, managing director, executive, attorney, agent, representative and/or as legal counsel; and/or

u) Any person and/or entity filing a proof of claim in this bankruptcy case or otherwise asserting Any and All Claims against the Debtor.

v) Any person and/or entity filing Any and All Claims against the Claimant Relating To the Debtor in any way.

6. The Claimant hereby, by filing this claim for Any and All Claims stated in Sections 1 through 5 herein, asserts and claims rights to and/or for indemnity, contribution and reimbursement against the Debtor for Any and All Claims, which may exist by and/or on behalf of the Claimant against the Debtor, to the full extent allowed by any agreement, any applicable law and/or any contract including, as an example but not limited to, all Costs and Expenses.

7. In addition to the claims for indemnity, contribution and reimbursement against the Debtor for Any and All Claims and/or for any and all Costs and Expenses Related To Any and All Claims as stated in Sections 1 through 6 herein, the Debtor is indebted to Claimant pursuant to the following instruments and claim is hereby made therefor:

a) Debtor's check no. 21203 executed by the Debtor dated March 15, 2004 in the amount of $7,000; and

b) Debtor's check no. 21 394 executed by Debtor dated March 31, 2004 in the amount of $7,000. This represents two checks delivered by Debtor to Claimant and which were not honored or paid prior to the bankruptcy filing by the Debtor. Copies of these checks are attached; and

c) In addition, Debtor is indebted to Claimant for unpaid wages for the period after April 1, 2004 in an amount of not less than $11,770.

THE HERITAGE ORGANIZATION, L.L.C.
5001 SPRING VALLEY ROAD, SUITE 800E
DALLAS, TX 75244

21203

BANK ONE, N.A.
DALLAS, TX 75219
32-61/1110

3/15/2004

PAY TO THE
ORDER OF    Gary M. Korman

$ ***7,000.00

Seven Thousand and 00/100************************************************************ DOLLARS

Gary M. Korman
3640 Haynie Avenue
Dallas, TX 75205

VOID AFTER 180 DAYS
TWO SIGNATURES REQUIRED

MEMO    03/15/2004 - 03/15/2004 Pay Period

⑈021203⑈ ⑈111100061⑈4⑈    ⑈885484574⑈

THE HERITAGE ORGANIZATION, L.L.C.

Gary M. Korman
3640 Haynie Avenue
Dallas, TX 75205

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

| | 3/15/2004 | YTD 21203 |
|---|---|---|
| Discretionary | 11,770.00 | 23,540.00 |
| 401K Contribution | -88.28 | -3,301.56 |
| Federal Withholding | -4,511.06 | -142,967.12 |
| Medicare Employee | -170.66 | -6,365.42 |
| Salary | 0.00 | 416,666.65 |
| 125 - Dental Insurance | 0.00 | -140.85 |
| 125 - Medical Insurance | 0.00 | -1,070.85 |

© 2003 INTUIT INC. # 785 1-800-433-8810

THE HERITAGE ORGANIZATION, L.L.C.
5005 SPRING VALLEY ROAD, SUITE 800E
DALLAS, TX 75244

21394

BANK ONE, N.A.
DALLAS, TX 75219
32-2/1110

3/31/2004

PAY TO THE
ORDER OF _____ Gary M. Kornman

$ ***7,000.00

Seven Thousand and 00/100 ************************************************************** DOLLARS

Gary M. Kornman
3640 Haynie Avenue
Dallas, TX 75205

VOID AFTER 180 DAYS
TWO SIGNATURES REQUIRED

MEMO _____ 03/31/2004 - 03/31/2004 Pay Period

⑈021394⑈ ⑈111100061⑈ 188548574⑈

© 2003 INTUIT INC. # 765 1-800-431-9810

THE HERITAGE ORGANIZATION, LLC.

Gary M. Kornman
3640 Haynie Avenue
Dallas, TX 75205

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

| | | 3/31/2004 | 21394 YTD |
|---|---|---|---|
| Discretionary | | 11,770.00 | 35,310.00 |
| 401K Contribution | | -88.28 | -4,014.84 |
| Federal Withholding | | -4,511.06 | -174,267.18 |
| Medicare Employee | | -170.66 | -7,740.91 |
| Salary | | 0.00 | 499,999.98 |
| 125 - Dental Insurance | | 0.00 | -169.02 |
| 125 - Medical Insurance | | 0.00 | -1,285.02 |

98773

E. Lee Morris
Texas Bar No. 00788079
Davor Rukavina
Texas Bar No. 24030781
MUNSCH HARDT KOPF & HARR, P.C.
4000 Fountain Place
1445 Ross Avenue
Dallas, Texas 75202-2790
Telephone: (214) 855-7500
Facsimile: (214) 855-7584

*Attorneys for Dennis S. Faulkner, Trustee*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| THE HERITAGE ORGANIZATION, L.L.C., | § | CASE NO. 04-35574-BJH-11 |
| | § | (Chapter 11) |
|     Debtor. | § | |
| | § | |
| DENNIS S. FAULKNER, TRUSTEE, | § | |
| | § | |
|     Plaintiff, | § | |
| v. | § | ADVERSARY NO. 06-03401-bjh |
| | § | |
| CARL E. BERG, | § | |
| | § | |
|     Defendant. | § | |

### TRUSTEE'S ORIGINAL COMPLAINT

TO THE HONORABLE BARBARA J. HOUSER, U.S. BANKRUPTCY JUDGE:

    COMES NOW Dennis S. Faulkner (the "Trustee"), in his capacity as the duly-appointed Chapter 11 trustee of the estate of The Heritage Organization, L.L.C. ("Heritage"), and files his Original Complaint against Carl E. Berg ("Berg"), respectfully stating as follows:

( ̄ ı                                        ( ̇ ı

### Jurisdiction

1.    On May 17, 2004 (the "<u>Petition Date</u>"), Heritage filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code, thereby initiating Case No. 04-35574 with this Court (the "<u>Bankruptcy Case</u>").

2.    On August 13, 2004, the Court entered an order for the appointment of a Chapter 11 trustee in the Bankruptcy Case. On August 16, 2004 (the "<u>Appointment Date</u>"), the Office of the U.S. Trustee appointed the Trustee to serve as the Chapter 11 trustee, which appointment was confirmed and approved by order entered on or about August 18, 2004 in the Bankruptcy Case.

3.    This Court has subject matter jurisdiction over the Bankruptcy Case and this Adversary Proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and Miscellaneous Rule No. 33 (Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc) entered by the U.S. District Court for the Northern District of Texas on or about August 3, 1984. This Adversary Proceeding constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(E) and (O).

4.    Venue of the Adversary Proceeding in this District is proper pursuant to 28 U.S.C. § 1409.

5.    The Court has personal jurisdiction over Berg pursuant to Fed. R. Bankr. P. 7004(f).

### Parties

6.    The Trustee, as the duly-appointed Chapter 11 trustee of Heritage's estate, is the Plaintiff herein in such capacity, and may be served in this case through his undersigned counsel.

7.    Berg, an individual, is the Defendant herein and may be served with process pursuant to Fed. R. Bankr. P. 7004(b) by mailing a copy of the summons and this Complaint, via

U.S. first class mail, postage prepaid, to Berg's dwelling house or usual place of abode, 10050 Bandley Drive, Cupertino, California 95014.

### Factual Background

8.    Heritage is a Delaware limited liability company which was formed on or about December 28, 1994. Prior to the Petition Date, the Debtor's operations were focused on the sale of various wealth, estate and tax planning strategies (the "Strategies").

9.    Berg entered into an Agreement with Heritage on or about December 19, 2000. Pursuant to the Agreement, Heritage agreed to provide certain Strategies to Berg, and Berg agreed to pay a fee to Heritage (the "Utilization Fee") in the event that he determined to utilize the Strategies after consultation with his advisors.

10.    As promised, Heritage disclosed the Strategies to Berg. Thereafter, Berg determined to utilize the Strategies, resulting in Berg's obligation to pay a Utilization Fee of $4,531,862.00.

11.    On or about December 7, 2001, in partial satisfaction of the Utilization Fee, Berg executed that certain Promissory Note in the original principal amount of $3,009,362.00, made payable to Heritage (the "Note"). A true and correct copy of the Note is attached hereto as Exhibit A and incorporated herein for all intents and purposes.

12.    Pursuant to the Note, the entire unpaid principal balance of the Note, together with all accrued but unpaid interest, was due and payable on October 1, 2004. *See* Note, ¶ 2. To date, Berg has failed to make any payments under the Note.

13.    On December 6, 2005, the Trustee made formal demand on Berg for payment of the Note. To date, Berg has failed to honor such demand.

14.     As of June 5, 2006, the total amount of unpaid principal and accrued interest under the Note totaled $3,919,133.23, with interest continuing to accrue thereafter at the rate of approximately $923.58 per diem.

### Causes of Action

#### Count I: Breach of Contract

15.     The Trustee incorporates herein for all intents and purposes paragraphs 1 through 14 above.

16.     Pursuant to the Note, Berg agreed to pay $3,009,362.00, plus interest thereon, to Heritage on October 1, 2004. Berg breached such agreement, which breach has never been cured and is continuing.

17.     The Trustee hereby sues Berg for recovery of $3,919,133.23, plus additional default interest accruing after June 5, 2006 until the time of judgment.

#### Count 2: Turnover
#### (11 U.S.C. § 542(b))

18.     The Trustee incorporates herein for all intents and purposes paragraphs 1 through 17 above.

19.     Pursuant to the Note, Berg agreed to pay $3,009,362.00, plus interest thereon, to Heritage on October 1, 2004. Such debt owing by Berg to Heritage is property of the estate that is matured and not subject to offset.

20.     Pursuant to 11 U.S.C. § 542(b), the Trustee hereby sues Berg for turnover of $3,919,133.23, plus additional default interest accruing after June 5, 2006 until the time of judgment.

*Count 3: Attorneys' Fees*

21. The Trustee incorporates herein for all intents and purposes paragraphs 1 through 20 above.

22. Pursuant to the Note, Berg agreed to pay all costs and expenses of collection of the Note including, but not limited to, attorneys' fees. *See* Note, ¶ 5.

23. Additionally, the Trustee, by and through his counsel, presented his demand for payment of the Note in December 2005. Berg failed to make payment on the Note before the expiration of thirty (30) days after such demand was made. Accordingly, the Trustee is also entitled to an award of reasonable attorneys' fees pursuant to Tex. Civ. Prac. & Rem. Code § 38.001.

24. The Trustee hereby sues Berg for recovery of attorneys' fees incurred by the Trustee in connection with pursuing recovery on the Note including, without limitation, attorneys' fees incurred in connection with this action.

**Prayer**

WHEREFORE, PREMISES CONSIDERED, the Trustee respectfully requests the Court to enter judgment against Berg on each of the Trustee's causes of action asserted herein, thereby providing the following relief to the Trustee:

(a) The Trustee's recovery from Berg, and Berg's turnover to the Trustee, of $3,919,133.23, plus additional default interest accruing after June 5, 2006 until the time of judgment;

(b) The Trustee's recovery from Berg of all reasonable attorneys' fees incurred by the Trustee in connection with pursuing recovery on the Note including, without limitation, attorneys' fees incurred in connection with this action, as determined by the Court;

(c) The Trustee's recovery from Berg of all costs incurred in connection with the prosecution of this action;

---

TRUSTEE'S ORIGINAL COMPLAINT – Page 5

(d)    The Trustee's recovery from Berg of post-judgment interest at the maximum rate permitted by law on all sums awarded to the Trustee; and

(e)    The provision of all such other and further relief to the Trustee, in law or in equity, as the Trustee has shown, or hereafter shows, himself to be justly entitled.

Respectfully submitted on this 20th day of June, 2006.

MUNSCH HARDT KOPF & HARR, P.C.
3800 Lincoln Plaza
500 N. Akard Street
Dallas, Texas 75201-6659
Telephone: (214) 855-7500
Facsimile: (214) 855-7584

By: /s/ E. Lee Morris
    E. Lee Morris
    Texas Bar No. 00788079
    Davor Rukavina
    Texas Bar No. 24030781

ATTORNEYS FOR DENNIS S. FAULKNER, TRUSTEE

DALLAS 1145468_1 7617.1

Label Matrix for local noticing
0539-4
Case 03-42334-dml7
Northern District of Texas
Ft. Worth
Thu Jul 27 11:06:57 CDT 2006

OCWEN FEDERAL BANK, FSB as servicer-in-fact
12650 Ingenuity
Orlando, FL 32878-5053

Village Oaks Homeowners Association, Inc.

501 W. Tenth Street
Fort Worth, TX 76102

Bank One
P O Box 8650
Wilmington, DE  19886

Bank of America
PO Box 9000
Getzville, NY 14068

Bank of America, NA

Burt Strahm
985 Heritage Hill
Canyon Lake, TX 78133

Cambridge Park HOA
11480 Audelia Road, #200
Dallas, TX 75243

Capital One
PO Box 85015
Richmond, VA 23285

Capital One Visa
PO Box 85015
Richmond, VA 23285

Capital One Visa Business
PO Box 85015
Richmond, VA 23285

Celink
3900 Capital City Blvd.
Lansing, MI 48906

Codilis & Stawiarski, PC
650 N. Sam Houston Parkway East, #450
Houston, TX 77060

Cross Country Visa
PO Box 310711
Boca Raton, FL 33431

David Childs Tax Assessor
PO Box 620088
Dallas, TX 75262

Discover Merchant
PO Box 21550
Tulsa, OK 74121

First USA Bank, NA
PO Box 8650
Wilmington, DE  19899

GE Capital Card Company
c/o Card Services
PO Box 275
Dayton, OH 45401

Goins Underkofler et al
Attn: Jack Langdon
1201 Elm Street, Suite 4800
Dallas, TX 75270

Household Credit
PO Box 98715
Las Vegas, NV 89193

INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY OPERATIONS
PO BOX 21126
PHILADELPHIA PA 19114-0326

Kenneth L Haun Tax Assessor
PO Box 8006
McKinney, TX 75070

Linebarger, Heard, Goggan et al
309 W 7th St., Ste 1414
Ft Worth, Texas 76102-5113

Mary N Regan
307 Canterbury Street
Euless, TX 76039

Mary N. Regan
307 Canterbury Street
Euless, TX 76039

Midland Mortgage Company
PO Box 26648
Oklahoma City, OK 73126

Moss Codilis Stawiarski et al
PO Box 785051
Orlando, FL 32878

NHAC
PO Box 650679
Dallas, TX 75265

Ocwen Federal Bank
PO Box 514577
Los Angeles, CA 90051

Cowen Federal Bank FSB
PO Box 514577
Los Angeles, CA 90051

Orchard Bank M/C
PO Box 80084
Salinas, CA 93512

Providian
PO Box 660490
Dallas, TX 75266

RISD
970 Security Row
Richardson, TX 75081

Steen & Steen/ Holmes & Sanders
attn: Bankruptcy Section
307 W 7th St., Ste 1225
Ft Worth, Texas 76102-5110

Tarrant County Tax Collector
Delinquent Tax Department
100 E Weatherford St
Ft Worth, Texas 76196-0018

The Home Depot
PO Box 103047
Roswell, GA 30071

US Attorney
Office of the US Attorney
801 Cherry St, Ste 1700
Fort Worth, TX 76102-6897

US Department of Justice
10 & Constitution Ave, NW
Washington, DC 20530

Village Oaks Homeowners Association, Inc.
Riddle and Williams, P.C.
1050 Turtle Creek Centre
3811 Turtle Creek Boulevard
Dallas, TX 75219.

Wells Fargo Education Loan
Loan Servicing Center
PO Box 5160
Sioux Falls, SD 57117

William T. Neary
Office of the US Trustee
1100 Commerce St, Ste 9C60
Dallas, TX 75242

Willie Lorene Strahan
Michael Smith, Attny at Law
840 Brown Trl.
Bedford, Tx 76022

David B. Ebert
Ebert Law Offices
1726 Chadwick Ct., Suite 100
Hurst, TX 76054

Marilyn Garner
Law Offices of Marilyn D. Garner
2000 E. Lamar Blvd., Suite 600
Arlington, TX 76006

Ronald Hassett
307 Canterbury Street
Euless, TX 76039

UST U.S. Trustee
1100 Commerce St.
Room 9C60
Dallas, TX 75242-1496

Willie L. Strahan

End of Label Matrix
Total addresses 47

Perry J. Cockerell
State Bar No. 04462500
**CANTEY & HANGER, L.L.P.**
1999 Bryan Street, Suite 3330
Dallas, Texas 75201-3100
Telephone: (214) 978-4100
Facsimile: (214) 978-4150

Beth Ann R. Young
Ca. Bar No. 143945
**LEVENE, NEALE, BENDER,**
  **RANKIN & BRILL L.L.P.**
10250 Constellation Blvd., Suite 1700
Los Angeles, California 90067
Telephone: (310) 229-1234
Facsimile: (310) 229-1244

**ATTORNEYS FOR CARL E. BERG**

## United States Bankruptcy Court
## Northern District of Texas
## Dallas Division

| | |
|---|---|
| **IN RE:** ) | |
| ) | **Case No. 04-35574-BJH-11** |
| **THE HERITAGE ORGANIZATION, L.L.C.,** ) | **Chapter 11** |
| ) | |
| **DEBTOR.** ) | |
| **DENNIS S. FAULKNER, TRUSTEE,** ) | |
| ) | |
| **PLAINTIFF** ) | |
| ) | |
| **V.** ) | **Adversary No. 06-03401-BJH** |
| ) | |
| **CARL E. BERG,** ) | |
| ) | |
| **DEFENDANT** ) | |
| ) | |
| **CARL E. BERG,** ) | |
| ) | |
| **THIRD-PARTY PLAINTIFF** ) | |
| ) | |
| **V.** ) | |
| ) | |
| **GARY M. KORNMAN,** ) | |
| ) | |
| **THIRD-PARTY DEFENDANT** ) | |

## ANSWER, COUNTERCLAIM, AND THIRD-PARTY PETITION OF
## CARL E. BERG TO TRUSTEE'S ORIGINAL COMPLAINT

TO THE HONORABLE BARBARA J. HOUSER:

    CARL E. BERG ("Berg"), by and through his undersigned attorneys, answers the

Trustee's Original Complaint (the "Complaint") as follows:

---

**ANSWER, COUNTERCLAIM, AND THIRD-PARTY PETITION OF CARL E. BERG**         **Page 1**

## I.

## **ANSWER OF CARL BERG**

1.  Berg admits the allegations contained in paragraph 1 of the Plaintiff's complaint.

2.  Berg admits the allegations contained in paragraph 2 of the Plaintiff's complaint.

3.  Berg denies the allegations contained in paragraph 3 of the Plaintiff's complaint.

4.  Berg admits the allegations contained in paragraph 4 of the Plaintiff's complaint.

5.  Berg denies the allegations contained in paragraph 5 of the Plaintiff's complaint.

6.  Berg admits the allegations contained in paragraph 6 of the Plaintiff's complaint.

7.  Berg admits the allegations contained in paragraph 7 of the Plaintiff's complaint.

8.  Berg admits the allegations contained in paragraph 8 of the Plaintiff's complaint.

9.  Berg denies the allegations contained in paragraph 9 of the Plaintiff's complaint.

10. Berg denies the allegations contained in paragraph 10 of the Plaintiff's complaint.

11. Berg denies the allegations contained in paragraph 11 of the Plaintiff's complaint.

12. Berg denies the allegations contained in paragraph 12 of the Plaintiff's complaint.

13. With regard to the allegations contained in paragraph 13 of the Plaintiff's complaint, Berg admits that the Trustee made formal demand for payment. However, Berg denies that payment is due because of additional agreements, misrepresentations, and other defenses; therefore, Berg has no obligation to make payment pursuant to the promissory note. Berg admits that he did not comply with the Trustee's demand because the demand was not proper.

14. Berg denies the allegations contained in paragraph 14 of the Plaintiff's complaint.

15. Paragraph 15 requires no response from Berg.

16. Berg denies the allegations contained in paragraph 16 of Plaintiff's complaint.

17. Berg denies the allegations contained in paragraph 17 of Plaintiff's complaint.

18.     Paragraph 18 requires no response from Berg.

19.     Berg denies the allegations contained in paragraph 19 of Plaintiff's complaint.

20.     Berg denies the allegations contained in paragraph 20 of Plaintiff's complaint.

21.     Paragraph 21 requires no response from Berg.

22.     Berg denies the allegations contained in paragraph 22 of Plaintiff's complaint.

23.     Berg denies the allegations contained in paragraph 23 of Plaintiff's complaint.

24.     Berg denies the allegations contained in paragraph 24 of Plaintiff's complaint.

## II.

## AFFIRMATIVE DEFENSES

### A. Demand for Arbitration

25.     Berg demands his right to arbitration pursuant to Article XIII, "Agreement to Arbitrate," of the agreement dated December 19, 2000, between The Heritage Organization, L.L.C., and Gary M. Kornman as its Chief Executive and President of its Manager.     Berg requests that the Court enter an appropriate order referring this matter to arbitration.

### B. Fraudulent Misrepresentation

26.     Berg would show that the promissory note is not enforceable because prior to the execution of the promissory note, Berg advised Gary M. Kornman ("Kornman"), the representative of the Debtor, that he would have no problem paying the utilization fee on the condition that the plan was not challenged by the Internal Revenue Service ("IRS") or the Franchise Tax Board ("FTB") within three years after the tax returns were filed. Kornman assured Berg that this plan would not be challenged and that none of his plans had ever been challenged by the IRS or FTB. Berg advised Kornman that the Federal Return had been filed in May 2001, and that the State Return was filed in October 2001.

27.     In reliance on the representations made by Kornman, Berg paid and wire

transferred $1,522,500 to Heritage in 2001. After payment, Kornman asked Berg to sign a note for the balance of the utilization fee. Berg objected to the promissory note because it did not reference Kornman's representations to Berg that Heritage would not collect the interest or the note balance if the plans were challenged by the IRS or FTB. In reliance of these representations, Berg signed the note.

28.     Berg would show the Court that the note is unenforceable because of fraudulent misrepresentation. Berg would show that Heritage, through Kornman, induced Berg to pay and to wire transfer $1,522,500 based on Kornman's representations that the tax strategy and advice was sound and that none of the Heritage plans had ever been challenged by the IRS or the FTB and that the note would not be collected on in the event the plans were challenged by the IRS or the FTB.

### C. Fraudulent Inducement

29.     Berg incorporates the allegations contained in paragraphs 1-28 above.

30.     Berg would show that the promissory note is unenforceable by reason of fraudulent inducement. Berg would show that Kornman induced Berg to sign a note that did not include the agreed upon terms specifically referenced in the note and would not be collected on or due and payable in the event the tax strategies were audited by the IRS or FTB. Berg would show that Heritage, through Kornman, had reason to expect that Berg would enter into a binding agreement based on the false representations. Berg actually entered into the promissory note based on the false representations of Kornman.

### D. Fraud by Non-Disclosure

31.     Berg incorporates the allegations contained in paragraphs 1- 30 above.

32.     Berg would show that Heritage had a fiduciary relationship with Berg that arose out of the sophisticated nature of Heritage's businesses by seeking out and targeting those with

the need for sophisticated tax advice. Part of Heritage's services required Berg to agree to a confidential relationship whereby tax advice would be presented to Berg. The tax advice was of no value, and Heritage should have known that it was of no value. Heritage failed to disclose that the tax advice was improper. Heritage operated through Kornman who was an attorney trained in specialized tax matters.

33.     Berg would show that Heritage concealed from or failed to disclose that the tax advice was improper or that its services would be of no value; that Heritage had a duty to disclose those facts to Berg; that the facts were material; that Heritage knew that Berg was ignorant of the facts; that Berg did not have an equal opportunity to discover the facts; that Heritage was deliberately silent when it had a duty to speak; that by failing to disclose the facts, that Heritage intended to induce Berg to take some action or refrain from acting; that Heritage relied on the Heritage's nondisclosure; and Berg was injured as a result of acting without the knowledge of the undisclosed facts.

34.     Berg would show the Court that the tax strategies and advice formulated by Heritage through Kornman involved an arrangement designed to produce non-economic tax losses on the disposition of partnership interests, similar to those described in IRS Notice 99-59. These arrangements purport to give taxpayers artificially high basis in partnership interests and thereby give rise to deductible losses on disposition of those partnership interests.

35.     Heritage, through Kornman, failed to disclose that the losses resulting from the transactions described herein did not, in the opinion of the Internal Revenue Service, represent bona fide losses reflecting actual economic consequences as required for purposes of §165 of the Internal Revenue Code. Specifically, Berg, through Kornman, failed to disclose that the transaction designed by Heritage, through Kornman, and implemented by Berg, had already been classified as a "listed transaction" by the Internal Revenue Service in Notice 2000-44 for

---

purposes of §1.6011-4T(b)(2) of the Temporary Income Tax Regulations and §301-6111-2T(b)(2) of the Temporary Procedure and Administration Regulations. In Notice 2000-44, the IRS noted that, independent of their classification as "listed transactions" for purposes of §§1.6011-4T(b)(2) and 301.6111-2T(b)(2), the transactions described in Notice 2000-44 were also potentially subject to the tax shelter registration and list maintenance requirements of §§6111 and 6112 under the regulations issued by the Internal Revenue Service in February 2000 (§§301-6111-2T and 301.6112-1T, A-4), as well as the regulations issued in 1984 and amended in 1986 (§§301.6111-1T and 301-6112-1T, A-3).

36.    IRS Notice 2000-44, which addressed the very type of strategy designed by Heritage through Kornman, and adopted by Berg, was issued on August 11, 2000, well before the end of the 2000 tax year. As such, in addition to any reporting obligations that Heritage and/or Kornman would have had, the taxpayer would have had an obligation to disclose such listed transactions on his Individual Federal Income Tax Return for 2000. Yet, despite the fact that the federal tax returns in question were not filed until on or about May 1, 2001, neither Heritage nor Kornman, nor any of their representatives or agents, ever disclosed to Berg that the tax strategies and tax advice provided by Heritage, through Kornman, and relied upon by Berg, would subject Berg to substantial liabilities and other penalties.

37.    Notwithstanding the existence of Notice 2000-44, prior to the end of the 2000 taxable year and over 8 months prior to the filing of Berg's federal and state tax returns, no attempt whatsoever was ever made by Heritage or Kornman to disclose to Berg the full potential adverse tax consequences which Berg would or could have been subjected to in light of claiming the losses recommended by Heritage, through Kornman, on his 2000 tax return. Had Berg been fully informed of the risks associated with adopting the strategies recommended by Heritage and Kornman, Berg would have never adopted the tax strategies claimed on his 2000 tax return,

strategies that had already been specifically identified by the Internal Revenue Service as lacking substantial economic effect and, as a result, having been classified as "listed transactions," for purposes of required disclosure by the promoters of the scheme and by Berg.

### E. Mutual Mistake

38.    Berg incorporates the allegations contained in paragraphs 1-37 above.

39.    Berg would show the Court that the note is unenforceable because of a mutual mistake. Specifically, Heritage was aware that the note and interest would not be collected if Berg was audited by the IRS or the FTB within 3 years after the due date of the tax returns. The note should be reformed to reflect the true agreement of the parties which is that no payment would be due if Berg was audited by the IRS or FTB within 3 years after the due date of the tax returns.

### F. Estoppel

40.    Berg incorporates the allegations contained in paragraphs 1-39 above.

41.    Berg would show that Plaintiff is estopped from enforcement of the note because of promissory estoppel. Berg would show that Heritage induced it to fund $1,522,500 based on the representation that he would not owe the balance on the promissory note if audited. This representation induced substantial action on his part and forbearance by Heritage from collecting the interest and balance due on the note. Berg would show that promissory estoppel prevents any denial of that promise if injustice can be avoided only by enforcement. An injustice would result if the trustee were to recover the balance on the note because Berg has suffered over $23 million due to the actions of Heritage.

### G. Breach of Contract

42.    Berg incorporates the allegations contained in paragraph 1- 41 above.

43. Alternatively, Berg entered into oral and written contracts with Heritage for tax advice and strategy. Berg performed his obligations to Heritage under these oral and/or written contracts by paying $1,522,500 for the tax strategy and advice that was conditioned on the balance of the note not being collected if there was an audit within three years of the date that the tax returns were filed.

44. Heritage and Kornman breached their obligations under the oral and/or written contracts by attempting to recover the balance due under the promissory note. Berg was audited by the IRS, and this resulted in additional federal and state taxes due. As a result, Heritage breached its oral and written contracts with Berg and has been unjustly enriched, which resulted in damages to Berg.

45. If the Court reforms the promissory note to reflect the true agreement between Heritage acting through Kornman, then Berg requests that the Court find that Heritage breached the agreement. Berg seeks a recovery of his legal fees.

## H. Breach of Fiduciary Duty

46. Berg incorporates the allegations contained in paragraphs 1- 45 above.

47. Heritage had a fiduciary relationship with Berg. Heritage breached its fiduciary duty to the Berg which resulted in injury to Berg in the amount of additional taxes, penalties, interest, legal fees. Further, Heritage benefited by this breach by retaining $1,522,500 million in funds previously paid to it for services that were of no value.

## I. Negligent Misrepresentation

48. Berg incorporates the allegations contained in paragraphs 1 – 47 above.

49. Berg would show that Heritage made a representation to Berg in the course of Berg's business or in a transaction in which Berg had an interest; that Heritage supplied false information for the guidance of others; that Heritage did not exercise reasonable care or

competence in obtaining or communicating the information; that Berg justifiably relied on the representation; and that Heritage's negligent misrepresentation proximately caused Berg's injury.

### J. Failure or Lack of Consideration

50.     Berg incorporates the allegations contained in paragraphs 1 – 49 above.

51.     Berg would show the Court that the note is unenforceable because of a failure or lack of consideration.

### K. Illusory Contract

52.     Berg incorporates the allegations contained in paragraph 1 – 51 above.

53.     Berg would show the Court that the note is unenforceable because it is illusory contract and provides for no consideration to Berg.

### L. Unjust Enrichment

54.     Berg incorporates the allegations contained in paragraphs 1 - 53 above.

55.     Berg would show the Court that the note is unenforceable because of unjust enrichment. Plaintiff has the benefit of $1,522,500 already paid to the estate, for which there was no value to Berg.

### M. Offset

56.     Berg incorporates the allegations contained in paragraphs 1 -55 above.

57.     Berg would show the Court that the note is unenforceable because of offset due to claims that Berg has against the Debtor's estate. These offset claims are the amount of additional taxes, penalties and fees of no less than $6,097,818.11.

### N. Damages for all Causes of Action

58.     Berg would show that he had to pay no less than $6,097,818.11 in additional IRS and FTB penalties and interest, and legal fees to correct the improper representations from

Heritage. Berg may owe an additional $1.6 million to the FTB for which he is in the process of an appeal. Berg seeks these damages against Heritage.

## O. Legal Fees

59.    Pursuant to Paragraph 13.3 of Article XIII, "Agreement to Arbitrate" Berg requests the recovery of his legal fees.

**WHEREFORE,** Carl Berg requests that Plaintiff take nothing by reason of its suit and that Berg recover his costs and any further relief, at law or in equity, to which Berg may show himself to be justly entitled.

### IV.

## COUNTERCLAIM AND THIRD-PARTY COMPLAINT AGAINST THE HERITAGE ORGANIZATION L.L.C. AND GARY M. KORNMAN

Comes now, Carl Berg, as Counter-Plaintiff and Third-Party Plaintiff, complaining of The Heritage Organization, L.L.C., the Debtor, acting through Dennis Faulkner as the appointed Trustee in this bankruptcy proceeding, as Counter-Defendant, and Gary M. Kornman, as Third-Party Defendant, and would respectfully show the Court as follows:

### V.

## PARTIES

60.    Counter-Plaintiff Carl Berg, (hereinafter "Berg") is an individual and resident of California.

61.    Counter-Defendant, The Heritage Organization, L.L.C., is a Delaware limited liability company, (hereinafter "Heritage") acting through its appointed Trustee, Dennis Faulkner, who can be served through its attorney of record, Lee Morris, at Munsch, Hardt Kopk & Harr, P.C., 3800 Lincoln Plaza, 500 N. Akard St., Dallas, Texas 75201-6659.

62.    Third-Party Defendant, Gary M. Kornman (hereinafter "Kornman") is an

individual who may be served at 3640 Haynie Avenue, Dallas, Texas 75205. A courtesy copy is being provided to his attorney of record, Jeffrey Tillotson, Lynn, Tillotson & Pinker, LLP, 750 N. St. Paul, Suite 1400, Dallas, Texas 75201.

## VI.

## <u>JURISDICTION</u>

63.     Subject to the arbitration provisions that exist between the parties under Article XIII, "Agreement to Arbitrate," Section 13.1 dated December 19, 2000, between Heritage and Kornman as its Chief Executive and President of its Manager, this Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 157(b), 28 U.S.C. § 157(c)(1), and 28 U.S.C. § 1334(a). The matter is "core" as to Heritage. Kornman has appeared in this bankruptcy proceeding by filing a proof of claim against the Debtor and has filed a motion in this court requesting that either he or the Trustee prosecute the identical suit that was brought by the Trustee against Berg. Kornman has appeared in this proceeding and has submitted to the jurisdiction of the Court.

## VII.

## <u>VENUE</u>

64.     Venue of this action is proper in the Northern District of Texas, Fort Worth Division, for the reason that the bankruptcy proceeding of the Heritage Organization, L.L.C., is pending in this district and division.

## VIII.

## <u>CAUSES OF ACTION</u>

### A. <u>Background Facts</u>

65.     Berg incorporates the allegations contained in paragraphs 1 – 64 above against Heritage and Kornman.

---

66.     Berg would show that Kornman was an attorney and trained in specialized tax matters and that he sought out and advised Berg that he and Heritage could provide tax strategies and advice to him on a confidential basis. Kornman represented to Berg that the tax strategies were sound that that none of his tax plans had been questioned by the IRS. Kornman represented that Berg would pay for the initial services and that the balance due for the fee as represented by the promissory note for which the Trustee brings suit would not be due and payable if Berg were audited within three years of filing his tax return. Berg relied on these representations by Kornman.

67.     Further, Kornman advised Berg to seek the advice of a law firm based on Kornman's referral and such law firm did review the transaction and validated the transaction set up by Kornman and Heritage. However, Heritage, through Kornman, failed to disclose that the losses resulting from the transactions described herein did not, in the opinion of the Internal Revenue Service, represent bona fide losses reflecting actual economic consequences as required for purposes of §165 of the Internal Revenue Code. Specifically, Berg, through Kornman, failed to disclose that the transaction designed by Heritage, through Kornman, and implemented by Berg, had already been classified as a "listed transaction" by the Internal Revenue Service in Notice 2000-44 for purposes of §1.6011-4T(b)(2) of the Temporary Income Tax Regulations and §301-6111-2T(b)(2) of the Temporary Procedure and Administration Regulations. In Notice 2000-44, the IRS noted that, independent of their classification as "listed transactions" for purposes of §§1.6011-4T(b)(2) and 301.6111-2T(b)(2), the transactions described in Notice 2000-44 were also potentially subject to the tax shelter registration and list maintenance requirements of §§6111 and 6112 under the regulations issued by the Internal Revenue Service in February 2000 (§§301-6111-2T and 301.6112-1T, A-4), as well as the regulations issued in 1984 and amended in 1986 (§§301.6111-1T and 301-6112-1T, A-3).

68.     IRS Notice 2000-44, which addressed the very type of strategy designed by Heritage through Kornman, and adopted by Berg, was issued on August 11, 2000, well before the end of the 2000 tax year. As such, in addition to any reporting obligations that Heritage and/or Kornman would have had, the taxpayer would have had an obligation to disclose such listed transaction on his Individual Federal Income Tax Return for 2000. Yet, despite the fact that the federal tax returns in question were not filed until on or about May 1, 2001, neither Heritage nor Kornman, nor any of their representatives or agents, ever disclosed to Berg that the tax strategies and tax advice provided by Heritage, through Kornman, and relied upon by Berg, would subject Berg to substantial liabilities and other penalties.

69.     Notwithstanding the existence of Notice 2000-44, prior to the end of the 2000 taxable year, and over 8 months prior to the filing of Berg's federal and state tax returns, no attempt whatsoever was ever made by Heritage or Kornman to disclose to Berg the full potential adverse tax consequences which Berg would or could have been subjected to in light of claiming the losses recommended by Heritage, through Kornman, on his 2000 tax return. Had Berg been fully informed of the risks associated with adopting the strategies recommended by Heritage and Kornman, Berg would have never adopted the tax strategies claimed on his 2000 tax return, strategies that had already been specifically identified by the Internal Revenue Service as lacking substantial economic effect and, as a result, having been classified as "listed transactions," for purposes of required disclosure by the promoters of the scheme and by Berg.

70.     These actions by Kornman resulted in substantial damages and losses to Berg.

## B. Demand for Arbitration

71.     Berg demands its right to arbitration pursuant to Article XIII, "Agreement to Arbitrate," Section 13.1 of that agreement dated December 19, 2000 between The Heritage Organization, L.L.C., and Gary M. Kornman, as its chief Executive and President of its

Manager. Berg requests that the Court enter an appropriate order referring this matter to arbitration.

### C. Fraudulent Misrepresentation

72.     Berg incorporates the allegations contained in paragraphs 1 - 71 above against Heritage and Kornman.

### D. Fraudulent Inducement

73.     Berg incorporates the allegations contained in paragraphs 1 – 72 above against Heritage and Kornman.

### E. Fraud by Non-Disclosure

74.     Berg incorporates the allegations contained in paragraphs 1- 73 above against Heritage and Kornman.

### F. Breach of Fiduciary Duty

75.     Berg incorporates the allegations contained in paragraphs 1 - 74 above against Heritage and Kornman.

76.     Heritage, acting through its representative Kornman, was a fiduciary and owed a duty of honesty, loyalty, and care to Berg.

77.     Heritage and Kornman breached a fiduciary duty to Berg by advising Berg to take advantage of the tax strategy and advice for the taxable year 2000 that Kornman knew or should have known were improper.

78.     Heritage and Kornman breached a fiduciary duty to Berg that included the following acts or omissions: (a) creating, designing, implementing, promoting, advising, recommending, and selling an invalid tax shelter that is disallowed and/or prohibited by the IRS; (b) taking advantage of a relationship of trust and confidence and using their knowledge to solicit, advise, and recommend the tax strategy and advice, which was of no value to Berg;  (c)

advising that the balance of the promissory note would not be collected until three years after the due date if there was no audit by the IRS or the FTB; (d) recommending that the Trustee collect on the promissory note which it knew was subject to a previous agreement which Kornman requested not be included in the promissory note.

### G. Negligent Misrepresentation

79.     Berg incorporates the allegations contained in paragraphs 1 – 78 above against Heritage and Kornman.

80.     Berg would show that Heritage and Kornman owed a duty of care, loyalty and honesty, a duty to comply with the applicable standards of care, and a duty to comply with the applicable provisions of their codes of professional responsibility.

81.     During the course of their representation of Berg, Heritage, operating through Kornman and others, negligently made false affirmative representations, and intentionally or negligently misleading omissions of material fact, including but not limited to: (a) taking advantage of a relationship of trust and confidence by using their knowledge of Berg's finances to solicit Berg for the tax strategy and advice; (b) taking advantage of a relationship of trust and confidence in recommending the tax strategy and advice; and (c) advising and recommending the strategy and advice when it was of no value.

82.     In reasonable reliance on Kornman's negligently false affirmative representations and intentionally or negligently misleading omissions of material facts regarding the tax strategy, Berg paid substantial fees to Heritage. But for Kornman's negligent misrepresentations and material omissions described above, Berg would never have participated in the strategy. Berg reasonably relied on the strategy provided by Heritage and the representations from Kornman that the additional fees would not be collected.

83. As a proximate cause of the foregoing, Berg has been injured in an actual amount to be proven at trial, and should be awarded actual, punitive, treble, enhanced and/or consequential damages in accordance with the evidence, plus attorneys' fee and costs.

## H. Negligence

84. Berg incorporates the allegations contained in paragraphs 1 – 83 above.

85 Kornman represented that the plan would not be challenged and that none of his plans had ever been challenged by the IRS or FTB. Kornman represented that his tax strategy was good. Kornman owed Berg a duty of care, loyalty and honesty, a duty to comply with the applicable standards of care, and a duty to comply with the applicable provisions of the codes of professional responsibility.

86. Kornman owed a duty to Berg to meet the applicable standard of care for providing tax strategy and advice. Kornman failed to meet those applicable standards of care and failed to meet the standard of care caused damages to the Berg.

87. Kornman's negligence rises to the level of gross neglect and/or malice. Kornman's negligence proximately caused Berg's damages.

88. As a proximate cause of the foregoing, Berg has been injured in an actual amount to be proven at trial, and should be awarded actual, punitive, treble, enhanced and/or consequential damages in accordance with the evidence, plus attorneys' fee and costs.

## I. Damages for all Causes of Action

89. Berg would show that he had to pay no less than $6,097,818.11 in additional IRS and FTB penalties and interest, and legal fees to correct the improper representations from Kornman. Berg may owe an additional $1.6 million to the FTB for which he is in the process of an appeal. Berg seeks these damages against Kornman.

## J. Legal Fees

90.     Pursuant to Paragraph 13.3 of Article XIII, "Agreement to Arbitrate", Berg requests the recovery of his legal fees.

### IX.

### PRAYER FOR RELIEF

**WHEREFORE,** Berg demands judgment against the Heritage and Kornman as follows:

A.      Judgment in favor of Berg against Heritage and Kornman, jointly and severally, for actual, consequential and/or incidental and punitive damages, in an amount to be proven at trial, plus attorneys' fees, interest, and costs;

B.      Any further relief as is just either in law or in equity.

Respectfully submitted,

By: /s/ Perry J. Cockerell
    Perry J. Cockerell
    State Bar No. 04462500

    **CANTEY & HANGER, L.L.P.**
    1999 Bryan Street, Suite 3330
    Dallas, Texas  75201-3100
    Telephone:  (214) 978-4139
    Facsimile:  (214) 978-4150

    **LEVENE, NEALE, BENDER,
    RANKIN & BRILL L.L.P.**
    Beth Ann R. Young
    Ca. Bar No. 143945
    10250 Constellation Blvd., Suite 1700
    Los Angeles, California  90067

    **ATTORNEYS FOR CARL BERG**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been sent via

ECF filing and/or U.S. Mail to the following list of counsel this 11th day of August, 2006.

E. Lee Morris
Munsch Hardt Kopf & Harr, P.C.
3800 Lincoln Plaza
500 N. Akard Street
Dallas, Texas 75201-6659

/s/ Perry J. Cockerell
Perry J. Cockerell

---

**ANSWER, COUNTERCLAIM, AND THIRD-PARTY PETITION OF CARL E. BERG** Page 18

**FORM B10** (Official Form 10) (10/05)

| UNITED STATES BANKRUPTCY COURT     Northern    DISTRICT OF     Texas | PROOF OF CLAIM |
|---|---|

| Name of Debtor: The Heritage Organization, L.L.C. | Case Number: 04-35574-BJH-11 |
|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

| Name of Creditor (The person or other entity to whom the debtor owes money or property):<br><br>Carl E. Berg | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. | |
|---|---|---|
| Name and address where notices should be sent:<br>Perry J. Cockerell<br>Cantey & Hanger, L.L.P.<br>1999 Bryan Street, Suite 3330, Dallas, TX 75201-3100<br>Telephone number: (214) 978-4139 | ☐ Check box if you have never received any notices from the bankruptcy court in this case.<br>☐ Check box if the address differs from the address on the envelope sent to you by the court. | THIS SPACE IS FOR COURT USE ONLY |
| Last four digits of account or other number by which creditor identifies debtor: | Check here ☐ replaces<br>if this claim ☐ amends   a previously filed claim, dated:_____ | |

| 1. Basis for Claim<br>☐ Goods sold<br>☐ Services performed<br>☐ Money loaned<br>☐ Personal injury/wrongful death<br>☐ Taxes<br>☒ Other   See attached Adv. No. 06-03401-BJH | ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)<br>☐ Wages, salaries, and compensation (fill out below)<br>     Last four digits of your SS #: _____<br>     Unpaid compensation for services performed<br>     from _____ to _____<br>         (date)       (date) |
|---|---|
| 2. Date debt was incurred:<br>June 20, 2006 | 3. If court judgment, date obtained:<br>N/A |

4. Classification of Claim. Check the appropriate box or boxes that best describe your claim and state the amount of the claim at the time case filed. See reverse side for important explanations.

| Unsecured Nonpriority Claim $ 9,270,318<br><br>☒   Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority. | Secured Claim<br><br>☐   Check this box if your claim is secured by collateral (including a right of setoff).<br><br>Brief Description of Collateral:<br>☐ Real Estate   ☐ Motor Vehicle   ☐ Other_____<br><br>Value of Collateral: $_____<br><br>Amount of arrearage and other charges at time case filed included in secured claim, if any: $_____ |
|---|---|
| **Unsecured Priority Claim**<br><br>☐   Check this box if you have an unsecured claim, all or part of which is entitled to priority.<br><br>Amount entitled to priority $_____<br><br>Specify the priority of the claim:<br><br>☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B)<br><br>☐ Wages, salaries, or commissions (up to $10,000),* earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).<br><br>☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5). | ☐ Up to $2,225* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).<br><br>☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).<br>☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(___).<br><br>*Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment. |

| 5. Total Amount of Claim at Time Case Filed: | $ 9,270,318 _____ (unsecured) | _____ (secured) | _____ (priority) | $9,270,318 (Total) |
|---|---|---|---|---|

☒ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

| 6. Credits: The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim. | THIS SPACE IS FOR COURT USE ONLY |
|---|---|
| 7. Supporting Documents: *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary. | |
| 8. Date-Stamped Copy: To receive an acknowledgment of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim. | |

| Date<br><br>9/26/06 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):<br><br>*Carl [signature]* | |
|---|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

Perry J. Cockerell
State Bar No. 04462500
CANTEY & HANGER, L.L.P.
1999 Bryan Street, Suite 3330
Dallas, Texas 75201-3100
Telephone: (214) 978-4100
Facsimile: (214) 978-4150

ATTORNEYS FOR CARL E. BERG

Beth Ann R. Young
Ca. Bar No. 143945
LEVENE, NEALE, BENDER,
    RANKIN & BRILL L.L.P.
10250 Constellation Blvd., Suite 1700
Los Angeles, California 90067
Telephone: (310) 229-1234
Facsimile: (310) 229-1244

## United States Bankruptcy Court
## Northern District of Texas
## Dallas Division

| | |
|---|---|
| IN RE: ) | |
| ) | Case No. 04-35574-BJH-11 |
| THE HERITAGE ORGANIZATION, L.L.C., ) | Chapter 11 |
| ) | |
| DEBTOR. ) | |
| DENNIS S. FAULKNER, TRUSTEE, ) | |
| ) | |
| PLAINTIFF ) | |
| ) | |
| V. ) | Adversary No. 06-03401-BJH |
| ) | |
| CARL E. BERG, ) | |
| ) | |
| DEFENDANT ) | |
| CARL E. BERG, ) | |
| ) | |
| THIRD-PARTY PLAINTIFF ) | |
| ) | |
| V. ) | |
| ) | |
| GARY M. KORNMAN, ) | |
| ) | |
| THIRD-PARTY DEFENDANT ) | |

## ANSWER, COUNTERCLAIM, AND THIRD-PARTY PETITION OF CARL E. BERG TO TRUSTEE'S ORIGINAL COMPLAINT

TO THE HONORABLE BARBARA J. HOUSER:

CARL E. BERG ("Berg"), by and through his undersigned attorneys, answers the Trustee's Original Complaint (the "Complaint") as follows:

---

## I.

### ANSWER OF CARL BERG

1.  Berg admits the allegations contained in paragraph 1 of the Plaintiff's complaint.

2.  Berg admits the allegations contained in paragraph 2 of the Plaintiff's complaint.

3.  Berg denies the allegations contained in paragraph 3 of the Plaintiff's complaint.

4.  Berg admits the allegations contained in paragraph 4 of the Plaintiff's complaint.

5.  Berg denies the allegations contained in paragraph 5 of the Plaintiff's complaint.

6.  Berg admits the allegations contained in paragraph 6 of the Plaintiff's complaint.

7.  Berg admits the allegations contained in paragraph 7 of the Plaintiff's complaint.

8.  Berg admits the allegations contained in paragraph 8 of the Plaintiff's complaint.

9.  Berg denies the allegations contained in paragraph 9 of the Plaintiff's complaint.

10. Berg denies the allegations contained in paragraph 10 of the Plaintiff's complaint.

11. Berg denies the allegations contained in paragraph 11 of the Plaintiff's complaint.

12. Berg denies the allegations contained in paragraph 12 of the Plaintiff's complaint.

13. With regard to the allegations contained in paragraph 13 of the Plaintiff's complaint, Berg admits that the Trustee made formal demand for payment. However, Berg denies that payment is due because of additional agreements, misrepresentations, and other defenses; therefore, Berg has no obligation to make payment pursuant to the promissory note. Berg admits that he did not comply with the Trustee's demand because the demand was not proper.

14. Berg denies the allegations contained in paragraph 14 of the Plaintiff's complaint.

15. Paragraph 15 requires no response from Berg.

16. Berg denies the allegations contained in paragraph 16 of Plaintiff's complaint.

17. Berg denies the allegations contained in paragraph 17 of Plaintiff's complaint.

18.     Paragraph 18 requires no response from Berg.

19.     Berg denies the allegations contained in paragraph 19 of Plaintiff's complaint.

20.     Berg denies the allegations contained in paragraph 20 of Plaintiff's complaint.

21.     Paragraph 21 requires no response from Berg.

22.     Berg denies the allegations contained in paragraph 22 of Plaintiff's complaint.

23.     Berg denies the allegations contained in paragraph 23 of Plaintiff's complaint.

24.     Berg denies the allegations contained in paragraph 24 of Plaintiff's complaint.

## II.

## AFFIRMATIVE DEFENSES

### A. Demand for Arbitration

25.     Berg demands his right to arbitration pursuant to Article XIII, "Agreement to Arbitrate," of the agreement dated December 19, 2000, between The Heritage Organization, L.L.C., and Gary M. Kornman as its Chief Executive and President of its Manager.     Berg requests that the Court enter an appropriate order referring this matter to arbitration.

### B. Fraudulent Misrepresentation

26.     Berg would show that the promissory note is not enforceable because prior to the execution of the promissory note, Berg advised Gary M. Kornman ("Kornman"), the representative of the Debtor, that he would have no problem paying the utilization fee on the condition that the plan was not challenged by the Internal Revenue Service ("IRS") or the Franchise Tax Board ("FTB") within three years after the tax returns were filed. Kornman assured Berg that this plan would not be challenged and that none of his plans had ever been challenged by the IRS or FTB. Berg advised Kornman that the Federal Return had been filed in May 2001, and that the State Return was filed in October 2001.

27.     In reliance on the representations made by Kornman, Berg paid and wire

transferred $1,522,500 to Heritage in 2001.  After payment, Kornman asked Berg to sign a note for the balance of the utilization fee.  Berg objected to the promissory note because it did not reference Kornman's representations to Berg that Heritage would not collect the interest or the note balance if the plans were challenged by the IRS or FTB.  In reliance of these representations, Berg signed the note.

28.   Berg would show the Court that the note is unenforceable because of fraudulent misrepresentation.  Berg would show that Heritage, through Kornman, induced Berg to pay and to wire transfer $1,522,500 based on Kornman's representations that the tax strategy and advice was sound and that none of the Heritage plans had ever been challenged by the IRS or the FTB and that the note would not be collected on in the event the plans were challenged by the IRS or the FTB.

### C. Fraudulent Inducement

29.   Berg incorporates the allegations contained in paragraphs 1-28 above.

30.   Berg would show that the promissory note is unenforceable by reason of fraudulent inducement.  Berg would show that Kornman induced Berg to sign a note that did not include the agreed upon terms specifically referenced in the note and would not be collected on or due and payable in the event the tax strategies were audited by the IRS or FTB. Berg would show that Heritage, through Kornman, had reason to expect that Berg would enter into a binding agreement based on the false representations.  Berg actually entered into the promissory note based on the false representations of Kornman.

### D. Fraud by Non-Disclosure

31.   Berg incorporates the allegations contained in paragraphs 1- 30 above.

32.   Berg would show that Heritage had a fiduciary relationship with Berg that arose out of the sophisticated nature of Heritage's businesses by seeking out and targeting those with

the need for sophisticated tax advice. Part of Heritage's services required Berg to agree to a confidential relationship whereby tax advice would be presented to Berg. The tax advice was of no value, and Heritage should have known that it was of no value. Heritage failed to disclose that the tax advice was improper. Heritage operated through Kornman who was an attorney trained in specialized tax matters.

33.   Berg would show that Heritage concealed from or failed to disclose that the tax advice was improper or that its services would be of no value; that Heritage had a duty to disclose those facts to Berg; that the facts were material; that Heritage knew that Berg was ignorant of the facts; that Berg did not have an equal opportunity to discover the facts; that Heritage was deliberately silent when it had a duty to speak; that by failing to disclose the facts, that Heritage intended to induce Berg to take some action or refrain from acting; that Heritage relied on the Heritage's nondisclosure; and Berg was injured as a result of acting without the knowledge of the undisclosed facts.

34.   Berg would show the Court that the tax strategies and advice formulated by Heritage through Kornman involved an arrangement designed to produce non-economic tax losses on the disposition of partnership interests, similar to those described in IRS Notice 99-59. These arrangements purport to give taxpayers artificially high basis in partnership interests and thereby give rise to deductible losses on disposition of those partnership interests.

35.   Heritage, through Kornman, failed to disclose that the losses resulting from the transactions described herein did not, in the opinion of the Internal Revenue Service, represent bona fide losses reflecting actual economic consequences as required for purposes of §165 of the Internal Revenue Code. Specifically, Berg, through Kornman, failed to disclose that the transaction designed by Heritage, through Kornman, and implemented by Berg, had already been classified as a "listed transaction" by the Internal Revenue Service in Notice 2000-44 for

purposes of §1.6011-4T(b)(2) of the Temporary Income Tax Regulations and §301-6111-2T(b)(2) of the Temporary Procedure and Administration Regulations. In Notice 2000-44, the IRS noted that, independent of their classification as "listed transactions" for purposes of §§1.6011-4T(b)(2) and 301.6111-2T(b)(2), the transactions described in Notice 2000-44 were also potentially subject to the tax shelter registration and list maintenance requirements of §§6111 and 6112 under the regulations issued by the Internal Revenue Service in February 2000 (§§301-6111-2T and 301.6112-1T, A-4), as well as the regulations issued in 1984 and amended in 1986 (§§301.6111-1T and 301-6112-1T, A-3).

36. IRS Notice 2000-44, which addressed the very type of strategy designed by Heritage through Kornman, and adopted by Berg, was issued on August 11, 2000, well before the end of the 2000 tax year. As such, in addition to any reporting obligations that Heritage and/or Kornman would have had, the taxpayer would have had an obligation to disclose such listed transactions on his Individual Federal Income Tax Return for 2000. Yet, despite the fact that the federal tax returns in question were not filed until on or about May 1, 2001, neither Heritage nor Kornman, nor any of their representatives or agents, ever disclosed to Berg that the tax strategies and tax advice provided by Heritage, through Kornman, and relied upon by Berg, would subject Berg to substantial liabilities and other penalties.

37. Notwithstanding the existence of Notice 2000-44, prior to the end of the 2000 taxable year and over 8 months prior to the filing of Berg's federal and state tax returns, no attempt whatsoever was ever made by Heritage or Kornman to disclose to Berg the full potential adverse tax consequences which Berg would or could have been subjected to in light of claiming the losses recommended by Heritage, through Kornman, on his 2000 tax return. Had Berg been fully informed of the risks associated with adopting the strategies recommended by Heritage and Kornman, Berg would have never adopted the tax strategies claimed on his 2000 tax return,

strategies that had already been specifically identified by the Internal Revenue Service as lacking substantial economic effect and, as a result, having been classified as "listed transactions," for purposes of required disclosure by the promoters of the scheme and by Berg.

### E.  Mutual Mistake

38.    Berg incorporates the allegations contained in paragraphs 1-37 above.

39.    Berg would show the Court that the note is unenforceable because of a mutual mistake.  Specifically, Heritage was aware that the note and interest would not be collected if Berg was audited by the IRS or the FTB within 3 years after the due date of the tax returns.  The note should be reformed to reflect the true agreement of the parties which is that no payment would be due if Berg was audited by the IRS or FTB within 3 years after the due date of the tax returns.

### F.  Estoppel

40.    Berg incorporates the allegations contained in paragraphs 1-39 above.

41.    Berg would show that Plaintiff is estopped from enforcement of the note because of promissory estoppel.  Berg would show that Heritage induced it to fund $1,522,500 based on the representation that he would not owe the balance on the promissory note if audited.  This representation induced substantial action on his part and forbearance by Heritage from collecting the interest and balance due on the note.  Berg would show that promissory estoppel prevents any denial of that promise if injustice can be avoided only by enforcement.  An injustice would result if the trustee were to recover the balance on the note because Berg has suffered over $23 million due to the actions of Heritage.

### G.  Breach of Contract

42.    Berg incorporates the allegations contained in paragraph 1- 41 above.

43.     Alternatively, Berg entered into oral and written contracts with Heritage for tax advice and strategy.  Berg performed his obligations to Heritage under these oral and/or written contracts by paying $1,522,500 for the tax strategy and advice that was conditioned on the balance of the note not being collected if there was an audit within three years of the date that the tax returns were filed.

44.     Heritage and Kornman breached their obligations under the oral and/or written contracts by attempting to recover the balance due under the promissory note. Berg was audited by the IRS, and this resulted in additional federal and state taxes due.  As a result, Heritage breached its oral and written contracts with Berg and has been unjustly enriched, which resulted in damages to Berg.

45.     If the Court reforms the promissory note to reflect the true agreement between Heritage acting through Kornman, then Berg requests that the Court find that Heritage breached the agreement.  Berg seeks a recovery of his legal fees.

### H. Breach of Fiduciary Duty

46.     Berg incorporates the allegations contained in paragraphs 1- 45 above.

47.     Heritage had a fiduciary relationship with Berg.  Heritage breached its fiduciary duty to the Berg which resulted in injury to Berg in the amount of additional taxes, penalties, interest, legal fees. Further, Heritage benefited by this breach by retaining $1,522,500 million in funds previously paid to it for services that were of no value.

### I. Negligent Misrepresentation

48.     Berg incorporates the allegations contained in paragraphs 1 – 47 above.

49.     Berg would show that Heritage made a representation to Berg in the course of Berg's business or in a transaction in which Berg had an interest; that Heritage supplied false information for the guidance of others; that Heritage did not exercise reasonable care or

competence in obtaining or communicating the information; that Berg justifiably relied on the

representation; and that Heritage's negligent misrepresentation proximately caused Berg's injury.

### J. Failure or Lack of Consideration

50.   Berg incorporates the allegations contained in paragraphs 1 – 49 above.

51.   Berg would show the Court that the note is unenforceable because of a failure or

lack of consideration.

### K. Illusory Contract

52.   Berg incorporates the allegations contained in paragraph 1 – 51 above.

53.   Berg would show the Court that the note is unenforceable because it is illusory

contract and provides for no consideration to Berg.

### L. Unjust Enrichment

54.   Berg incorporates the allegations contained in paragraphs 1 - 53 above.

55.   Berg would show the Court that the note is unenforceable because of unjust

enrichment.   Plaintiff has the benefit of $1,522,500 already paid to the estate, for which there was

no value to Berg.

### M. Offset

56.   Berg incorporates the allegations contained in paragraphs 1 -55 above.

57.   Berg would show the Court that the note is unenforceable because of offset due to

claims that Berg has against the Debtor's estate.  These offset claims are the amount of additional

taxes, penalties and fees of no less than $6,097,818.11.

### N. Damages for all Causes of Action

58.   Berg would show that he had to pay no less than $6,097,818.11 in additional IRS

and FTB penalties and interest, and legal fees to correct the improper representations from

Heritage.  Berg may owe an additional $1.6 million to the FTB for which he is in the process of an appeal.  Berg seeks these damages against Heritage.

## O. Legal Fees

59.   Pursuant to Paragraph 13.3 of Article XIII, "Agreement to Arbitrate" Berg requests the recovery of his legal fees.

WHEREFORE, Carl Berg requests that Plaintiff take nothing by reason of its suit and that Berg recover his costs and any further relief, at law or in equity, to which Berg may show himself to be justly entitled.

## IV.

## COUNTERCLAIM AND THIRD-PARTY COMPLAINT AGAINST THE HERITAGE ORGANIZATION L.L.C. AND GARY M. KORNMAN

Comes now, Carl Berg, as Counter-Plaintiff and Third-Party Plaintiff, complaining of The Heritage Organization, L.L.C., the Debtor, acting through Dennis Faulkner as the appointed Trustee in this bankruptcy proceeding, as Counter-Defendant, and Gary M. Kornman, as Third-Party Defendant, and would respectfully show the Court as follows:

## V.

## PARTIES

60.   Counter-Plaintiff Carl Berg, (hereinafter "Berg") is an individual and resident of California.

61.   Counter-Defendant, The Heritage Organization, L.L.C., is a Delaware limited liability company, (hereinafter "Heritage") acting through its appointed Trustee, Dennis Faulkner, who can be served through its attorney of record, Lee Morris, at Munsch, Hardt Kopk & Harr, P.C., 3800 Lincoln Plaza, 500 N. Akard St., Dallas, Texas 75201-6659.

62.   Third-Party Defendant, Gary M. Kornman (hereinafter "Kornman") is an

individual who may be served at 3640 Haynie Avenue, Dallas, Texas 75205. A courtesy copy is being provided to his attorney of record, Jeffrey Tillotson, Lynn, Tillotson & Pinker, LLP, 750 N. St. Paul, Suite 1400, Dallas, Texas 75201.

## VI.

### JURISDICTION

63.     Subject to the arbitration provisions that exist between the parties under Article XIII, "Agreement to Arbitrate," Section 13.1 dated December 19, 2000, between Heritage and Kornman as its Chief Executive and President of its Manager, this Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 157(b), 28 U.S.C. § 157(c)(1), and 28 U.S.C. § 1334(a). The matter is "core" as to Heritage. Kornman has appeared in this bankruptcy proceeding by filing a proof of claim against the Debtor and has filed a motion in this court requesting that either he or the Trustee prosecute the identical suit that was brought by the Trustee against Berg. Kornman has appeared in this proceeding and has submitted to the jurisdiction of the Court.

## VII.

### VENUE

64.     Venue of this action is proper in the Northern District of Texas, Fort Worth Division, for the reason that the bankruptcy proceeding of the Heritage Organization, L.L.C., is pending in this district and division.

## VIII.

### CAUSES OF ACTION

#### A.  Background Facts

65.     Berg incorporates the allegations contained in paragraphs 1 – 64 above against Heritage and Kornman.

66.     Berg would show that Kornman was an attorney and trained in specialized tax matters and that he sought out and advised Berg that he and Heritage could provide tax strategies and advice to him on a confidential basis. Kornman represented to Berg that the tax strategies were sound that that none of his tax plans had been questioned by the IRS. Kornman represented that Berg would pay for the initial services and that the balance due for the fee as represented by the promissory note for which the Trustee brings suit would not be due and payable if Berg were audited within three years of filing his tax return. Berg relied on these representations by Kornman.

67.     Further, Kornman advised Berg to seek the advice of a law firm based on Kornman's referral and such law firm did review the transaction and validated the transaction set up by Kornman and Heritage. However, Heritage, through Kornman, failed to disclose that the losses resulting from the transactions described herein did not, in the opinion of the Internal Revenue Service, represent bona fide losses reflecting actual economic consequences as required for purposes of §165 of the Internal Revenue Code. Specifically, Berg, through Kornman, failed to disclose that the transaction designed by Heritage, through Kornman, and implemented by Berg, had already been classified as a "listed transaction" by the Internal Revenue Service in Notice 2000-44 for purposes of §1.6011-4T(b)(2) of the Temporary Income Tax Regulations and §301-6111-2T(b)(2) of the Temporary Procedure and Administration Regulations. In Notice 2000-44, the IRS noted that, independent of their classification as "listed transactions" for purposes of §§1.6011-4T(b)(2) and 301.6111-2T(b)(2), the transactions described in Notice 2000-44 were also potentially subject to the tax shelter registration and list maintenance requirements of §§6111 and 6112 under the regulations issued by the Internal Revenue Service in February 2000 (§§301-6111-2T and 301.6112-1T, A-4), as well as the regulations issued in 1984 and amended in 1986 (§§301.6111-1T and 301-6112-1T, A-3).

68.     IRS Notice 2000-44, which addressed the very type of strategy designed by Heritage through Kornman, and adopted by Berg, was issued on August 11, 2000, well before the end of the 2000 tax year. As such, in addition to any reporting obligations that Heritage and/or Kornman would have had, the taxpayer would have had an obligation to disclose such listed transaction on his Individual Federal Income Tax Return for 2000. Yet, despite the fact that the federal tax returns in question were not filed until on or about May 1, 2001, neither Heritage nor Kornman, nor any of their representatives or agents, ever disclosed to Berg that the tax strategies and tax advice provided by Heritage, through Kornman, and relied upon by Berg, would subject Berg to substantial liabilities and other penalties.

69.     Notwithstanding the existence of Notice 2000-44, prior to the end of the 2000 taxable year, and over 8 months prior to the filing of Berg's federal and state tax returns, no attempt whatsoever was ever made by Heritage or Kornman to disclose to Berg the full potential adverse tax consequences which Berg would or could have been subjected to in light of claiming the losses recommended by Heritage, through Kornman, on his 2000 tax return. Had Berg been fully informed of the risks associated with adopting the strategies recommended by Heritage and Kornman, Berg would have never adopted the tax strategies claimed on his 2000 tax return, strategies that had already been specifically identified by the Internal Revenue Service as lacking substantial economic effect and, as a result, having been classified as "listed transactions," for purposes of required disclosure by the promoters of the scheme and by Berg.

70.     These actions by Kornman resulted in substantial damages and losses to Berg.

### B. Demand for Arbitration

71.     Berg demands its right to arbitration pursuant to Article XIII, "Agreement to Arbitrate," Section 13.1 of that agreement dated December 19, 2000 between The Heritage

Organization, L.L.C., and Gary M. Kornman, as its chief Executive and President of its Manager.

Berg requests that the Court enter an appropriate order referring this matter to arbitration.

### C. Fraudulent Misrepresentation

72. Berg incorporates the allegations contained in paragraphs 1 - 71 above against Heritage and Kornman.

### D. Fraudulent Inducement

73. Berg incorporates the allegations contained in paragraphs 1 – 72 above against Heritage and Kornman.

### E. Fraud by Non-Disclosure

74. Berg incorporates the allegations contained in paragraphs 1- 73 above against Heritage and Kornman.

### F. Breach of Fiduciary Duty

75. Berg incorporates the allegations contained in paragraphs 1 - 74 above against Heritage and Kornman.

76. Heritage, acting through its representative Kornman, was a fiduciary and owed a duty of honesty, loyalty, and care to Berg.

77. Heritage and Kornman breached a fiduciary duty to Berg by advising Berg to take advantage of the tax strategy and advice for the taxable year 2000 that Kornman knew or should have known were improper.

78. Heritage and Kornman breached a fiduciary duty to Berg that included the following acts or omissions: (a) creating, designing, implementing, promoting, advising, recommending, and selling an invalid tax shelter that is disallowed and/or prohibited by the IRS; (b) taking advantage of a relationship of trust and confidence and using their knowledge to solicit, advise, and recommend the tax strategy and advice, which was of no value to Berg; (c)

advising that the balance of the promissory note would not be collected until three years after the due date if there was no audit by the IRS or the FTB; (d) recommending that the Trustee collect on the promissory note which it knew was subject to a previous agreement which Kornman requested not be included in the promissory note.

### G. Negligent Misrepresentation

79.     Berg incorporates the allegations contained in paragraphs 1 – 78 above against Heritage and Kornman.

80.     Berg would show that Heritage and Kornman owed a duty of care, loyalty and honesty, a duty to comply with the applicable standards of care, and a duty to comply with the applicable provisions of their codes of professional responsibility.

81.     During the course of their representation of Berg, Heritage, operating through Kornman and others, negligently made false affirmative representations, and intentionally or negligently misleading omissions of material fact, including but not limited to: (a) taking advantage of a relationship of trust and confidence by using their knowledge of Berg's finances to solicit Berg for the tax strategy and advice; (b) taking advantage of a relationship of trust and confidence in recommending the tax strategy and advice; and  (c) advising and recommending the strategy  and advice when it was of no value.

82.     In reasonable reliance on Kornman's negligently false affirmative representations and intentionally or negligently misleading omissions of material facts regarding the tax strategy, Berg paid substantial fees to Heritage. But for Kornman's negligent misrepresentations and material omissions described above, Berg would never have participated in the strategy.  Berg reasonably relied on the strategy provided by Heritage and the representations from Kornman that the additional fees would not be collected.

83.    As a proximate cause of the foregoing, Berg has been injured in an actual amount to be proven at trial, and should be awarded actual, punitive, treble, enhanced and/or consequential damages in accordance with the evidence, plus attorneys' fee and costs.

### H. Negligence

84.    Berg incorporates the allegations contained in paragraphs 1 – 83 above.

85    Kornman represented that the plan would not be challenged and that none of his plans had ever been challenged by the IRS or FTB. Kornman represented that his tax strategy was good.  Kornman owed Berg a duty of care, loyalty and honesty, a duty to comply with the applicable standards of care, and a duty to comply with the applicable provisions of the codes of professional responsibility.

86.    Kornman owed a duty to Berg to meet the applicable standard of care for providing tax strategy and advice. Kornman failed to meet those applicable standards of care and failed to meet the standard of care caused damages to the Berg.

87.    Kornman's negligence rises to the level of gross neglect and/or malice. Kornman's negligence proximately caused Berg's damages.

88.    As a proximate cause of the foregoing, Berg has been injured in an actual amount to be proven at trial, and should be awarded actual, punitive, treble, enhanced and/or consequential damages in accordance with the evidence, plus attorneys' fee and costs.

### I. Damages for all Causes of Action

89.    Berg would show that he had to pay no less than $6,097,818.11 in additional IRS and FTB penalties and interest, and legal fees to correct the improper representations from Kornman. Berg may owe an additional $1.6 million to the FTB for which he is in the process of an appeal. Berg seeks these damages against Kornman.

**J. Legal Fees**

90.    Pursuant to Paragraph 13.3 of Article XIII, "Agreement to Arbitrate", Berg requests the recovery of his legal fees.

## IX.

### PRAYER FOR RELIEF

**WHEREFORE,** Berg demands judgment against the Heritage and Kornman as follows:

A.    Judgment in favor of Berg against Heritage and Kornman, jointly and severally, for actual, consequential and/or incidental and punitive damages, in an amount to be proven at trial, plus attorneys' fees, interest, and costs;

B.    Any further relief as is just either in law or in equity.

Respectfully submitted,

By: /s/ Perry J. Cockerell
     Perry J. Cockerell
     State Bar No. 04462500

     **CANTEY & HANGER, L.L.P.**
     1999 Bryan Street, Suite 3330
     Dallas, Texas 75201-3100
     Telephone:  (214) 978-4139
     Facsimile:  (214) 978-4150

     **LEVENE, NEALE, BENDER,**
     **RANKIN & BRILL L.L.P.**
     Beth Ann R. Young
     Ca. Bar No. 143945
     10250 Constellation Blvd., Suite 1700
     Los Angeles, California 90067

     **ATTORNEYS FOR CARL BERG**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been sent via ECF

filing and/or U.S. Mail to the following list of counsel this 11th day of August, 2006.

E. Lee Morris
Munsch Hardt Kopf & Harr, P.C.
3800 Lincoln Plaza
500 N. Akard Street
Dallas, Texas 75201-6659

/s/ Perry J. Cockerell
Perry J. Cockerell

98 723

E. Lee Morris
Texas Bar No. 00788079
Davor Rukavina
Texas Bar No. 24030781
**MUNSCH HARDT KOPF & HARR, P.C.**
4000 Fountain Place
1445 Ross Avenue
Dallas, Texas 75202-2790
Telephone: (214) 855-7500
Facsimile: (214) 855-7584

*Attorneys for Dennis S. Faulkner, Trustee*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| THE HERITAGE ORGANIZATION, L.L.C., | § | CASE NO. 04-35574-BJH-11 |
| | § | (Chapter 11) |
| ___Debtor.___ | § | |
| | § | |
| DENNIS S. FAULKNER, TRUSTEE, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | ADVERSARY NO. 06-03401-bjh |
| | § | |
| CARL E. BERG, | § | |
| | § | |
| ___Defendant.___ | § | |

## TRUSTEE'S ORIGINAL COMPLAINT

TO THE HONORABLE BARBARA J. HOUSER, U.S. BANKRUPTCY JUDGE:

COMES NOW Dennis S. Faulkner (the "Trustee"), in his capacity as the duly-appointed

Chapter 11 trustee of the estate of The Heritage Organization, L.L.C. ("Heritage"), and files his

Original Complaint against Carl E. Berg ("Berg"), respectfully stating as follows:

### Jurisdiction

1.      On May 17, 2004 (the "Petition Date"), Heritage filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code, thereby initiating Case No. 04-35574 with this Court (the "Bankruptcy Case").

2.      On August 13, 2004, the Court entered an order for the appointment of a Chapter 11 trustee in the Bankruptcy Case. On August 16, 2004 (the "Appointment Date"), the Office of the U.S. Trustee appointed the Trustee to serve as the Chapter 11 trustee, which appointment was confirmed and approved by order entered on or about August 18, 2004 in the Bankruptcy Case.

3.      This Court has subject matter jurisdiction over the Bankruptcy Case and this Adversary Proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and Miscellaneous Rule No. 33 (Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc) entered by the U.S. District Court for the Northern District of Texas on or about August 3, 1984.  This Adversary Proceeding constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(E) and (O).

4.      Venue of the Adversary Proceeding in this District is proper pursuant to 28 U.S.C. § 1409.

5.      The Court has personal jurisdiction over Berg pursuant to Fed. R. Bankr. P. 7004(f).

### Parties

6.      The Trustee, as the duly-appointed Chapter 11 trustee of Heritage's estate, is the Plaintiff herein in such capacity, and may be served in this case through his undersigned counsel.

7.      Berg, an individual, is the Defendant herein and may be served with process pursuant to Fed. R. Bankr. P. 7004(b) by mailing a copy of the summons and this Complaint, via

U.S. first class mail, postage prepaid, to Berg's dwelling house or usual place of abode, 10050 Bandley Drive, Cupertino, California 95014.

### Factual Background

8.      Heritage is a Delaware limited liability company which was formed on or about December 28, 1994. Prior to the Petition Date, the Debtor's operations were focused on the sale of various wealth, estate and tax planning strategies (the "Strategies").

9.      Berg entered into an Agreement with Heritage on or about December 19, 2000. Pursuant to the Agreement, Heritage agreed to provide certain Strategies to Berg, and Berg agreed to pay a fee to Heritage (the "Utilization Fee") in the event that he determined to utilize the Strategies after consultation with his advisors.

10.     As promised, Heritage disclosed the Strategies to Berg.  Thereafter, Berg determined to utilize the Strategies, resulting in Berg's obligation to pay a Utilization Fee of $4,531,862.00.

11.     On or about December 7, 2001, in partial satisfaction of the Utilization Fee, Berg executed that certain Promissory Note in the original principal amount of $3,009,362.00, made payable to Heritage (the "Note").  A true and correct copy of the Note is attached hereto as Exhibit A and incorporated herein for all intents and purposes.

12.     Pursuant to the Note, the entire unpaid principal balance of the Note, together with all accrued but unpaid interest, was due and payable on October 1, 2004.  *See* Note, ¶ 2.  To date, Berg has failed to make any payments under the Note.

13.     On December 6, 2005, the Trustee made formal demand on Berg for payment of the Note.  To date, Berg has failed to honor such demand.

14. As of June 5, 2006, the total amount of unpaid principal and accrued interest under the Note totaled $3,919,133.23, with interest continuing to accrue thereafter at the rate of approximately $923.58 per diem.

### Causes of Action

#### Count 1: Breach of Contract

15. The Trustee incorporates herein for all intents and purposes paragraphs 1 through 14 above.

16. Pursuant to the Note, Berg agreed to pay $3,009,362.00, plus interest thereon, to Heritage on October 1, 2004. Berg breached such agreement, which breach has never been cured and is continuing.

17. The Trustee hereby sues Berg for recovery of $3,919,133.23, plus additional default interest accruing after June 5, 2006 until the time of judgment.

#### Count 2: Turnover
#### (11 U.S.C. § 542(b))

18. The Trustee incorporates herein for all intents and purposes paragraphs 1 through 17 above.

19. Pursuant to the Note, Berg agreed to pay $3,009,362.00, plus interest thereon, to Heritage on October 1, 2004. Such debt owing by Berg to Heritage is property of the estate that is matured and not subject to offset.

20. Pursuant to 11 U.S.C. § 542(b), the Trustee hereby sues Berg for turnover of $3,919,133.23, plus additional default interest accruing after June 5, 2006 until the time of judgment.

### Count 3: Attorneys' Fees

21. The Trustee incorporates herein for all intents and purposes paragraphs 1 through 20 above.

22. Pursuant to the Note, Berg agreed to pay all costs and expenses of collection of the Note including, but not limited to, attorneys' fees. *See* Note, ¶ 5.

23. Additionally, the Trustee, by and through his counsel, presented his demand for payment of the Note in December 2005. Berg failed to make payment on the Note before the expiration of thirty (30) days after such demand was made. Accordingly, the Trustee is also entitled to an award of reasonable attorneys' fees pursuant to Tex. Civ. Prac. & Rem. Code § 38.001.

24. The Trustee hereby sues Berg for recovery of attorneys' fees incurred by the Trustee in connection with pursuing recovery on the Note including, without limitation, attorneys' fees incurred in connection with this action.

### Prayer

WHEREFORE, PREMISES CONSIDERED, the Trustee respectfully requests the Court to enter judgment against Berg on each of the Trustee's causes of action asserted herein, thereby providing the following relief to the Trustee:

(a) The Trustee's recovery from Berg, and Berg's turnover to the Trustee, of $3,919,133.23, plus additional default interest accruing after June 5, 2006 until the time of judgment;

(b) The Trustee's recovery from Berg of all reasonable attorneys' fees incurred by the Trustee in connection with pursuing recovery on the Note including, without limitation, attorneys' fees incurred in connection with this action, as determined by the Court;

(c) The Trustee's recovery from Berg of all costs incurred in connection with the prosecution of this action;

TRUSTEE'S ORIGINAL COMPLAINT – Page 5



(d)     The Trustee's recovery from Berg of post-judgment interest at the maximum rate permitted by law on all sums awarded to the Trustee; and

(e)     The provision of all such other and further relief to the Trustee, in law or in equity, as the Trustee has shown, or hereafter shows, himself to be justly entitled.

Respectfully submitted on this 20th day of June, 2006.

> **MUNSCH HARDT KOPF & HARR, P.C.**
> 3800 Lincoln Plaza
> 500 N. Akard Street
> Dallas, Texas 75201-6659
> Telephone: (214) 855-7500
> Facsimile: (214) 855-7584
>
> By: /s/ E. Lee Morris
>     E. Lee Morris
>     Texas Bar No. 00788079
>     Davor Rukavina
>     Texas Bar No. 24030781
>
> **ATTORNEYS FOR DENNIS S. FAULKNER,**
> **TRUSTEE**

DALLAS 1145468_1 7617.1

Label Matrix for local noticing
0539-4
Case 03-42334-dml7
Northern District of Texas
Ft. Worth
Thu Jul 27 11:06:57 CDT 2006

501 W. Tenth Street
Fort Worth, TX 76102

Bank of America, NA

Capital One
PO Box B5015
Richmond, VA 23285

Celink
3900 Capital City Blvd.
Lansing, MI 48906

David Childs Tax Assessor
PO Box 620088
Dallas, TX 75262

GE Capital Card Company
c/o Card Services
PO Box 276
Dayton, OH 45401

INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY OPERATIONS
PO BOX 21126
PHILADELPHIA PA 19114-0326

Mary H Regan
307 Canterbury Street
Euless, TX 76039

Moss Codilis Stawarski et al
PO Box 785051
Orlando, FL 32878

OCWEN FEDERAL BANK, FSB as servicer-in-fact
12650 Ingenuity
Orlando, FL 32878-5053

Bank One
P O Box 8650
Wilmington, DE 19886

Burt Strahan
995 Heritage Hill
Canyon Lake, TX 78133

Capital One Visa
PO Box 85015
Richmond, VA 23285

Codilis & Stawiarski, PC
650 N. Sam Houston Parkway East, #450
Houston, TX 77060

Discover Merchant
PO Box 21550
Tulsa, OK 74121

Goins Underkofler et al
Attn: Jack Langdon
1201 Elm Street, Suite 4800
Dallas, TX 75270

Kenneth L Maun Tax Assessor
PO Box 8006
McKinney, TX 75070

Mary M. Regan
307 Canterbury Street
Euless, TX 76039

NRAC
PO Box 650679
Dallas, TX 75265

Village Oaks Homeowners Association, Inc.

Bank of America
PO Box 9000
Getzville, NY 14068

Cambridge Park HOA
11480 Audelia Road, #200
Dallas, TX 75243

Capital One Visa Business
PO Box 85015
Richmond, VA 23285

Cross Country Visa
PO Box 310711
Boca Raton, FL 33431

First USA Bank, NA
PO Box 8650
Wilmington, DE 19899

Household Credit
PO Box 98715
Las Vegas, NV 89193

Linebarger, Heard, Goggan et al
309 W 7th St., Ste 1414
Ft Worth, Texas 76102-5113

Midland Mortgage Company
PO Box 26648
Oklahoma City, OK 73126

Ocwen Federal Bank
PO Box 514577
Los Angeles, CA 90051

Ocwen Federal Bank FSB
PO Box 514577
Los Angeles, CA 90051

Orchard Bank N/C
PO Box 80084
Salinas, CA 93912

Providian
PO Box 660490
Dallas, TX 75266

RISD
970 Security Row
Richardson, TX 75081

Steen & Steen/ McLean & Sanders
attn: Bankruptcy Section
307 W 7th St., Ste 1225
Ft Worth, Texas 76102-5110

Tarrant County Tax Collector
Delinquent Tax Department
100 E Weatherford St
Ft Worth, Texas 76196-0018

The Home Depot
PO Box 103047
Roswell, GA 30071

US Attorney
Office of the US Attorney
801 Cherry St, Ste 1700
Fort Worth, TX 76102-6897

US Department of Justice
10 & Constitution Ave, NW
Washington, DC 20530

Village Oaks Homeowners Association, Inc.
Riddle and Williams, P.C.
1050 Turtle Creek Centre
3811 Turtle Creek Boulevard
Dallas, TX 75219.

Wells Fargo Education Loan
Loan Servicing Center
PO Box 5160
Sioux Falls, SD 57117

William T. Neary
Office of the US Trustee
1100 Commerce St, Ste 9C60
Dallas, TX 75242

Willie Lorene Strahan
Michael Smith, Attny at Law
840 Brown Trl.
Bedford, Tx 76022

David B. Ebert
Ebert Law Offices
1726 Chadwick Ct., Suite 100
Hurst, TX 76054

Marilyn Garner
Law Offices of Marilyn D. Garner
2000 E. Lamar Blvd., Suite 600
Arlington, TX 76006

Ronald Massett
307 Canterbury Street
Euless, TX 76039

UST U.S. Trustee
1100 Commerce St.
Room 9C60
Dallas, TX 75242-1496

Willie L. Strahan

End of Label Matrix
Total addresses 47

| B 104 (Rev. 2/92) | **ADVERSARY PROCEEDING COVER SHEET** (Instructions on reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|---|

**PLAINTIFFS**
Dennis S. Faulkner, Trustee,

**DEFENDANTS**
Saul Berg

**ATTORNEYS (Firm Name, Address and Telephone No.)**
Munsch Hardt Kopf & Harr, P.C.
500 N. Akard Street, Suite 3800
Dallas, Texas 75201-6659
Tel: (214) 855-7500

**ATTORNEYS (If known)**

**PARTY (Check one box only)**   ☐ 1 U.S. PLAINTIFF   ☒ 2 U.S. DEFENDANT   ☒ 3 U.S. NOT A PARTY

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
Breach of contract
Turnover under Section 542

**NATURE OF SUIT** (Check the most appropriate box only.)

| | | |
|---|---|---|
| ☒ 454 To Recover Money or Property | ☐ 455 To revoke an order of confirmation of a Chap. 11, Chap. 12 or Chap. 13 Plan | ☒ 456 To obtain a declaratory judgement relating to any of foregoing causes of action |
| ☐ 455 To Determine Validity, Priority, or Extent of a Lien or Other Interest in Property | ☐ 426 To determine the dischargeability of a debt 11 U.S.C. §523 | |
| ☐ 459 To Obtain approval for the sale of both the interest of the estate and of a co-owner in property. | ☐ 434 To obtain an injunction or other equitable relief | ☐ 459 To determine a claim or cause of action removed to a bankruptcy court |
| ☐ 424 To Object or Revoke a discharge 11 U.S.C. §727 | ☐ 457 To subordinate any allowed claim or interest except where such subordination is provided in a plan. | ☐ 498 Other (specify) |

| ORIGIN OF PROCEEDINGS (Check one box only) | ☒ 1 Original Proceeding | ☐ 2 Removed Proceeding | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another Bankruptcy Court | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P 23 |
|---|---|---|---|---|---|

| DEMAND | NEAREST THOUSAND | OTHER RELIEF SOUGHT | ☐ JURY DEMAND |
|---|---|---|---|

**BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES**

| NAME OF DEBTOR | BANKRUPTCY CASE NO. |
|---|---|
| The Heritage Organization, L.L.C. | |

| DISTRICT IN WHICH CASE IS PENDING | DIVISIONAL OFFICE | NAME OF JUDGE |
|---|---|---|
| Northern District of Texas | Dallas | |

**RELATED ADVERSARY PROCEEDING (IF ANY)**

| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
|---|---|---|
| DISTRICT | DIVISIONAL OFFICE | NAME OF JUDGE |

| FILING FEE (Check one box only.) | ☒ FEE ATTACHED | ☐ FEE NOT REQUIRED | ☐ FEE IS DEFERRED |
|---|---|---|---|

| DATE Jun 20, 2006 | PRINT NAME E. Lee Morris | SIGNATURE OF ATTORNEY (OR PLAINTIFF) |
|---|---|---|

| B 104<br>(Rev. 2/92) | ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|---|

| PLAINTIFFS | DEFENDANTS |
|---|---|
| Dennis S. Faulkner, Trustee | GALLE BED |

| ATTORNEYS (Firm Name, Address and Telephone No.) | ATTORNEYS (If known) |
|---|---|
| Munsch Hardt Kopf & Harr, P.C.<br>500 N. Akard Street, Suite 3800<br>Dallas, Texas 75201-6659<br>Tel: (214) 855-7500 | |

**PARTY** (Check one box only)  ☐ 1 U.S. PLAINTIFF  ☐ 2 U.S. DEFENDANT  ☒ 3 U.S. NOT A PARTY

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Breach of contract.
Turnover (11 U.S.C. Section 542(b))

**NATURE OF SUIT**
(Check the most appropriate box only.)

| | | |
|---|---|---|
| ☒ 454 To Recover Money or Property<br>☐ 455 To Determine Validity, Priority, or Extent of a Lien or Other Interest in Property<br>☐ 458 To Obtain approval for the sale of both the interest of the estate and of a co-owner in property.<br>☐ 424 To Object or Revoke a Discharge 11 U.S.C. §727 | ☐ 455 To revoke an order of confirmation of a Chap. 11, Chap. 12 or Chap. 13 Plan<br>☐ 426 To determine the dischargeability of a debt 11 U.S.C. §523<br>☐ 434 To obtain an injunction or other equitable relief<br>☐ 457 To subordinate any allowed claim or interest except where such subordination is provided in a plan. | ☐ 456 To obtain a declaratory judgement relating to any of foregoing causes of action<br>☐ 459 To determine a claim or cause of action removed to a bankruptcy court<br>☐ 498 Other (specify) |

| ORIGIN OF PROCEEDINGS<br>(Check one box only) | ☒ 1 Original Proceeding | ☐ 2 Removed Proceeding | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another Bankruptcy Court | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P 23 |
|---|---|---|---|---|---|

| DEMAND | NEAREST THOUSAND<br>$ 69,919 | OTHER RELIEF SOUGHT | ☐ JURY DEMAND |
|---|---|---|---|

**BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES**

| NAME OF DEBTOR | BANKRUPTCY CASE NO. |
|---|---|
| The Heritage Organization, L.L.C. | |

| DISTRICT IN WHICH CASE IS PENDING | DIVISIONAL OFFICE | NAME OF JUDGE |
|---|---|---|
| Northern District of Texas | Dallas | Hon. Barbara J. Houser |

**RELATED ADVERSARY PROCEEDING (IF ANY)**

| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
|---|---|---|
| | | |

| DISTRICT | DIVISIONAL OFFICE | NAME OF JUDGE |
|---|---|---|
| | | |

| FILING FEE (Check one box only.) | ☒ FEE ATTACHED | ☐ FEE NOT REQUIRED | ☐ FEE IS DEFERRED |
|---|---|---|---|

| DATE | PRINT NAME | SIGNATURE OF ATTORNEY (OR PLAINTIFF) |
|---|---|---|
| Jun 20, 2006 | E. Lee Morris | |

## AGREEMENT

In consideration of the mutual promises and covenants of each to the other, this Agreement (herein referred to as the "Agreement") is entered into by and between The Heritage Organization, L.L.C. (herein referred to as the "Organization") and Carl E. Berg, Clyde J. Berg, Michael L. Knapp, Clyde J. Berg as Trustee for the 1981 Kara Ann Berg Trust and West Coast Venture Capital, Ltd., a California limited partnership (herein these Persons, together with their Affiliates [as herein defined], are collectively referred to as the "Principals"). The Organization and the Principals are sometimes referred to herein as a "Party" or, collectively, as "Parties."

### ARTICLE I
### PROCESS

The Organization's Group, after receiving the necessary data and objectives regarding the financial situation and potential tax liabilities of the Principals and after meeting with the Principals to discuss their objectives, may communicate to the Principals one or more Strategies which, singularly or in combination, may produce one or more of the following results (herein referred to as the "Results"):

(a) Realize a profit on the current and future disposition of the common stock currently held by the Principals; or

(b) Increase the diversification of the Principals' holdings and reduce the economic risk related to the volatility of the market price of the common stock currently held by the Principals; or

(c) Enhance the privacy and confidentiality of the Principals' financial information and correlatively, reduce risks to their personal safety and security by placing assets in other entities; or

(d) Limit or reduce the Principals' liability for risks of hedging and investment transactions by placing assets in other entities; or

(e) Provide an opportunity to reduce the Principals' Federal, state or local income or capital gains tax liabilities (referred to herein as "Taxes That Would Have Been Incurred As Projected For The Principals") in the event of the Principals Converting any and all kinds of Property by way of a Sale including, by way of example but not limitation, the common stock, real property, securities, intangible property, contracts, contractual rights and personal property (any and all kinds of property, whether or not the property is owned by or controlled by the Principals including, but not limited to those specifically described above, are referred to herein as "Property").

The Organization's Group may communicate an economic analysis of the Strategies to the Principals, and if the Principals so request in writing, and subject to fulfillment of the other provisions of this Agreement, the Organization's Group will then meet with any attorney, accountant, appraiser, investment banker, valuation Expert, or other advisor or Expert representing any of the Principals who has earlier executed and delivered to the Organization a prior written agreement having provisions, terms and conditions satisfactory to the Organization (herein such Persons are referred to as "Authorized Advisors") and communicate the Strategies to them.

### ARTICLE II
### NO OBLIGATION FOR PRINCIPALS TO IMPLEMENT

The Principals are not obligated to Implement any of the Strategies communicated by the Organization's Group under this Agreement. In the event the Principals do not Implement any of the Strategies or attempt to obtain a Result using the Strategies, they owe the Organization none of the fees for Implementation described in Article IV *and shall have no other payment obligations except as stated in Article III and Article VII of this Agreement*

### ARTICLE III
### FEES AND EXPENSES BEFORE IMPLEMENTATION

Upon the execution of this Agreement, the Principals shall pay the Organization Twenty-Two Thousand Five Hundred Dollars ($22,500.) for the purpose of covering the Organization's Group travel expenses for meetings between the Organization's Group and the Principals, or their Authorized Advisors, and any employee, partner, manager, stockholder, agent, representative, trustee, officer, member or director of any Principal which is not a Natural Person who has executed and delivered to the Organization a written agreement having provisions, terms and conditions satisfactory to the Organization (herein such Persons are referred to as "Authorized Persons").

### ARTICLE IV
### FEES IN THE EVENT OF IMPLEMENTATION

4.1     *The Organization's Fees in the Event of Implementation of the Strategies.* If the Principals Implement, in whole or in part, any one or more of the Strategies or Implement any one or more of the Results using any of the Strategies (either is referred to herein as a "Utilization"), the Principals shall pay, in addition to all other amounts due under this Agreement, a fee of twenty-five percent (25%) of all present and future Taxes That Would Have Been Incurred As Projected For The Principals that would have been incurred by any Principal without a Utilization relating in any way to a Sale or relating in any way to any Strategy that has as one of its objectives or byproducts the effect of reducing Taxes That Would Have Been Incurred As Projected For The Principals relating in any way to (i) all Property used to Implement one or more of the Strategies related to each Result, and (ii) all Property otherwise used in any way with any Strategy to attempt to obtain each

Page 1 of 15

Copyright 2000 The Heritage Organization, L.L.C.

EXHIBIT

A

Result (all Property used in either way is referred to herein as "Implementing Property"). As used herein, the term "Highest Value" means the greater of (i) the total consideration received in the event of a Sale or (ii) the market value for that Property determined without considering any reductions or discounts in value including by way of example, but not limitation, those for minority positions, size of holdings, blockage, liquidation rights, marketability, restrictions, fractionalization, and/or other facts or situations. For determining Value, marketable securities used in any Strategy shall be valued as of the last trade or closing price on the day on which implementation of that particular Strategy begins. In calculating the fee under the Article IV, the fee shall be based upon the determination of realized (or avoided) gains or increases assuming the "Highest Value" of the Implementing Property. The fees under this Article IV shall apply to all Property used to implement a Strategy or to attempt to obtain a Result using a Strategy at any time during the one hundred twenty (120) Decembers following the date of the first Revealing of a particular Strategy by the Organization's Group to any of the Principals. The intent of this Article IV is that the fees shall be calculated based on present and future Taxes That Would Have Been Incurred As Projected For The Principals as reasonably calculated by the Organization under this Agreement (without regard to subsequent adjustments thereto by the Principals, the Internal Revenue Service or otherwise), and without regard to potential savings from other Strategies that may be available or known, whether used or not.

4.2 **Maximum Fee.** The Principals will be obligated to pay fees under this Article IV for the total Value of Implementing Property. This determination will be made initially at the time that any Strategy is first implemented, and the fees under this Article IV will be due and payable pursuant to that initial determination until such time as that determination is adjusted. If the Value of the Implementing Property involved in a future Utilization increases the total Value of all Implementing Property which has been involved in a Utilization, this determination will be adjusted so that the fees under this Article IV shall be due and payable for the total Value of Implementing Property at the time of such determination. The fees for any Result under this Article IV of this Agreement shall not be paid twice for the same Implementing Property, nor shall any additional or greater fee be due because the Value of any Implementing Property on which a fee has been paid increases thereafter, unless the amount of the increase in Value of any Implementing Property have not previously been used in calculating the percentage fees, stated in Section 4.1, and an additional Strategy is implemented using Implementing Property having such increases in Value on which fees have not been paid.

4.3 **Usefulness And Value Of The Strategies.** The Principals Acknowledge that the Strategies are not necessarily composed of information which is proprietary, trade secrets or exclusively known to the Organization's Group and that the usefulness and value of the Strategies may be attributable to the timing, sequencing and combinations of the various non-proprietary components of the Strategies or to the fact that the Strategies may not be known to the Principals even though they may be known to others.

4.4 **Timing of Fees.** One half of the Fees due pursuant to this Article IV shall be due and paid to the Organization within five (5) business days after any time any of the Principals orally advise the Organization that they wish to implement, in whole or in part, any one or more of the Strategies. The balance of the Fees due pursuant to this Article IV shall be due and paid to the Organization before the expiration of ten (10) business days after a Utilization

**ARTICLE V**

**POSSIBLE RESULTS AND RELEASES**

5.1 **Uncertainty of Results.** The Principals Acknowledge that the attempted Results from the Strategies are subject to interpretations of current Law and may be substantially impacted by changes of Law. (The term "Law" as used herein shall be broadly construed and shall mean and include, by way of example but shall not be limited to, statutes, codes, legislation, regulations, revenue rulings, private rulings, interpretations, technical advice memorandums, administrative decisions, administrative interpretations, and/or court decisions.) The Principals further Acknowledge that, if large tax savings are realized, the Internal Revenue Service could possibly disallow or contest these large tax savings and that tax payments and court proceedings may be necessary to gain or defend any tax savings.

5.2 **No Reliance On The Organization's Group.** The Principals Acknowledge that the Organization's Group does not engage in the practice of law or accounting, or act as an appraiser or valuation Expert, or provide any Expert service. The Principals Acknowledge that they will not take any action with respect to the Strategies or the Results until after the Authorized Advisors representing the Principals have reviewed the Strategies, judged the effects of the Strategies, modified them and made final recommendations to the Principals on any actions to be taken by the Principals. The Principals Acknowledge that they will act solely on the advice of their Authorized Advisors, that the Principals have exercised and will at all times in the future exercise independent judgment in determining to enter into this Agreement and to Implement any of the Strategies or attempt to achieve a Result using any of the Strategies, and that they have not relied and will not rely upon any advice, information, representations or agreements, oral or otherwise, of the Organization's Group. The Principals Acknowledge that the Organization's Group shall have no responsibility or obligation to inform or notify the Principals of any changes of Law or to disclose to the Principals any different, revised or future Strategies other than any Strategies which may be initially disclosed to the Principals pursuant to this Agreement.

5.3 **INDEMNIFICATION OF THE ORGANIZATION.** The Principals hereby release, hold harmless and agree to indemnify the Organization's Group from Any and All Claims by any of the Principals or any Person arising out of or relating in any way to any Strategies, to any Results, to any of the Principals, any of their Affiliates and/or any of their Family Members including, by way of example but not limited to, any claims alleging negligence, gross

Copyright 2000 The Heritage Organization, L.L.C.

Page 2 of 13

negligence, error, omission or wrongful conduct by the Organization's Group, and extending to any and all damages, costs, attorneys' fees, experts' costs, valuation costs, accounting fees, ~~civil or criminal tax liabilities~~ penalties, interest and other results or outcomes of any and all tax returns, tax liabilities, tax positions, contracts, transfers, purchases, sales, investments and transactions with respect to any Property, and of any and all negotiations, contests and legal proceedings, whether or not related to taxes, to the Principals or to any Strategies.

## ARTICLE VI
### OTHER COSTS IN THE EVENT OF IMPLEMENTATION

The Principals will be solely responsible for paying all costs including, but not limited to, legal fees, accounting fees, interest, investment banking costs or fees, brokerage costs, valuation costs, and all other costs of any Expert services, related in any way to the consideration or a Utilization of any Strategies. The Principals Acknowledge that the Organization's Group shall not be responsible or liable for paying or reimbursing any taxes, penalties on taxes or interest on taxes including, but not limited to, any state or federal taxes on income, estates, gifts, unified transfers, generation-skipping transfers, capital gains, excise or other taxes, additions to taxes, penalties or interest with respect to any tax liabilities and tax returns of the Principals or other Persons.

## ARTICLE VII
### FEES IN THE EVENT THE PRINCIPALS ELECT TO REVEAL THE STRATEGIES

7.1    The Organization's Fees in the Event the Principals Elect to Reveal the Strategies.    The Principals Acknowledge that they may elect to either (i) Reveal the Strategies to one or more Persons and pay the fees set out in this Article VII; or (ii) maintain the absolute secrecy and confidentiality of the Strategies and not Reveal the Strategies to any Person except as expressly authorized by the Organization as described in this Article VII and consequently not be liable for the fees set out in this Article VII.

7.2    To Whom The Principals May Reveal Without Any Fees.    The Principals may Reveal the Strategies, without incurring liability for the fees described in this Article VII below, only to Persons who, prior to having any Strategies Revealed, are Authorized Advisors or Authorized Persons.

7.3    To Whom The Principals May Reveal With Fees.    In the event that any of the Principals Reveal one or more of the Strategies to any Person other than Authorized Advisors or Authorized Persons, the Principals agree to pay to the Organization the following fees: (i) Two Million Dollars ($2,000,000.) for each Person to whom the Strategies are Revealed, directly or indirectly, by the Principals themselves or through any Persons, which fees shall be due and payable, with respect to each such Person, ten (10) days after the Strategies are Revealed to such Person; and (ii) if any of the Strategies are Implemented by any Person to whom the Strategies are Revealed, directly or indirectly, by the Principals themselves or through any Persons, six (6%) percent of the Value of all Property used to Implement any of the Strategies or attempt to obtain a Result using the Strategies, which fees shall be due and payable, with respect to Property used to Implement a Strategy, ten (10) days after the first act is taken to Implement any of the Strategies, and, with respect to Property subsequently used to Implement a Strategy, ten (10) days after the first time that such Property is used to Implement any of the Strategies. However, the Principals shall not be liable under this Article VII for any fee owed by any Authorized Advisor under this Agreement or any other agreement. The fees under this Article VII shall apply to all Property used to Implement a Strategy or to attempt to obtain a Strategy at any time during the one hundred twenty (120) ~~December months~~ following the date of the first Revealing of a particular Strategy by the Organization's Group to any of the Principals. The Principals Acknowledge that the fees described in this Article VII shall be paid by the Principals in addition to the fees owed by each and every other Person, having an agreement with the Organization, who is present or involved in a situation that results in Revealing one or more of the Strategies. However, the Principals shall not be liable under this Article VII for any fee owed by any Authorized Advisor or Authorized Person under this Agreement or any other agreement.

7.4    No Permission To Violate Copyrights or Trademarks.    This Agreement and other materials furnished to the Principals or Authorized Advisors or Authorized Persons by the Organization's Group may be copyrighted, trademarked or service-marked under Federal Law. No permission is granted hereby to copy or disseminate, in any manner, materials which are copyrighted, trademarked or service-marked by the Organization's Group. Further, the Principals Acknowledge that their copies of this document and all terms of this Agreement will be kept confidential and not Revealed to any Person.

## ARTICLE VIII
### DISCLOSURE AND NOTICES

8.1    Confidentiality By The Organization.    Unless the Organization receives oral permission from any of the Principals, the Organization agrees to keep confidential, within the Organization, all documents received from the Principals, (i) except as may be desirable by the Organization in obtaining research on an anonymous basis, at the Organization's expense, from attorneys, accountants, appraisers and/or other Experts, and/or (ii) except as the Organization may be compelled under the process of law and/or (iii) except that the Principals agree that their identity and the general nature of their transaction(s) may be disclosed to potential clients of the Organization and/or (iv) except during an arbitration between the Parties in accordance with this Agreement.

Copyright 2000 The Heritage Organization, L.L.C.

8.2   <u>Exception to Principals' Disclosure</u>. The Principals will not be obligated to pay the Organization any fee for the Revealing of a Strategy if a Revealing is (i) compelled under the process of law, when such legal process has not been caused or initiated by any of the Principals or if any of the Principals cannot, under any circumstance, resist such process of law, or (ii) during an arbitration between the Parties in accordance with this Agreement.

8.3   <u>Disclosure Relating to Fees, Required Notices and Waiver of Privileges</u>. Each of the Principals agrees to obtain and disclose to the Organization promptly upon request all data, facts and documents relating to possible fees or the calculation of possible fees due to the Organization under this Agreement. In the event that there is a Utilization by any of the Principals, the Principals agree to deliver to the Organization, within fourteen (14) days after each time that any Property is involved in a Utilization, written notice identifying each Strategy which has been implemented and the nature and estimated Value of all Implementing Property. In the event that any of the Principals Reveal one or more of the Strategies to any Person other than an Authorized Advisor or Authorized Person, the Principals agree to deliver to the Organization, within seven (7) days after each time that any of the Strategies is Revealed, written notice containing the name of each Person to whom any of the Strategies has been Revealed and identifying each Strategy which has been Revealed to each such Person. The Principals Acknowledge that all limitation periods for bringing an action to recover fees under this Agreement shall be tolled until such time as all written notices required under this Article VIII have been received by the Organization, and that the failure to timely deliver each such written notice to the Organization shall be a continuing, material breach of this Agreement by the Principals. To facilitate enforcement of the provisions of this Agreement, the Principals hereby Acknowledge that none of the Principals will assert, so as to avoid any disclosure otherwise required under this Agreement, any and all privileges, including, by way of example but not limitation, any attorney-client privileges, work product privileges, accountant-client privileges and all other privileges which may now or hereafter exist, with respect to communications between any of the Principals and any Persons to whom any of the Strategies are Revealed.

8.4   <u>Delivery of Notices</u>. All notices, approvals, disclosures and other communications required or permitted to be given under this Agreement shall be in writing and shall be (i) delivered personally, (ii) sent via Federal Express (or another comparable overnight messenger service), (iii) sent via telecopy, or (iv) mailed, certified or registered mail, return receipt requested, to the Parties at the following addresses or such notified changed address:

If to the Organization:

    Attention: W. Ralph Canada, Jr.
    Suite 800, East Tower
    5001 Spring Valley Road
    Dallas, Texas 75244-3942
    Telecopier: (972) 991-5140

If to the Principals:

    Attention: Carl E. Berg
    10050 Bandley Drive
    Cupertino, CA 95014
    Telecopier: (408) 725-1626

With a copy to:

    Attention: Vickie A. Walker
    P.O. Box 168
    Pleasant View, Tennessee 37146
    Telecopier: (615) 746-2472

8.5   <u>Methods for Delivery of Notice</u>. Mailed notices shall be deemed given upon the expiration of five (5) business days after deposit into the United States mail, registered or certified with return receipt requested and with postage fully prepaid, or, if a returned receipt requested is returned to the sender within ten (10) business days after deposit into the United States mail, the later date of actual receipt as evidenced by the return receipt. All other notices shall be deemed given upon actual receipt by the recipient. Each of the Parties agrees to notify the other Parties in writing of any change in addresses and telecopier numbers set forth above, and Acknowledges that, unless and until such notice is given, delivery of all notices to the addresses and telecopier numbers set forth above shall be effective and binding on the intended recipient.

**ARTICLE IX**
**FEE PAYMENTS AND COLLECTIONS**

The Principals shall be jointly and severally liable for all payments due to the Organization under this Agreement (including, without limitation, any costs, fees, or damages of any kind), and Acknowledge that all such payments shall be made at the offices of the Organization in Dallas County, Texas. However, Michael L. Knapp shall only be liable for fees incurred by himself individually under this Agreement and shall not be liable for fees incurred by any other Person under this Agreement. Furthermore, Clyde J. Berg shall only be liable for fees under this Agreement incurred by himself individually or in his Capacity as Trustee for the 1981 Kara Ann Berg Trust and shall not be liable for fees incurred by any other Person under this Agreement. In addition, Carl E. Berg, shall only be liable for fees under this Agreement incurred by himself individually, West Coast Venture Capital, Ltd. and/or by the 1981 Kara Ann Berg Trust and shall not be liable for fees incurred by any other Person under this Agreement.

The Principals Acknowledge that all fees, expenses and other payments to the Organization under this Agreement shall be due, paid and nonrefundable regardless of whether any Results are obtained, in whole or in part, by the Principals or any other Person, and regardless of the direct and indirect results and effects of any actions taken with respect to any Strategies

Copyright 2000 The Heritage Organization, L.L.C.

Page 4 of 15

or any Results. No condition, performance, result, action or activity, other than those stated in this Agreement, is required for the Principals' payment of any fees under this Agreement. If this Agreement is terminated for any reason, other than by the expiration of any 120-December time periods stated herein, the Principals shall pay to the Organization, its successors or assignees on any Utilizations after termination of this Agreement, the fees to which the Organization would have been entitled had this Agreement remained in full force and effect. No interpretation or effect of this Agreement or any other action by any Party, Person or court shall prevent payment of fees to the Organization, its successors or assignees by the Principals, as stated in this Agreement, within thirty (30) days after a Utilization. Payment of fees to the Organization at the time due by the Principals is the essence of this Agreement. The Principals Acknowledge that any failure by them to pay fees, on time, to the Organization, its successors or assignees when due will cause special or consequential harm and special or consequential damages to the Organization, its successors or assignees in excess of the amount of such fees and that the extent of such damages will be difficult, if not impossible, to ascertain. The Principals and the Organization stipulate and Acknowledge that in the event the Principals do not pay fees, at the time due, when due to the Organization under this Agreement, the Organization will and could be harmed and damaged in many ways which are consequential as well as special and which may include, by way of example but are not limited to the items, reasons and consequences stated in Exhibit A.

For those items, reasons and consequences stated in Exhibit A and other consequences which are not stated in Exhibit A but could reasonably be envisioned or foreseen by the Parties, the Principals and the Organization stipulate and Acknowledge that the special and/or consequential harm and special and/or consequential damages to the Organization caused by the Principals' failure to pay any and all such fees, at the time due, to the Organization, under the Terms of this Agreement, are incapable of accurate calculation or determination and, while one or more is certain to occur, are uncertain as to amount and shall reasonably be very many times greater than the amount of any fees, expenses and other payments unpaid by the Principals to the Organization. Therefore, the Principals stipulate and Acknowledge, that in the event of their failure to pay fees to the Organization, its successors or assignees, when due, and within ten (10) business days after receiving written notice of the nonpayment of any fees, the Principals shall pay to the Organization, its successors or assignees damages of three (3) times the amount of such fees unpaid at the time due for the consequential harm and/or consequential damages to the Organization caused by the Principals' failure to pay any and all such fees, at the time due, to the Organization, under the Terms of this Agreement. The Principals and the Organization stipulate and Acknowledge that the amount stipulated and Acknowledged under this Agreement as damages to be paid by the Principals to the Organization is stipulated and Acknowledged by the Parties to be a reasonable forecast of just compensation for the special and/or consequential harm and special and/or consequential damages which are caused by the Principals' failure to pay any and all such fees unpaid at the time due to the Organization under the Terms of this Agreement. Further, the Principals and the Organization stipulate and Acknowledge that the Principals shall not be liable to the Organization for any amount of special and/or consequential harm and special and/or consequential damages in excess of those stated in this Article IX of this Agreement.

## ARTICLE X
### DEFINITIONS

Terms Used in This Agreement. The definitions and explanations of terms set forth below or elsewhere in this Agreement shall govern the meaning, interpretation and application of such terms as used in this Agreement. Words not defined in this Agreement shall have their ordinary meanings.

10.1 The term "Acknowledge" shall mean to agree, understand, recognize, represent, warrant and acknowledge.

10.2 The term "Affiliate" shall be broadly construed and shall mean when used with reference to any Party to this Agreement, any Person which is beneficially owned or held for the benefit of any Party to this Agreement or any of their Family Members and/or, directly or indirectly, controlled by any Party to this Agreement or any of their Family Members. For the purposes of this definition, "control" when used with respect to any Party to this Agreement shall be broadly construed and shall mean and include, by way of example but not limitation, the power to direct, totally or partially, (The term "partially" shall mean having at least a five (5%) percent interest in the control, management, stockholdings, profits, equity, or beneficial interests of a Person) the actions, management or policies of a Person, directly or indirectly, whether through the ownership of voting securities, by contract, through trust, by agreement, or otherwise. Further, the terms "controlling" and "controlled" shall have meanings correlative to the foregoing.

10.3 The term "Any and All Claims" shall be broadly construed and shall mean any and all disputes, claims, causes of action and other controversies which now exist or which may hereafter arise at any time between any of the Principals and the Organization's Group, including by way of example but not limitation, any and all claims sounding in contract or in tort, any and all claims at law or in equity, any and all causes of action under common law, any and all causes of action under any present or future federal or state statutes or regulations, including , by way of example but not limited to, any and all disputes regarding the valuation of any Property, any and all disputes regarding the amount of any fee, reimbursement or other payment under this Agreement, and/or any and all disputes arising under or relating in any way to this Agreement, any omission or commission of any act relating in any way to this Agreement, its provisions, its terms or conditions and/or related to any taxes, to the Principals or to any Strategies.

10.4 The term "Authorized Arbitrator" shall be narrowly construed and shall mean any Natural Person for whom each and all of the following requirements have been met or such other Natural Person who is mutually agreed upon in writing by the Parties:

Copyright 2000 The Heritage Organization, L.L.C.

(i) Such Natural Person shall be, at the time of his selection as an Authorized Arbitrator, an executive officer of an investment banking firm which, during the last full calendar year prior to his selection as an Arbitrator, had annual gross revenues greater than Five Hundred Million ($500,000,000) Dollars; and

(ii) Each Party hereto shall provide the other Party hereto written notice identifying, by name, address, firm name, firm address, office and residence telephone numbers, each such executive officer being considered by such Party for selection as an Authorized Arbitrator; and

(iii) Each such candidate shall have executed and delivered to the Organization a written agreement having provisions, terms and conditions mutually satisfactory to the Organization relating to terms and conditions under which the Authorized Arbitrators may Reveal the Strategies and having provisions, terms and conditions satisfactory to the Organization which protects the Strategies and all confidential information relating thereto; and

(iv) Such executive officers have been designated by the Organization, in writing within the previous sixty (60) days, to the Principals as having executed and delivered to the Organization a satisfactory written agreement; and

(v) Each such executive officer shall have been selected within ninety (90) days after the written notice of one Party served on the other requesting an arbitration; and

(vi) Each such executive officer shall, at the time of his selection as an Authorized Arbitrator, be an executive officer engaged in mergers and acquisitions; and

(vii) Each such executive officer shall have had personal earnings from their firms of at least One Million Dollars ($1,000,000.) in the calendar year preceding his selection as an Authorized Arbitrator; and

(viii) Neither such executive officers, their firms nor any family member of any such executive officers shall have or have had, at any time, any relationship of any kind including, by way of example but not limitation, social, business, pecuniary, familial, or otherwise with either the Organization, the Principals or the Authorized Advisors or the agents, employees, Affiliates, Representatives or Family Members of either the Organization, the Principals or the Authorized Advisors. It is the intent of this Agreement to eliminate any Person as an Authorized Arbitrator who, for any reason, may have a tendency to be partial to one of the Parties to this Agreement.

10.5  The term "Converting" shall be broadly construed and shall mean the transferring, selling, swapping, trading, exchanging, contributing, modifying, changing, altering, and/or transforming of Property.

10.6  The term "Expert" shall be broadly construed and shall mean to engage in the practice of law, the practice of accounting, to act as an appraiser, valuation expert, investment banker, investment advisor or to provide any expert or professional service whatsoever.

10.7  The term "Family Member" shall be broadly construed and shall mean Ancestors, spouses of Ancestors, Descendants and spouses of Descendants. "Descendants" and "Ancestors" shall include stepchildren and adopted children.

10.8  The terms "Implement", "Implemented", and "Implementation" shall be broadly construed in favor of the Organization and shall mean any act in furtherance of any of the Strategies, including, by way of example but not limitation, to use, undertake, begin, act upon, start, or execute any of the Strategies or Results, in whole or in part, directly or indirectly, whether or not in the same form or substance as disclosed to the Principals by the Organization's Group.

10.9  The term "Internal Revenue Code" shall mean the U.S. Internal Revenue Code of 1986, as amended from time to time.

10.10  The term "Natural Person" shall mean one or more individual human beings. The term "Non-Natural Person" shall mean any type of organization, legal entity, division or grouping including, by way of example but not limited to, any corporation, partnership, limited liability company, joint venture, association, joint-stock company, trust, unincorporated organization or government or any agency or political subdivision of any government.

10.11  The term "Organization" as used in this Agreement shall mean The Heritage Organization, L.L.C., a Delaware limited liability company, its Affiliates and/or their successors or assigns.

10.12  The term "Organization's Group" as used in this Agreement shall be broadly construed and shall mean the Organization, its Affiliates and/or its Representatives.

10.13  The term "Person" shall be broadly construed and shall mean both Natural persons and Non-Natural Persons.

10.14  The term "Representative" shall be broadly construed and shall mean and include any Person related in any way to an employee, officer, director, member or stockholder of the Organization by blood or business interest or which is an Affiliate of an officer, director, member or stockholder of the Organization, any Affiliate of the Organization or any Person employed, contracted, hired or controlled, directly or indirectly, by the Organization or any of its Affiliates including, by way of example but not limited to, appraisers, attorneys, accountants, tax counsel, investment bankers, brokers, securities dealers, and banks.

10.15  The term "Reveal", "Revealed" or "Revealing" shall be broadly construed and shall mean and include, as the tense may require, informing, describing to, discussing with, disclosing to, allowing to become known to or allowing discovery by any Person.

10.16  The term "Sale" shall be broadly construed and shall mean that the Implementing Property involved in a Utilization has been converted to, contributed to or for and/or exchanged for, some other asset, including, by way of example but not limited to, cash (present or future), income, debt or equity in another Person including, by way of example but not limited to, by way of a transfer, sale, contribution, exchange, merger, incorporation or reorganization, and such cash, debt or equity has been received by the Principals and/or their transferees, assignees, or successors in interest. Whether the foregoing has occurred shall be determined independently for each portion of the Implementing Property.

10.17 The term "Strategies" shall be broadly construed and shall mean the securities, contracts, Persons identified, facts, data, knowledge, documentation, opinions, combinations of concepts, ideas, techniques, methods, transactions, combinations, sequences of events, timing, financial models, diagrams, illustrations, and procedures divulged, described, communicated, detailed, arranged or identified by the Organization's Group, and all variations, modifications, sequences, rearrangements and recombinations thereof.

## ARTICLE XI
## CONSIDERATION, WAIVERS, AMENDMENTS AND COPIES

11.1 Consideration. The Parties Acknowledge that the promises and covenants contained in this Agreement provide good and sufficient consideration for every promise, duty, term, condition, obligation, agreement, transfer, conveyance and right contained in this Agreement. The Principals Acknowledge that it is not required for the Organization's Group to communicate any Strategies to all of the Principals who have executed this Agreement for each of the Principals to be bound by this Agreement. Communicating with Natural Persons who are Parties to this Agreement and who are employees, partners, stockholders, trustees, officers, members or directors of any Principal which is not a Natural Person is deemed to be Communicating to the Principal which is not a Natural Person.

11.2 No Other or Prior Agreements and/or Inducements. By signing this Agreement, the Parties Acknowledge that there were no promises, representations or agreements, oral, written or implied, made to them by any Party or other Person which induced them to enter into this Agreement. The Parties further Acknowledge that there are no other agreements between them, oral, written or implied, other than those stated explicitly in this written Agreement.

11.3 Waivers of Breaches. The failure or delay by any Party to insist upon the strict performance or enforcement of every promise, duty, term, condition, obligation, agreement, transfer, conveyance and right contained in this Agreement shall not be deemed a release or waiver of any of its rights, powers or any of the provisions of this Agreement or a waiver of any breach or default by the Party of any term, condition, or provision of this Agreement, nor shall any custom or practice which may grow up between the Parties in the administration of this Agreement be construed to waive or lessen the rights of any Party to insist upon the performance by any other Party in strict accordance with the terms, conditions, and provisions set forth herein. To be effective, any waiver must be in writing and signed by the Party so waiving, and any such waiver shall apply only to the matter or instance so specifically waived and shall not operate or is to be construed as a waiver of any subsequent breach by any Party.

11.4 Amendments and Supplemental Agreements. This Agreement embodies all understandings and all agreements between the Parties, supersedes all prior agreements and understandings, and may be changed, terminated, amended or supplemented only by an agreement, in writing, fully executed (referred to herein as a "Supplemental Agreement") by all the Parties affected by the Supplemental Agreement and delivered in accordance with any express terms hereof.

11.5 Notarization and Dating. The signatures of one or more of the Parties to this Agreement may be notarized. The failure of the signature, of any Party to this Agreement, to be notarized and/or dated shall not affect the validity and binding effect of their signature on the execution of this Agreement.

11.6 Multiple Copies, Counterparts, Photocopies and Facsimiles. This Agreement may be executed in any number of multiple copies or counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same Agreement. In making proof of this Agreement, it shall not be necessary to produce or account for more than one such identical copy or counterpart. A photocopy of any executed copy or counterpart shall be valid as an original. Likewise, a facsimile of any executed copy or counterpart and/or a photocopy of a facsimile of any executed copy or counterpart shall be valid as an original. Facsimile transmission of any signed original document shall be the same as delivery of an original document. At the request of any Party, the Parties will confirm facsimile transmitted signatures by signing an original document.

11.7 Titles, Captions and Headings. Titles, captions and headings of articles, sections and subsections and of any other parts of this Agreement are descriptive for reference purposes and convenience only. They are not intended to reflect, restrict or to in any way limit or amplify the terms, provisions, covenants and conditions of this Agreement, or to encompass all of the terms, provisions, covenants and conditions of this Agreement or to interpret or govern such terms and provisions. The text of the terms and provisions themselves shall control. Titles, captions and headings of articles, sections and subsections and of any other parts of this Agreement are for identification only, are otherwise not part of this Agreement, and shall not in any way whatsoever define, limit or describe the scope or intent of this Agreement, nor in any way affect the meaning or interpretation of this Agreement.

Copyright 2000 The Heritage Organization, L.L.C.

## ARTICLE XII
## MISCELLANEOUS

12.1 *Rules of Interpretation.* Whenever necessary in this Agreement or where the context requires, the singular number shall include the plural where appropriate, words of any gender shall include each other gender where appropriate, words that can be used as a noun or a verb shall be read as appropriate in their context, and, other than where specifically negated, words expressing the conjunctive shall also include the disjunctive (and vice versa). The Parties Acknowledge that any rule of construction to the effect that ambiguities are to be resolved against the drafting party shall not apply in the interpretation of this Agreement or any amendments or exhibits thereto.

12.2 *Survival and Effect on Representatives and Assigns.* Certain provisions of this Agreement by their nature provide post-termination protection and rights to the Parties and shall survive termination of this Agreement. Such provisions so surviving shall be determined by a liberal construction of and by the nature of the particular provision. This Agreement and the rights hereunder may be assigned only by the Organization. This Agreement and the rights of the Parties hereunder shall be binding upon and inure to the benefit of the Parties hereto and their respective Affiliates, heirs, executors, administrators, personal representatives, legal representatives, successors and permitted assigns.

12.3 *Choice of Law, Jurisdiction, Venue and Agent for Service.* The construction and performance of this Agreement, and Any and All Claims, shall be governed by Texas law. Without waiving or limiting the provisions of Article XIII - AGREEMENT TO ARBITRATE, each of the Parties to this Agreement (i) consents to the personal jurisdiction of the state and federal courts in Dallas County, Texas for Any and All Claims; and (ii) Acknowledges that, as to Any and All Claims, any and all lawsuits and other proceedings, except proceedings to enforce arbitration awards, shall be brought in Dallas County, Texas and in no other jurisdiction or venue. Each of the Principals hereby appoints the Texas Secretary of State as their agent for service of process with respect to Any and All Claims, and waives any and all rights to a trial by jury for Any and All Claims. Any notice or legal process served on the Texas Secretary of State as agent for service of process for the Principals shall also be contemporaneously sent by the Organization's Group to the Principals in the manner provided in Article VIII hereof.

12.4 *Invalidity and Remedy.* If any part, section, clause, paragraph, sentence, term or provision (collectively and separately referred to herein as a "Term") of this Agreement is held to be illegal, void, invalid, or unenforceable by any court or arbitration panel of competent jurisdiction, it is the intention of the Parties that this Agreement shall be construed and enforced as if such illegal, void, invalid, or unenforceable Term had never comprised a part of this Agreement; and the remaining Terms of this Agreement shall remain in full force and effect and shall not be affected by the illegal, void, invalid, or unenforceable Term or by its severance from this Agreement. To the extent that any Term of this Agreement shall be held to be unenforceable or void in whole or in part, then in lieu of each such unenforceable or void Term, there shall be added automatically as a part of this Agreement a Term as similar, in terms and effects, as such unenforceable or void Term as may be possible and be legal, valid, and enforceable.

## ARTICLE XIII
## AGREEMENT TO ARBITRATE

13.1 *Arbitration.* The Parties agree to submit to and settle Any and All Claims by binding arbitration. On the written notice of one Party served on the other, the Parties Acknowledge that they shall submit to binding arbitration and Acknowledge that they shall settle Any and All Claims by binding arbitration. A Party shall commence an arbitration by giving written notice to another Party demanding an arbitration which notice shall set forth the claim and the facts on which the claim is based. Such arbitration shall comply with and be governed, to the extent not inconsistent with this Agreement, by the provisions of the Commercial Arbitration Rules of the American Arbitration Association and the Supplementary Procedures for Large, Complex Disputes of the American Arbitration Association (as those Rules and Procedures exist as of June 1, 1998, without regard to any subsequent amendments or revisions thereto), and in addition thereto, the Organization shall be entitled to immediately compel production of all data, facts and documents. In the event that the provisions of this Article XIII are inconsistent with any term, condition or provision of the Commercial Arbitration Rules of the American Arbitration Association or the Supplementary Procedures for Large, Complex Disputes of the American Arbitration Association (as those Rules and Procedures exist as of June 1, 1998, without regard to any subsequent amendments or revisions thereto), then the provisions of this Agreement shall control. Each of the Parties Acknowledges that no lawsuit or court proceedings shall be instituted or prosecuted with respect to Any and All Claims, except for legal proceedings to enforce arbitration awards. Accordingly, each Party waives and releases any and all rights to any trial or other proceeding in any court, except for legal proceedings to enforce arbitration awards.

13.2 *Selection of Arbitrators and Hearing.* All arbitrators selected must be Authorized Arbitrators. Within ninety (90) days after the delivery of a notice to arbitrate, the Principals jointly appoint one Authorized Arbitrator as an arbitrator and the Organization shall appoint one Authorized Arbitrator as an arbitrator. Within thirty (30) days of their appointment, the two arbitrators so chosen shall select a third impartial, Authorized Arbitrator. If either the Principals or the Organization shall fail to appoint an Authorized Arbitrator within the prescribed time period, then the arbitration shall proceed forward in all respects as provided in this Article XIII, except that the Authorized Arbitrator timely appointed shall function as the sole arbitrator of the dispute (and the Party that failed to timely appoint its Authorized Arbitrator shall have waived any further right to do so, and no third Authorized Arbitrator shall be selected by the sole Authorized Arbitrator, the American

Page 8 of 15

Copyright 2000 The Heritage Organization, L.L.C.

Arbitration Association or otherwise). If the Authorized Arbitrators selected by the Parties are unable or fail to agree upon the third Authorized Arbitrator, the third Authorized Arbitrator shall be selected by the American Arbitration Association within thirty (30) days from the expiration of such thirty (30) day period. All appointments shall be immediately communicated to all Parties in writing. All arbitration proceedings shall take place in Dallas County, Texas, and the arbitration hearing shall be held within sixty (60) days of the appointment of the third Authorized Arbitrator and at a time mutually convenient to the Parties. In the event that the time of the arbitration hearing cannot be agreed upon by the Parties, then the time for same shall be chosen by the American Arbitration Association upon not less than ten days' notice to the Parties. Any of the foregoing deadlines may be extended by written mutual agreement of the Parties. The hearing shall be conducted in conformity with the Federal Rules of Civil Evidence, including by way of example, but not limitation, affidavit testimony shall not be allowed.

13.3 <u>Costs of Arbitration</u>. If any arbitration, action at law or in equity is necessary to enforce or interpret the terms of this Agreement or an award rendered by the Authorized Arbitrators, the prevailing Party shall be entitled to its attorneys' fees, its costs and its expenses and its costs and expenses of the Authorized Arbitrators in addition to any other relief to which it may be entitled. However, the initial costs and expenses of the Authorized Arbitrators for any arbitration shall be first split evenly between the Principals and the Organization and shall be paid monthly into an account administered by the Authorized Arbitrators.

13.4 <u>Stipulations</u>. The Parties stipulate and agree that the value of the consideration to be paid by the Principals under this Agreement exceeds Fifty Thousand Dollars ($50,000.), that this Agreement involves interstate commerce, and that this Agreement is enforceable under both the Texas Arbitration Act, Tex. Civ. Prac. & Rem. Code @ 171.001 (Vernon Supp. 1997), et seq., and the Federal Arbitration Act, 9 U.S.C. § 1, et seq.

13.5 <u>Powers of the Arbitrators</u>. Except as otherwise provided herein, the Authorized Arbitrators shall determine the rights and obligations of the Parties according to the substantive and procedural laws of the State of Texas and shall have the authority to award any remedy or relief, whether final or provisional, whether legal or equitable (including, but not limited to, the power to grant any request by the Organization for temporary restraining orders and/or injunctive relief) that a court of the State of Texas could order or grant; however, the Authorized Arbitrators (i) shall have no authority to award punitive damages, exemplary damages, or any damages except those damages specifically provided for in this Agreement, (ii) shall not, in any event, make any ruling, finding, or award that does not conform to the terms and conditions of this Agreement, and (iii) shall not make, fashion, or award any relief or award that could not be made, fashioned, or awarded by a court of the State of Texas. The Authorized Arbitrators shall hear and determine the outcome of the dispute between the Parties by majority vote.

13.6 <u>Award of the Arbitrators</u>. The award of the Authorized Arbitrators shall be final and conclusive upon the Parties, shall be in writing and shall specify the factual and legal bases for the award, shall be signed by a majority of the Authorized Arbitrators, and shall be rendered within thirty (30) days of the conclusion of the arbitration hearing(s). All monetary awards shall bear interest at the highest legal rate from the date such sums were originally due and payable through the date such sums are paid. Judgment upon the award rendered by the Authorized Arbitrators may be entered in any court of competent jurisdiction.

13.7 <u>Confidentiality of the Proceedings</u>. None of the Parties, nor any Authorized Arbitrator appointed in connection herewith, shall disclose the existence, content or results of any arbitration hereunder (including any information revealed in discovery or placed into evidence in connection with those proceedings), and any proceedings brought to enforce any arbitration award rendered hereunder shall be filed under seal and otherwise kept confidential to the maximum extent permitted by law. However, the Organization shall not be restricted or hindered by the provisions of this Section 13.7 from disclosing or using data or information known to it prior to the arbitration, except as otherwise provided by this Agreement.

[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK]

Copyright 2000 The Heritage Organization, L.L.C.

Each and every Party Acknowledges to each and every other Party that each has the right, authority, and power to enter into this Agreement, which has been authorized by all necessary action of each such Person. This written Agreement represents the final agreement between the Parties and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the Parties. There are no unwritten oral agreements between the Parties. Each signature below is binding on the Persons signing, at the time signed, regardless of whether or not all other Persons named herein sign this Agreement and regardless of whether or not any and all signatures of each Person is acknowledged before a notary, and constitutes that Person's Acknowledgment, agreement to and acceptance of every promise, duty, term, condition, obligation, agreement, transfer, conveyance, and right contained in this Agreement, which has been executed by The Heritage Organization, L.L.C. and is made and is effective the _19th_ day of December, 2000.

The Heritage Organization, L.L.C.
A Delaware limited liability company
(the "Organization")

By: _Gary M. Kornman as its Chief Executive_
Gary M. Kornman As its Chief Executive and as
President of its Manager
An Authorized Officer
Dated: December _19_, 2000

Carl E. Berg, An Individual
(a "Principal")
Dated: December _19_, 2000

Clyde J. Berg, An Individual
(a "Principal")
Dated: December _____, 2000

Michael L. Knapp, An Individual
(a "Principal")
Dated: December _19_, 2000

West Coast Venture Capital, Ltd.
(a "Principal")
a California limited partnership,

By:

Carl E. Berg, As President of West Coast Venture Capital, Inc. As the General Partner of West Coast Venture Capital, Ltd.
Dated: December _____, 2000

1981 Kara Ann Berg Trust
(a "Principal")

By:

Clyde J. Berg As its Trustee
Dated: December _____, 2000

Copyright 2000 The Heritage Organization, L.L.C.

STATE OF CALIFORNIA )
)
COUNTY OF SANTA CLARA )

This instrument was acknowledged before the Notary signing below, on this _____ day of December, 2000, by Carl E. Berg who personally appeared, acknowledged and identified himself to the Notary signing below or is known to the Notary signing below and acknowledged that he has executed the foregoing instrument for the purposes and consideration therein contained, by himself signing.

In witness whereof I hereunto set my hand and official seal.
SEAL

_____
Printed Name of Notary

_____
Signature of Notary
My Commission Expires: _____    Notary Public in State of California


STATE OF CALIFORNIA )
)
COUNTY OF SANTA CLARA )

This instrument was acknowledged before the Notary signing below, on this _____ day of December, 2000, by Clyde J. Berg, who personally appeared, acknowledged and identified himself to the Notary signing below or is known to the Notary signing below and acknowledged that he has executed the foregoing instrument for the purposes and consideration therein contained, by himself signing.

In witness whereof I hereunto set my hand and official seal.
SEAL

_____
Printed Name of Notary

_____
Signature of Notary
My Commission Expires: _____    Notary Public in State of California


STATE OF CALIFORNIA )
)
COUNTY OF SANTA CLARA )

This instrument was acknowledged before the Notary signing below, on this _____ day of December, 2000, by Michael L. Knapp who personally appeared, acknowledged and identified himself to the Notary signing below or is known to the Notary signing below and acknowledged that he has executed the foregoing instrument for the purposes and consideration therein contained, by himself signing.

In witness whereof I hereunto set my hand and official seal.
SEAL

_____
Printed Name of Notary

_____
Signature of Notary
My Commission Expires: _____    Notary Public in State of California

Copyright 2000 The Heritage Organization, L.L.C.

STATE OF CALIFORNIA      )
                         )
COUNTY OF SANTA CLARA    )

This instrument was acknowledged before the Notary signing below, on this _____ day of December, 2000, by Carl E. Berg, who personally appeared, acknowledged and identified himself to the Notary signing below or is known to the Notary signing below to be the President of West Coast Venture Capital, Inc. which is the General Partner of West Coast Venture Capital, Ltd., a California limited partnership, acknowledged that he is duly authorized to sign the foregoing instrument on behalf of said entity, and acknowledged that he has executed the foregoing instrument for the purposes and consideration therein contained, by himself signing on behalf of West Coast Venture Capital, Ltd., a California limited partnership as President of West Coast Venture Capital, Inc. as the General Partner of West Coast Venture Capital, Ltd.

In witness whereof I hereunto set my hand and official seal.
SEAL
                                              _____
                                              Printed Name of Notary

                                              _____
                                              Signature of Notary
My Commission Expires: _____       Notary Public in State of California


STATE OF CALIFORNIA      )
                         )
COUNTY OF SANTA CLARA    )

This instrument was acknowledged before the Notary signing below, on this _____ day of December, 2000, by Carl E. Berg who personally appeared, acknowledged and identified himself to the Notary signing below or is known to the Notary signing below to be the President, an authorized officer of West Coast Venture Capital, Inc., a _____ corporation, acknowledged that he is duly authorized to sign the foregoing instrument on behalf of said entity, and acknowledged that he has executed the foregoing instrument for the purposes and consideration therein contained, by himself signing on behalf of West Coast Venture Capital, Inc., a _____ corporation.

In witness whereof I hereunto set my hand and official seal.
SEAL
                                              _____
                                              Printed Name of Notary

                                              _____
                                              Signature of Notary
My Commission Expires: _____       Notary Public in State of California


STATE OF CALIFORNIA      )
                         )
COUNTY OF SANTA CLARA    )

This instrument was acknowledged before the Notary signing below, on this _____ day of December, 2000, by Clyde J. Berg, who personally appeared, acknowledged and identified himself to the Notary signing below or is known to the Notary signing below to be the Trustee of the 1981 Kara Ann Berg Trust, acknowledged that he is duly authorized to sign the foregoing instrument on behalf of said entity, and acknowledged that he has executed the foregoing instrument for the purposes and consideration therein contained, by himself signing on behalf of the 1981 Kara Ann Berg Trust.

In witness whereof I hereunto set my hand and official seal.
SEAL
                                              _____
                                              Printed Name of Notary

                                              _____
                                              Signature of Notary
My Commission Expires: _____       Notary Public in State of California

Copyright 2000 The Heritage Organization, L.L.C.                    Page 12 of 15

STATE OF CALIFORNIA )
                                              )
COUNTY OF SANTA CLARA )

This instrument was acknowledged before the Notary signing below, on this _____ day of December, 2000, by Gary M. Kornman, who personally appeared, acknowledged and identified himself to the Notary signing below to be the Chief Executive and the President of the Manager of The Heritage Organization, L.L.C., a Delaware limited liability company, acknowledged that he is duly authorized to sign the foregoing instrument on behalf of said entity, and executed the foregoing instrument for the purposes and consideration therein contained, by himself signing as the Chief Executive and the President of the Manager of The Heritage Organization, L.L.C., on behalf of The Heritage Organization, L.L.C., a Delaware limited liability company.

In witness whereof I hereunto set my hand and official seal.
SEAL

                                                            _____
                                                            Printed Name of Notary

                                                            _____
My Commission Expires: _____     Signature of Notary
                                                            Notary Public in State of California

Copyright 2000 The Heritage Organization, L.L.C.

## EXHIBIT A

The Principals and the Organization stipulate and Acknowledge that if the Principals do not pay fees at the time due to the Organization under this Agreement, the Organization will and/or could be harmed and damaged in many ways which are consequential as well as special and which may include, by way of example but are not limited to, the following consequences, items, reasons and results:

a) There will and/or could be a reduction in the Organization's ability to finance the growth of its business. This will and/or could cost the Organization the loss of future economic benefits; and

b) There will and/or could be a reduction in the ability of the Organization to continue its business because of the loss of some of its employees because of the Organization's inability to pay adequate and/or highly competitive compensation to any and all of its employees; and

c) There will and/or could be a reduction in the ability of the Organization to continue its business by the payment of incentive compensation to those of its employees who were involved in rendering services to the Principals; and

d) There will and/or could be a reduction in the ability of the Organization to operate its business by the prompt payment of the expenses of its business operations; and

e) There will and/or could be a reduction in the profits and/or earnings of the Organization which will negatively affect the Organization's sales value to third party buyers; and

f) There will and/or could be a reduction in the profits and/or earnings of the Organization which will and/or could negatively affect the Organization's fair market value and/or the value of its securities from time to time in the public or private marketplace; and

g) There will and/or could be a reduction in the Organization's service to its existing customers. This will and/or could result in a loss of "good will" with its existing customers which will and/or could negatively affect the Organization's business and/or value; and

h) There will and/or could be a reduction in the Organization's service to its existing customers. This will and/or could result in a loss of referrals from its existing customers which will and/or could negatively affect the Organization's business and/or value; and

i) Potential customers will and/or could learn that the Organization was in a dispute with a customer. This will and/or could negatively affect the Organization's ability to engage new customers. This inability will and/or could negatively affect the Organization's business and/or value; and

j) There will and/or could be the loss of the Organization's ability to earn revenues from seeking other customers during the time it spends dealing with the Principals regarding the payment of the Organization's Fees; fees; and

k) There will and/or could be the loss of the Organization's ability to earn revenues from using its resources to service other customers during the time it spends dealing with the Principals regarding the payment of the Organization's Fees; fees; and

l) Any future action required by the Organization to collect any Fees, fees, expenses and other payments from the Principals will and/or could cost the Organization the loss of the opportunity to use the time of its personnel to earn revenues by seeking new customers; and

m) Any future action required by the Organization to collect any Fees, fees, expenses and other payments from the Principals will cost the Organization the loss of the opportunity to use the time of its personnel to earn revenues from servicing other customers; and

n) Any future action required by the Organization to collect any Fees, fees, expenses and other payments from the Principals will cost the Organization the loss of the opportunity to use the time of its personnel for promoting the customer satisfaction necessary for the Organization to gain referrals to new customers from its present customers; and

o) There will and/or could be the loss of the Organization's ability to pay its debts as they are due and/or its creditors will and/or could take action to get or foreclose on its assets; and

Page 14 of 15

Copyright 2000 The Heritage Organization, L.L.C.

p)      There will and/or could be the loss of the Organization's ability to borrow money on favorable terms and/or to borrow money at all; and

q)      There will and/or could be the insolvency of the Organization and the necessity for the Organization to seek protection from its creditors; and

r)      There will and/or could be the loss of some of the Organization's personnel resulting from the Organization's inability to pay their compensation; and

s)      There will and/or could be a reduction in the profits and/or earnings of the Organization which will and/or could negatively affect the Organization's business and/or value in the public or private sale of its securities; and

t)      There will and/or could be a reduction in the profits and/or earnings of the Organization which will and/or could negatively affect the Organization's business and/or value in the public or private market trading price of its securities; and

u)      There will and/or could be a reduction in the profits and/or earnings of the Organization which will and/or could negatively affect the Organization's business and/or value and will negatively affect the Organization's ability to acquire other businesses using its securities; and

v)      There will and/or could be a reduction in the profits and/or earnings of the Organization which will and/or could negatively affect the Organization's business and/or value and will negatively affect the Organization's ability to acquire other businesses using its cash; and

w)      There will and/or could be a reduction in the profits and/or earnings of the Organization which will and/or could negatively affect the Organization's business and/or value and will negatively affect the Organization's ability to acquire other businesses using its credit.

Copyright 2000 The Heritage Organization, L.L.C.

<u>PROMISSORY NOTE</u>

$3,009,362

~~December~~ *7*, 2001
November

FOR VALUE RECEIVED, the undersigned promises to pay to The Heritage Organization, L.L.C. or the Holder of this Note (collectively, referred herein as the "Holder"), at 5001 Spring Valley Road, Suite 800, East Tower, Dallas, Texas 75244-3942, or at such other place as the Holder of this Promissory Note (referred to herein as this "Note") may from time to time designate in writing to the undersigned, the principal sum of Three million, nine thousand, three hundred sixty-two Dollars ($3,009,362). Principal and interest shall be payable in the manner set forth in this Note.

1.  The principal sum of this Note shall bear interest at five percent (5%) per annum during the term of this Note to be payable upon equal installments by October 1 of the years 2002, 2003 and 2004, but past due amounts shall bear interest for the period from and including the date of delinquency to but excluding the date this Note is paid in full, at the Prime Rate identified in the "Money Rates" column in the Wall Street Journal plus two percent (2%); such rate shall be adjusted every six months during the term of this Note to the then current Prime Rate identified in the "Money Rates" column in the Wall Street Journal plus two percent (2%). Any interest payable hereunder shall be computed on the basis of a year of 365 days and actual days elapsed (including the first day but excluding the last day) occurring in the period for which payable.

2.  The entire unpaid principal balance of this Note, together with all accrued but unpaid interest, and all other amounts payable under this Note, shall be fully due and payable on the earliest of (i) October 1, 2004 or (ii) thirty (30) days after the date of the death of Carl E. Berg.

3.  Prepayment of principal may be made at any time, without penalty, provided that any prepayment of principal shall be in minimum amounts of Five Thousand Dollars ($5,000.00) each and all accrued but unpaid interest attributable to the principal prepaid to the date of prepayment must accompany any prepayment.

4.  All amounts payable under this Note are payable in lawful money of the United States. Checks will constitute payment only when collected in cash by Holder from the institution upon which the check is drawn. In the event any personal check is not honored by the issuing bank, Holder may require all payments to be made in cash or by cashier's check.

5.  The undersigned agrees to pay all costs of collection of this Note when incurred, including, but not limited to reasonable attorneys' and experts' fees and costs, whether or not a suit or action for collection shall be instituted.

6.  This Note is unsecured.



EXHIBIT

B

7.     All agreements between the undersigned and Holder are expressly limited so that in no contingency or event whatsoever, shall the amount paid or agreed to be paid to the Holder hereof for the use, forbearance or detention of the money exceed the amount permissible under the applicable usury law. If, from any circumstances whatsoever, fulfillment of any provision hereof at the time performance of such provision shall be due, shall involve transcending the limit of validity prescribed by law which a court of competent jurisdiction may deem applicable hereto, then ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity, and if from any circumstance, Holder shall ever receive as interest an amount which would be excessive interest, the excessive interest shall be applied to the reduction of the unpaid principal balance due hereunder as of the date such amount is received or deemed to be received by Holder and not to the payment of interest. This provision shall control every other provision of all agreements between the undersigned and Holder.

8.     If any part, section, clause, paragraph, sentence, term or provision of this Note is held to be illegal, void, invalid, or unenforceable by any court or arbitration panel of competent jurisdiction, it is the intention of the undersigned and the Holder that this Note shall be construed and enforced as if such illegal, void, invalid, or unenforceable part, section, clause, paragraph, sentence, term or provision had never comprised a part of this Note; and the remaining parts, sections, clauses, paragraphs, sentences, terms or provisions of this Note shall remain in full force and effect and shall not be affected by the illegal, void, invalid, or unenforceable part, section, clause, paragraph, sentence, term or provision or by its severance from this Note. Furthermore, in lieu of each such illegal, invalid, or unenforceable part, section, clause, paragraph, sentence, term or provision, it is the intention of the undersigned and the Holder that such part, section, clause, paragraph, sentence, term or provision of this Note may be modified by legal counsel for the Holder in whatever manner and degree, in their sole, unlimited and absolute discretion, legal counsel deems desirable to avoid violation of any law of the United States of America or any state thereof, if at any time and in the sole written opinion of legal counsel for the Holder, this Note may result in violation of any law of the United States of America or any state thereof.

9.     The undersigned hereby waives diligence, presentment, protest and demand and notice of protest, demand, dishonor and nonpayment of this Note, and expressly agrees that this Note or any payment hereunder may be extended from time to time, and that Holder may accept further security or release any security therefor, all without in any way affecting the liability of the undersigned and any endorsers or guarantors hereof.

10.     The terms of this Note shall apply to, inure to the benefit of, and bind all parties hereto, their heirs, legatees, devisees, administrators, executors, personal representatives, successors and assigns. Whenever used, the words "undersigned" and "Holder" shall be deemed to include the respective heirs, legatees, devisees, administrators, executors, personal representatives, successors and assigns of the undersigned or Holder.

11.     This Note may not be changed orally but only by an agreement in writing, signed by any party against whom enforcement of any waiver, change, modification or discharge is sought. The waiver of any covenant contained herein shall not be deemed to be a continuing

2

waiver of the same or any other covenant contained herein. No failure on the part of Holder to exercise any right or remedy hereunder, whether before or after the happening of a default, shall constitute a waiver thereof, and no waiver of any past default shall constitute waiver of any future default or of any other default.

12.    Holder may assign all or any part of this Note. Undersigned may only assign this Note upon the written approval of Holder at the Holder's sole and unlimited discretion.

13.    This Note shall be construed and enforced in accordance with the laws of the State of Texas. The undersigned (i) consents to the personal jurisdiction of the state and federal courts in Dallas County, Texas for any and all claims relating to this Note; (ii) acknowledges that, as to any and all claims relating to this Note, any and all lawsuits and other proceedings shall be brought in Dallas County, Texas and in no other jurisdiction or venue; and (iii) further acknowledges that, as to any and all claims relating to this Note, if any lawsuit or other proceeding is brought in any jurisdiction or venue other than Dallas County, Texas, such lawsuit or proceeding will be dismissed or transferred to an appropriate court or forum in Dallas County, Texas upon the motion of any party to such lawsuit or proceeding. The undersigned hereby appoints the Texas Secretary of State as their agent for service of process with respect to any and all claims relating to this Note, and waives any and all rights to a trial by jury for any and all claims relating to this Note.

IN WITNESS WHEREOF, the undersigned has executed this Note as of the date first set forth above.

_Carl E. Berg_
CARL E. BERG

3

E. Lee Morris
Texas Bar No. 00788079
Davor Rukavina
Texas Bar No. 24030781
**MUNSCH HARDT KOPF & HARR, P.C.**
3800 Lincoln Plaza
500 N. Akard Street
Dallas, Texas 75201-6659
Telephone: (214) 855-7500
Facsimile: (214) 855-7584

*Attorneys for Dennis S. Faulkner, Trustee*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| THE HERITAGE ORGANIZATION, L.L.C., | § | CASE NO. 04-35574-BJH-11 |
| | § | |
| Debtor. | § | |
| | § | |
| DENNIS S. FAULKNER, TRUSTEE, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | |
| | § | |
| CARL E. BERG, | § | |
| | § | |
| Defendant. | § | ADVERSARY NO. 06-3401 |
| | § | |
| CARL E. BERG, | § | |
| | § | |
| Third-Party Plaintiff, | § | |
| v. | § | |
| | § | |
| GARY M. KORNMAN, | § | |
| | § | |
| Third-Party Defendant. | § | |

## NOTICE OF RESCHEDULED DOCKET CALL

**PLEASE TAKE NOTICE** that the Docket Call for this Adversary Proceeding has been

rescheduled to **April 3, 2007, at 1:15 p.m.**, before The Honorable Barbara J. Houser, U.S.

Bankruptcy Court, 1100 Commerce Street, 14th Floor, Dallas, Texas 75242.

PLEASE TAKE FURTHER NOTICE that, unless ordered otherwise by the Court, the trial in this Adversary Proceeding shall be held during the week of April 9, 2007.

PLEASE TAKE FURTHER NOTICE that, in accordance with the Order Regarding Adversary Proceedings Trial Setting and Alternative Scheduling Order [Docket No. 3], all pre-trial deadlines shall be determined in reference to the date of the rescheduled Docket Call.

Dated:  November 1, 2006

**MUNSCH HARDT KOPF & HARR, P.C.**
3800 Lincoln Plaza
500 N. Akard Street
Dallas, Texas 75201-6659
Telephone: (214) 855-7500
Facsimile: (214) 855-7584

By: /s/ E. Lee Morris
    E. Lee Morris
    Texas Bar No. 00788079
    Davor Rukavina
    Texas Bar No. 24030781

**ATTORNEYS FOR DENNIS S. FAULKNER, TRUSTEE**

## CERTIFICATE OF SERVICE

This is to certify that on the 1st day of November, 2006, a true and correct copy of the foregoing pleading was served by U.S. first class mail, postage prepaid, on the following parties:

Carl E. Berg
c/o Perry J. Cockerell, Esq.
Cantey & Hanger, LLP
1999 Bryan Street, Suite 3330
Dallas, Texas 75201-3100
- and -
c/o Beth Ann R. Young, Esq.
Levene, Neale, Bender, Rankin & Brill LLP
10250 Constellation Blvd., Suite 1700
Los Angeles, California 90067

Gary M. Kornman
c/o Jeffrey M. Tillotson, Esq.
Lynn, Tillotson & Pinker, LLP
750 N. Saint Paul, Suite 1400
Dallas, Texas 75201

                                    /s/ E. Lee Morris
                                    E. Lee Morris



U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed October 30, 2006**                **United States Bankruptcy Judge**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| THE HERITAGE ORGANIZATION, L.L.C., | § | CASE NO. 04-35574-BJH-11 |
| | § | (Chapter 11) |
| Debtor. | § | |

### ORDER ESTABLISHING PRE-TRIAL PROCEDURES IN RELATION
### TO TRUSTEE'S OBJECTION TO CLAIM OF CARL E. BERG

CAME ON FOR CONSIDERATION the Trustee's Motion for Entry of Order Establishing Pre-Trial Procedures in Relation to Trustee's Objection to Claim of Carl E. Berg (the "Motion"), filed by Dennis S. Faulkner (the "Trustee"), the duly-appointed Chapter 11 trustee in this case, and having considered the Motion and finding that good cause exists to grant the relief requested therein, pursuant to 11 U.S.C. §§ 105 and 502, Fed. R. Bankr. P. 3007, N.D. TX L.B.R. 9014.1 and General Order No. 2005-01, it is hereby:

ORDERED that the Motion is granted; it is further

ORDERED that Carl E. Berg ("Berg") shall file and serve on the Trustee's counsel, Munsch Hardt Kopf & Harr, P.C., Attn: E. Lee Morris, Esq., 3800 Lincoln Plaza, 500 N. Akard Street, Dallas, Texas 75201-6659, an answer (the "Answer") to the Trustee's Objection to Claim of Carl E. Berg (Claim No. 92) (the "Claim Objection") by no later than **November 30, 2006**, in the absence of which the Court may enter an order of default on the Claim Objection; it is further

ORDERED, that in the Answer, Berg shall admit or deny each of the factual assertions set forth in the Claim Objection, and the failure to do so may result in the Answer being stricken by the Court; and it is further

ORDERED that counsel for the Trustee shall promptly serve a true and correct copy of this Order on Berg.

### ### END OF ORDER ###

Order Approved and Submitted By:
E. Lee Morris
Texas Bar No. 00788079
Deborah M. Perry
Texas Bar No. 24002755
**MUNSCH HARDT KOPF & HARR, P.C.**
3800 Lincoln Plaza
500 N. Akard Street
Dallas, Texas 75201-6659
Telephone: (214) 855-7500
Facsimile: (214) 855-7584
**Attorneys for Dennis S. Faulkner, Trustee**

I hereby certify that the foregoing is a true copy of the original thereof now in my office this the 3rd day of November 20 06 at Dallas, Texas
Tawana C. Marshall, Clerk
United States Bankruptcy Court
Northern District of Texas

By _____ Deputy

**ORDER ESTABLISHING PRE-TRIAL PROCEDURES IN RELATION TO TRUSTEE'S OBJECTION TO CLAIM OF CARL E. BERG – Page 2**
Dallas 1181302_1 7617.1