UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CARL E. BERG, | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO. |
| | § | |
| v. | § | 3:06-CV-2030-N |
| | § | |
| DENNIS S. FAULKNER, ET AL., | § | ECF |
| | § | |
| Defendants. | § | |

## DEFENDANT GARY M. KORNMAN'S RESPONSE TO PLAINTIFF'S MOTION TO WITHDRAW BANKRUPTCY REFERENCE, AND BRIEF IN SUPPORT

Defendant Gary M. Kornman files this response to Plaintiff Carl E. Berg's Motion to Withdraw Bankruptcy Reference, and Brief in Support, as follows:

## I.
## INTRODUCTION AND FACTUAL BACKGROUND

In June 2006, the United States Trustee presiding over the bankruptcy of The Heritage Organization, L.L.C. ("Heritage") filed an adversary complaint against Defendant Berg, seeking to recover on a promissory note payable to Heritage in the original principal amount of $3,009,362. On August 11, 2006, Berg answered in this proceeding, asserting allegations and claims arising out of a written agreement between Heritage and Berg, and related to tax strategies provided to Berg pursuant to that Agreement.

Berg's allegations and claims against Heritage are substantially similar to those being raised and considered by the Bankruptcy Court in connection with claims of other former Heritage clients. Like those claims, Berg's claims are governed by the written agreement between Berg and Heritage. Kornman and the Trustee believes that such written agreement is

dispositive of claims raised by former Heritage clients, and that such claims should be resolved in the Bankruptcy Court by way of summary judgment.

Berg's responsive pleading also asserts numerous third-party claims against Kornman. In this regard, however, Berg asserts the exact same causes of action and damages against Kornman that are asserted in response to the Trustee's claim against Berg. In fact, Berg's third-party allegations against Kornman are almost identical to his pleadings in response to the Trustee's claims. Kornman contends that Berg's written agreement with Heritage also bars any claims asserted individually against Kornman, and that the Bankruptcy Court's consideration of summary judgment motions with respect to the Heritage agreement will essentially dispose of such claims.

In September 2006, Berg filed a proof of claim in the Heritage bankruptcy, in the amount of $9,270,318. The sole basis for Berg's proof of claim was the allegations set forth in his responsive pleading and the damages alleged therein against Heritage. The Trustee's objection to this proof of claim is due on November 30, 2006.

After placing his proof of claim, responsive adversary pleading and third-party adversary claims squarely before the Bankruptcy Court and invoking its jurisdiction, and after choosing the forum for his claims against Kornman, Berg now reverses course and asks that all these matters be withdrawn from the Bankruptcy Court's jurisdiction.

## II.
## ARGUMENT AND AUTHORITIES

As set forth in Berg's Motion to Withdraw, there are essentially four (4) matters that are to be adjudicated in any proceeding involving Berg, Heritage and Kornman:

    (i)    the Trustee's Bankruptcy Court adversary complaint against Berg;

  (ii) Berg's $9 million proof of claim in the Heritage bankruptcy proceeding and the claims alleged by Berg in response to the Trustee's complaint, as well as any objection by the Trustee to same;

  (iii) Berg's third-party claims against Kornman, premised entirely on the same facts that underlie the dispute between Berg and Heritage; and

  (iv) Kornman's claim for indemnification against Heritage's bankruptcy estate, since Berg seeks damages from Kornman related to Heritage matters.

As can readily be seen, three of these four issues are substantial bankruptcy matters that directly and centrally involve the administration of Heritage's estate. The fourth matter, the third-party claims against Kornman, are entirely derivative of Berg's identical bankruptcy claims against Heritage and were voluntarily placed by Berg within the Bankruptcy Court's jurisdiction.

Notwithstanding this, and irrespective of the fact that the Bankruptcy Court is already handling and considering substantially similar issues involving other former Heritage clients and the written Heritage agreement, Berg now seeks to create a second and duplicative set of proceedings in District Court in order to litigate these issues by way of a separate trial. Berg's request violates principles of judicial economy and well-settled law regarding the limited circumstances for permissive withdrawal of the bankruptcy court's jurisdiction, and should therefore be denied.

A. The *Holland America* Factors Support The Bankruptcy Court's Retention Of Jurisdiction Over These Matters.

A withdrawal of reference is intended to apply only to a limited class of proceedings, and is not intended to be an "escape hatch" through which bankruptcy matters can be removed to district court. *In re Lifemark*, 161 B.R. 21, 24 (E.D. La. 1993). Berg, as the moving party, bears the burden of demonstrating sufficient "cause" for permissive withdrawal of the reference. *See, e.g., In re H&W Motor Express Co.*, 343 B.R. 208, 213 (N.D. Iowa 2006).

In *Holland America Insurance Co. v. Succession of Roy*, 777 F.2d 992, 998 (5th Cir. 1985), the Fifth Circuit set forth several factors to be considered in determining a withdrawal of reference. None of these factors support Berg's motion or the withdrawal of the reference for any matters and proceedings involving Heritage, Berg and Kornman.

1. Whether the proceedings are "core" or "non-core"

Berg's brief concedes that three of the four matters that are the subject of his motion – the trustee's adversary complaint, Berg's proof of claim and the trustee's objections thereto, and Kornman's indemnification claim – are "core" matters. As such, regardless of any characterization of the third-party claim against Kornman, it is clear that the predominant nature of the parties' respective issues are "core".[1]

The fourth matter to be adjudicated in this dispute – the third-party claims against Kornman – is not comprised of independent claims based on any facts outside the Heritage bankruptcy. Instead, all claims against Kornman are premised entirely upon the very same facts alleged against Heritage, and are alleged against Kornman solely because of actions allegedly taken as a representative of Heritage. As such, the Bankruptcy Court's consideration of these issues on behalf of the bankruptcy estate will necessarily involve consideration of issues relating to Kornman.

Moreover, the claims against Kornman cannot be viewed in isolation, but rather must be considered in light of their practical effect – the indemnification claim being asserted in turn by Kornman against Heritage's bankruptcy estate. Because all issues and claims in this case

---

[1] Even if the third-party claims against Kornman are non-core, that factor does not require withdrawal of the reference. *In re H&W Motor Express Co.*, 343 B.R. 208, 216 (N.D. Iowa 2006). Otherwise, such reasoning would prevent any non-core matter from ever being referred to the bankruptcy court. *In re Ames Dept. Stores, Inc.*, 190 B.R. 157, 163 (S.D.N.Y. 1995).

ultimately have a direct effect on the Heritage bankruptcy, they should be considered in unison by the Bankruptcy Court.

    2.    <u>Promotion of uniformity in bankruptcy administration</u>

Berg argues that this factor weighs in favor of withdrawal, so that all issues can be settled in one proceeding. Kornman agrees that all these issues should be resolved in one proceeding – in Heritage's bankruptcy, where those issues are already pending and being actively considered by the Bankruptcy Court.

"If a bankruptcy court is already familiar with the facts of the underlying action, then allowing that court to adjudicate the proceeding will promote uniformity in the bankruptcy administration." *In re Doctor's Hosp. 1997, L.P.*, 2006 WL 2847896 at *42 (S.D. Tex.); *In re Hargis*, 146 B.R. 173, 176 (N.D. Tex. 1992). The Bankruptcy Court has been administering this proceeding since 2004, and continues to preside over and consider issues relating to (i) the Trustee's adversary lawsuits against former Heritage clients who executed promissory notes payable to Heritage, (ii) those former clients' proofs of claim against Heritage, (iii) the Trustee's objections to those claims, and (iv) the written agreement between Heritage and its former clients, which specifically governs the relationship between those parties and the former clients' claims. Importantly, this written agreement also specifically contains releases of Heritage representatives such as Kornman, as well as other provisions that are arguably dispositive of Berg's claims against Kornman.

Uniformity in the administration of the Heritage bankruptcy estate can only be achieved through adjudication of these common issues in a single forum. Because these issues must be resolved by the Bankruptcy Court irrespective of Berg's claims, this factor clearly weighs against withdrawal of the reference.

### 3. Forum shopping and confusion

Curiously, Berg argues that "the current proceeding has the effect as [*sic*] forum shopping", even though it is Berg who chose to assert his third-party claims against Kornman in the Bankruptcy Court. Kornman respectfully submits that Berg misunderstands the nature of this particular *Holland America* factor.

Neither the Trustee nor Kornman have "shopped" for alternative forums for any claims related to this dispute. Rather, it is Berg who voluntarily asserted the claims against Kornman in Bankruptcy Court and has now apparently decided with little explanation that he prefers to litigate these claims, together with several matters substantially affecting the Heritage bankruptcy estate, in federal district court. Regardless of Berg's motivations for such action, he clearly cannot argue in good faith that this *Holland America* factor can conceivably weigh in his favor.

Moreover, this *Holland America* factor also incorporates the notion of "confusion." Kornman submits that the litigation of similar and related issues in two different forums with two different judges will not simplify or clarify any of the issues that are currently being actively litigated in Bankruptcy Court.

### 4. Economical use of debtor and creditor resources

For the same reasons, the policy of encouraging economical use of the debtor's and creditor's resources similarly weighs against withdrawal of the reference. "When a bankruptcy court is intimately familiar with the facts, parties and issues, a withdrawal of reference would only further delay final resolution of the suit." *In re Doctor's Hosp.*, 2006 WL 2847896 at *44; *In re Hargis*, 146 B.R. at 176. Moreover, circumstances dictate against withdrawal of a reference when a district court would have to spend substantial time to become familiar with the

parties and issues, particularly when those efforts would be duplicative of work that the Bankruptcy Court has already performed. *In re Doctor's Hosp.*, 2006 WL 2847896 at *44.

As mentioned above, the Bankruptcy Court is already considering similar issues concerning adversary proceedings based on promissory notes payable to Heritage, proofs of claim filed by former Heritage clients, and arguments about Heritage and its representatives that are identical to those alleged by Berg. More importantly, the Bankruptcy Court will continue to consider and adjudicate these issues regardless of where Berg's claims proceed. As such, Heritage will have to incur significant time and expense litigating these matters in two forums in the event Berg's claims proceed in District Court. Berg, on the other hand, will be required to incur the same amount of time and expense regardless of where these issues are litigated.

Finally, since the issues central to Berg's matters are also comprised within other matters being considered by the Bankruptcy Court, it will be less burdensome and time-consuming for that court to resolve those issues than it would for the District Court to take this matter up anew from its inception. As such, considerations of the debtor's and creditor's resources, in addition to notions of judicial economy, support denial of Berg's motion to withdraw.

5. <u>Expediting the bankruptcy process</u>

"A bankruptcy court which has conducted hearings in a case for an extensive period of time is in the best position to expedite the bankruptcy process." *In re Doctor's Hosp.*, 2006 WL 2847896 at *44. As set forth above, the Bankruptcy Court is familiar with all these issues, and can resolve them as it resolves other similar matters. This *Holland America* factor similarly does not support Berg's motion.

  6. Existence of jury demand

Berg concedes there is no jury demand in this case, and that the relevant documents contain a waiver of jury trial. As such, this factor also dictates against withdrawal of the reference.

B. Berg's Jurisdictional Argument Does Not Justify Withdrawal Of The Reference.

As Berg points out, Kornman has stipulated in writing that the Bankruptcy Court has jurisdiction over the third-party claims asserted by Berg against Kornman. In his third-party pleadings against Kornman, Berg also has affirmatively represented that the Bankruptcy Court has jurisdiction over Kornman for purposes of such claims. *See Berg's Third-Party Petition at ¶ 63.* Notwithstanding this, Berg continues to argue that the parties hypothetically might not be "correct" in their jurisdictional stipulations in this regard, and that identical proceedings should therefore be created and adjudicated in the District Court. Berg cites two cases for this jurisdictional argument.

*In re Walker*, 51 F.3d 562 (5th Cir. 1995) states that the Bankruptcy Court has jurisdiction over all matters that "relate to" a bankruptcy proceeding. A matter is "related" for jurisdictional purposes if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy" – in other words, "if the outcome could alter the debtor's rights, liabilities, options or freedom of action (positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Id.* at 569.

In *Walker*, the creditor's third-party contribution claim merely sought to determine whether another party was responsible to reimburse a creditor for damages paid to the bankrupt party, and therefore had no effect on the bankruptcy estate. This is easily distinguished from the instant case, where Berg's claims against Kornman are the source of an indemnity claim asserted

...

directly against the Heritage bankruptcy estate. As clearly stated by Berg himself in his own brief, Berg's claims against Kornman are "related to" the Heritage estate "because if Berg prevails, Kornman will seek indemnification from the debtor." *See Berg's Motion at p. 6.*

Berg also relies upon *In re Canion*, 196 F.3d 579 (5th Cir. 1999), in which a judgment creditor filed suit against friends, relatives and business associates of the bankrupt debtor, alleging interference with the creditor's attempt to collect its judgment from the debtor. Berg fails to point out that the *Canion* case involved separate findings by the district court, bankruptcy court and the appellate court that such claims, which were more tenuously "related" to the subject bankruptcy than Berg's claims against Kornman, were in fact within the bankruptcy court's jurisdiction. *Id.* at 581-87.

As stated in *Canion*, the appropriate test for "related to" jurisdiction is not whether the claim ultimately has an actual effect on the estate, but whether at the time of the referral such claim might have any "conceivable" potential future effect. *Id.* at 586-87. Kornman's claim against Heritage for indemnification from Berg's third-party claims conceivably affects the estate and its current administration, and Berg's claims are therefore "related to" the Heritage bankruptcy.

Berg has cited no case law supporting his jurisdictional argument. The Bankruptcy Court has "related to" jurisdiction over Berg's third-party claims against Kornman, and the Bankruptcy Court should adjudicate those claims in the course of its ongoing administration of Heritage's bankruptcy.

### III.
### CONCLUSION AND PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Defendant Kornman requests that Plaintiff Berg's motion be in all things denied, that the matters set forth in Plaintiff Berg's motion

continue under the jurisdiction of the Bankruptcy Court and that the reference of such matters not be withdrawn, and for all such other and further relief to which Defendant Kornman might be entitled.

Respectfully submitted,

/s/ Jeffrey M. Tillotson
Jeffrey M. Tillotson, P.C.
State Bar. No. 20039200
John Volney
State Bar No. 24003118
**LYNN TILLOTSON & PINKER, LLP**
750 North St. Paul, Suite 1400
Dallas, Texas 75201
(214) 981-3800 - Telephone
(214) 981-3839 - Facsimile

**ATTORNEYS FOR DEFENDANT
GARY M. KORNMAN**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on all counsel of record, via ECF, on this the 23rd day of November, 2006.

| | |
|---|---|
| E. Lee Morris | Perry J. Cockerell |
| Davor Rukavina | Cantey & Hanger, L.L.P. |
| Munsch Hardt Kopf & Harr, P.C. | 1999 Bryan Street, Suite 3330 |
| 4000 Fountain Place | Dallas, Texas 75201-3100 |
| 1445 Ross Avenue | (214) 978-4100 Telephone |
| Dallas, Texas 75202-2790 | (214) 978-4150 Facsimile |
| (214) 855-7521 Telephone | pcockerell@canteyhanger.com |
| (214) 855-7584 Facsimile | |
| lmorris@munsch.com | Beth Ann R. Young |
| | Levene, Neale, Bender, Rankin & Brill, L.L.P. |
| | 10250 Constellation Blvd., Suite 1700 |
| | Los Angeles, California 90067 |
| | (310) 229-1234 Telephone |
| | (310) 229-1244 Facsimile |
| | bry@lnbrb.com |

/s/ Jeffrey M. Tillotson
Jeffrey M. Tillotson, P.C.